**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | Case No. 7:25-cv-00376-DC-DTG |
| v. | **First Amended Complaint for Patent Infringement** |
| GOOGLE LLC, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## <u>FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT</u>

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Headwater Research LLC ("Headwater") alleges as follows against Defendant Google LLC ("Google") or ("Defendant"):

## <u>BACKGROUND</u>

1.      This first amended complaint arises from Defendant's infringement of the following United States patents owned by Headwater, each of which relate to wireless communications technology: U.S. Patent Nos. 8,023,425 ("'425 patent"), 8,631,102 ("'102 patent") and 8,799,451 ("'451 patent") (collectively, "Asserted Patents").

2.      Dr. Gregory Raleigh—the inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Master's degrees in Electrical Engineering from Stanford University, and a BS in Electrical Engineering from Cal Poly San Luis Obispo. He is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and

1

components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

3.    Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless communications technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

4.    In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

5.    Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

6.      Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

7.      After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks's chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

8.      Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

9.      After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones.

He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

10.    In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and others on the Headwater team.

11.    Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

12.    Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in mobile devices and carrier networks, opening up new business models while also providing greater flexibility to carriers and device manufacturers and allowing them to reduce costs while simultaneously improving their devices and services.

**PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT**

13.    Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

14.    Headwater is the owner of U.S. Patent No. 8,023,425, titled "Verifiable service billing for intermediate networking devices," which issued September 20, 2011. A copy of the '425 patent is attached to this complaint as Exhibit 1.

15.    Headwater is the owner of U.S. Patent No. 8,631,102, titled "Automated device provisioning and activation," which issued January 14, 2014. A copy of the '102 patent is attached to this complaint as Exhibit 2.

16.    Headwater is the owner of U.S. Patent No. 8,799,451, titled "Verifiable service policy implementation for intermediate networking devices," which issued August 5, 2014. A copy of the '451 patent is attached to this complaint as Exhibit 3.

**GOOGLE'S KNOWLEDGE OF THE ASSERTED PATENTS**

17.    On information and belief, Google has had knowledge of the Asserted Patents and the infringement thereof by the Accused Instrumentalities as detailed below.

**_Google's Knowledge of the '425, '102, and '451 Patents_**

18.    On information and belief, Google has had knowledge of the '425, '102, and '451 patents and the infringement thereof by Google's Accused Instrumentalities since at least April 2025 when Headwater served its complaint against Verizon in Case No. 2:25-cv-00391-JRG-RSP ("391 Case"). The same patents were also asserted against T-Mobile in Case No. 2:25-cv-00359-JRG-RSP ("359 Case"), and against AT&T in Case No. 2:25-cv-00428-JRG-RSP ("428 Case") in February 2025. The 391 Complaint, 428 Complaint, and/or 359 Complaint and the '425, '102, and

'451 claim chart exhibits disclosed Headwater's infringement theory against Verizon, T-Mobile, and/or AT&T's (collectively, the "Carriers") devices, including Google's devices and/or operating systems and services. On information and belief, one or more of the Carriers shared the 391 Complaint and claim charts with Google in the April 2025 timeframe.

19.    On information and belief, Google has also had knowledge of the '425, '102, and '451 patents and the infringement thereof by Google's Accused Instrumentalities since at least July 2025 when Headwater served its preliminary contentions in the 391, 428, and 359 Cases, which provided additional evidence showing how the Carriers' devices, including Google's devices and/or operating systems and services, infringe the '425, '102, and '451 patents. On information and belief, one or more of the Carriers shared the 391, 428, and 359 Complaint and claim charts with Google in the April to July 2025 timeframe.

20.    On information and belief, when Google received the claim chart or infringement contentions shared by one or more of the Carriers, Google knew or should have recognized that accused products consist of Google's devices and/or operating systems and services. In the alternative, on information and belief, Google turned a blind eye to infringement when its customer or business partner Carriers were accused of infringement including by selling Google's devices and/or operating systems services, and instead of seeking to license the patents that Google's Accused Instrumentalities were infringing, Google quietly continued its infringement while simply hoping that it would not be sued. In the alternative, on information and belief, Google is willfully infringing under the doctrine of "efficient infringement," where Google continues infringement while hoping that the amount of recovered damages will be less the actual benefit that Google receives from its ongoing patent infringement.

21.     On information and belief, the 391, 428, and 359 Cases are part of a number of patent cases where Google has been coordinating generally with the Carriers and Samsung against Headwater, because Google provides the Android operating system and back-end services on devices sold by the Carriers  and Samsung that infringe Headwater's patents. At minimum, the ongoing business relationship between Google and one or more of the Carriers would compel them to work together and exchange information, if not compelled by contractual obligations between them. Patent cases between Headwater and the Carriers and Samsung include:

- *Headwater Research LLC v. Verizon Commc'ns Inc.*, No. 2:23-cv-00352 (E.D. Tex.), filed in 2023; *see also* Nos. 2:23-cv-00377 and 2:23-cv-00379 against T-Mobile and Nos. 2:23-cv-00397 and 2:23-cv-00398 against AT&T.

- *Headwater Partners II LLC v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:24-cv-00007, filed in 2024. *See also* No. 2:24-cv-00015 against T-Mobile and No. 2:24-cv-00016 against AT&T.

- *Headwater Research LLC v. Verizon Commc'ns Inc.*, No. 2:25-cv-00156 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00164 (E.D. Tex.) against T-Mobile and No. 2:25-cv-00215 (E.D. Tex.) against T-Mobile.

- *Headwater Research LLC v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:25-cv-00391 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00359 against T-Mobile and No. 2:25-cv-00428 against AT&T.

- *Headwater Research LLC v. T-Mobile USA, Inc.*, No. 2:25-cv-00462 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00463 against Verizon and 2:25-cv-00464 against AT&T.

- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00685 (E.D. Tex.), filed

in 2025. *See also* No. 2:25-cv-00686 against T-Mobile and 2:25-cv-00687 against Verizon.

- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00690 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00691 against T-Mobile and 2:25-cv-00692 against Verizon.

- *Headwater Research LLC v. AT&T Services, Inc.*, No. 2:25-cv-00693 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00694 against T-Mobile and 2:25-cv-00695 against Verizon.

- *Headwater Research LLC v. Cellco Partnership d/b/a Verizon Wireless*, No. 2:25-cv-00709 (E.D. Tex.), filed in 2025. *See also* No. 2:25-cv-00710 against T-Mobile and 2:25-cv-00711 against AT&T.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:22-cv-00422 (E.D. Tex.), filed in 2022.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:22-cv-00467 (E.D. Tex.), filed in 2022.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-00103 (E.D. Tex.), filed in 2023.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-00641 (E.D. Tex.), filed in 2023.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:24-cv-00228 (E.D. Tex.), filed in 2024.

- *Headwater Research LLC v. Samsung Elec. Co., Ltd.*, No. 2:24-cv-00627 (E.D. Tex.), filed in 2024.

22.     On information and belief, Google was an active participant in the above patent cases between Headwater and the Carrier defendants, including Google's corporate representative testifying at the trial (by deposition) in Case No. 2:23-cv-00352-JRG-RSP ("352 Case"). At the 352 Trial, Verizon's attorney represented that "if you sit on this jury, you'll hear from a witness from Apple and you'll hear a witness from Google. You may or may not know Google actually makes the operating system or the program that's running underneath a Samsung phone. They call it Android." 07/16/2025 Trial Tr. 69:15-23.

23.     On information and belief, Google had knowledge of the verdict in that case when in July 2025 an Eastern District of Texas jury returned a $175 million verdict. Based on the quantity of ongoing related Headwater patent cases, based on Google's provision of devices to the Carriers, based on the involvement of Google's corporate witness at the 352 Case trial, based on the $175 million verdict, and based on ongoing exposure to the Headwater patent family, it is believed that Google is coordinating patent litigation with one or more of the Carriers against Headwater, such that Google is engaging in ongoing monitoring of the Headwater patent family (including the '425, '102, and '451 patents) related to multiple Headwater patents asserted against the Carriers, and that Google has analyzed and is aware of Google's infringement exposure to Headwater's patent family (including Google's infringement exposure to the '425, '102, and '451 patents) as part of litigation due diligence that is warranted for cases of this magnitude.

24.     On information and belief, Google was an active participant in the above patent cases between Headwater and Samsung, including having Google's corporate representative testify at the trial in Case No. 2:23-CV-00103-JRG-RSP ("103 Case"). On information and belief, Google had knowledge of the verdict in that case when in April 2025 an Eastern District of Texas jury returned a $279 million verdict.  Based on the quantity of ongoing related Headwater patent

cases, based on Google's provision of Android and back-end services to Samsung's phones, based on the involvement of Google's corporate witness at the 103 Case trial, based on the $279 million verdict, and based on ongoing exposure to the Headwater patent family, it is believed that Google is coordinating patent litigation with Samsung against Headwater, such that Google is engaging in ongoing monitoring of the Headwater patent family (including the '425, '102, and '451 patents) related to multiple Headwater patents asserted against Samsung, and that Google has analyzed and is aware of Google's infringement exposure to Headwater's patent family (including Google's infringement exposure to the '425, '102, and '451 patents) as part of litigation due diligence that is warranted for cases of this magnitude.

## DEFENDANT GOOGLE AND THE ACCUSED INSTRUMENTALITIES

25.     On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc, and a Delaware limited liability company, with an established place of business at 500 West 2nd Street, Austin Texas 78701 at which Google can be served with process.

26.     The Accused Instrumentalities are Google's mobile devices, including Pixel smartphones running Android used on Google Fi, and other smartphones and other wireless end user devices used on the Google Fi network, as well as Google Fi wireless service (including mobile phones, tablets, wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems) includ-ing Fi network elements and client-side logic including Fi app and Fi configuration on Android. The Accused Instrumentalities include mobile phones and tablets used, made, offered for sale, sold, and/or imported by Google in the United States and supplied by Google to customers in the United States, as well as tethering-enabled devices such as tablets, wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems including devices used, made, offered for sale, and/or sold by Google in the United States, that operate on

Google's network, such as Google's mobile virtual network operator (MVNO) Google Fi, as identified in Exhibits 4 through 6.

27.    On information and belief, each of the categories of Accused Instrumentalities including tablets, laptops (including Chromebooks), wearables (including Google Pixel Watches), IoT devices, M2M devices, and vehicle infotainment systems with Google built-in or Android Auto—is designed, configured, and intended to be tethered to, paired with, or otherwise connected to a first mobile device such as a Pixel smartphone running Android, which operates as an intermediate networking device providing a forwarding service (tethering) between the devices and Google's network. When used as intended, these devices practice the functionality claimed in the Asserted Patents. *See* https://support.google.com/googlenest/answer/9893532?hl=en, https://support.google.com/googlenest/answer/7029485?hl=en&co=GENIE.Platform%3DAndroid, https://support.google.com/android/answer/9059108, https://support.google.com/chromebook/answer/7457148, https://support.google.com/fi/answer/6330195, https://support.google.com/androidauto/answer/6348029, https://support.google.com/chromebook/answer/14784029?hl=en; *see also* Exhibits 4-6.

## JURISDICTION AND VENUE

28.    This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

29.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

30.    This Court has personal jurisdiction over Google in this action because Google has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum

such that the exercise of jurisdiction over Google would not offend traditional notions of fair play and substantial justice. Google, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Western District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Headwater's patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling Google devices and/or offer services including Google Fi.

31.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Google resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District. Google has at least one regular and established place of business in this District. For example, Google invested $20 million to build a corporate office at 500 West 2nd Street, Austin, Texas 78701. *See, e.g.*, https://trerc.tamu.edu/news-talk/google-this-20-2m-design-budget-for-austin-office/. Google also has a retail store in this District at 11701 Domain Blvd., Austin, TX 78758, where Google sells the Accused Devices including phones, tablets, watches, and smart devices. *See, e.g.*, https://store.google.com/magazine/google-store-domainnorthside-austin?hl=en-US; https://www.statesman.com/story/business/2025/05/30/google-domain-northside-austin-store-opening/83944025007/.

### COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '425 PATENT

32.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

33.     On September 20, 2011, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,023,425, titled "Verifiable service billing for intermediate networking devices." Ex. 1.

34.     Headwater is the owner of the '425 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

35.     The written description of the '425 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '425 patent, and Headwater is entitled to damages for Defendants' past infringement.

37.     Defendant has directly infringed (literally and equivalently), and induced others to infringe, the '425 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '425 patent and by inducing others to infringe the claims of the '425 patent without a license or permission from Headwater, such as for example inducing customers to use the Accused Instrumentalities with knowledge that such use infringes the '425 patent.

38.     On information and belief, Defendant uses, import, offer for sale, and sell certain infringing products in the United States. Exhibit 4 provides a description of exemplary Accused Instrumentalities and provides a chart showing examples of how they infringe claim 1 of the '425 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

39.     Defendant also knowingly and intentionally induces and contributes to infringement of the '425 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or were willfully blind to the '425 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the '425 patent, and through at least the filing and service of this Complaint, and for the reasons provided in the Section "Google's Knowledge of the Asserted Patents." As indicated by the Google Patents webpage for the '425 patent, patents assigned to Google also cite family members of the '425 patent. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

40.     Despite this knowledge of the '425 patent, Defendant continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '425 patent. Defendant does so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '425 patent, thereby specifically intending for and inducing their customers to infringe the '425 patent through the customers' normal and customary use of the Accused Instrumentalities.

41.     Defendant has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '425 patent.

42.     Defendant has induced, and continue to induce, infringement of the '425 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and

14

instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

43.     Headwater has been damaged by Defendant's infringement of the '425 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '102 PATENT

44.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

45.     On January 14, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,631,102, titled "Automated device provisioning and activation." Ex. 2.

46.     Headwater is the owner of the '102 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

47.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.     Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '102 patent, and Headwater is entitled to damages for Defendant's past infringement.

49.     Defendants have directly infringed (literally and equivalently) and induced others to infringe the '102 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '102 patent and by inducing others to infringe the claims of the '102 patent without a license or permission from Headwater, such as for example inducing

customers to use the Accused Instrumentalities with knowledge that such use infringes the '102 patent.

50.     On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 5 provides a description of exemplary Accused Instrumentalities and provides a chart showing examples of how they infringe claim 1 of the '102 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

51.     Defendants also knowingly and intentionally induce and contribute to infringement of the '102 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of or were willfully blind to the '102 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the '102 patent, and through at least the filing and service of this Complaint, and for the reasons provided in the Section "Google's Knowledge of the Asserted Patents." As indicated by the Google Patents webpage for the '102 patent, patents assigned to Google also cite family members of the '102 patent. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

52.     Despite this knowledge of the '102 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '102 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '102 patent, thereby specifically intending for and inducing their customers to infringe the '102 patent through the customers' normal and customary use of the Accused Instrumentalities.

53.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '102 patent.

54.     Defendants have induced, and continue to induce, infringement of the '102 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

55.     Headwater has been damaged by Defendants' infringement of the '102 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '451 PATENT

56.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

57.     On August 5, 2014, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,799,451 titled "Verifiable service policy implementation for intermediate networking devices." Ex. 3.

58.     Headwater is the owner of the '451 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

59.     The written description of the '451 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '451 patent, and Headwater is entitled to damages for Defendants' past infringement.

61.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '451 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '451 patent and by inducing others to infringe the claims of the '451 patent without a license or permission from Headwater, such as for example inducing customers to use the Accused Instrumentalities with knowledge that such use infringes the '451 patent.

62.    On information and belief, Defendants use, import, offer for sale, and sell infringing products in the United States, and induce their customers to use infringing products. For example, Exhibit 6 provides a description of exemplary Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '451 patent.

63.    Defendants also knowingly and intentionally induce and contribute to infringement of the '451 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '451 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the '451 patent, and through at least the filing and service of this Complaint, and for the reasons provided in the Section "Google's Knowledge of the Asserted Patents." As indicated by the Google Patents webpage for the '451 patent, patents assigned to Google also cite family members of the '451 patent. The Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial noninfringing uses.

64.     Despite this knowledge of the '451 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '451 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '451 patent, thereby specifically intending for and inducing their customers to infringe the '451 patent through the customers' normal and customary use of the Accused Instrumentalities.

65.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '451 patent.

66.     Defendants have induced, and continue to induce, infringement of the '451 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

67.     Headwater has been damaged by Defendant's infringement of the '451 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

68.     Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A.      A judgment in favor of Headwater that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.      A judgment and order requiring Defendants to pay Headwater past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C.      A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D.      A judgment that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E.      A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F.      Any and all other relief to which Headwater may be entitled.


Dated:   December 8, 2025                        Respectfully submitted,

                                                */s/ Marc Fenster*
                                                Marc Fenster
                                                CA State Bar No. 181067
                                                Email: mfenster@raklaw.com
                                                Reza Mirzaie
                                                CA State Bar No. 246953
                                                Email: rmirzaie@raklaw.com
                                                Brian Ledahl
                                                CA State Bar No. 186579
                                                Email: bledahl@raklaw.com
                                                Ben Wang
                                                CA State Bar No. 228712
                                                Email: bwang@raklaw.com
                                                Dale Chang

CA State Bar No. 248657
Email: dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Ryan K. Lundquist
CO State Bar No. 56449
Email: rlundquist@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**