# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

|  |  |  |
|---|---|---|
| HEADWATER RESEARCH LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 7:25-cv-00376-DC-DTG |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | ORAL ARGUMENT REQUESTED |
| | § | |
| *Defendant*. | § | |

**DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE
<u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)</u>**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................... 3

    A.  Headwater Has No Connection to WDTX and Originated in NDCA .................. 3

    B.  Google's Evidence and Witnesses Are Concentrated in NDCA ......................... 4

    C.  Many Likely Third-Party Witnesses Are in NDCA .............................................. 6

III.  LEGAL STANDARD .................................................................................. 8

IV.  ARGUMENT ................................................................................................ 9

    A.  This Case Could Have Been Filed in the NDCA .................................................. 9

    B.  The Private Interest Factors Favor Transfer ........................................................ 9

        1.  Cost of Attendance for Willing Witnesses Favors Transfer ...................... 9

        2.  The Relative Ease of Access to Sources of Proof Favors Transfer ......... 13

        3.  The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer .................................................................... 15

        4.  The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Favor Transfer ......................................... 17

    C.  The Public Interest Factors Also Favor Transfer ............................................... 18

        1.  NDCA Has a Strong Interest in This Action ........................................... 18

        2.  The Remaining Factors Are Neutral ........................................................ 19

V.  CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
   No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ..........................20

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010).................................................................................12, 18

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013).............................................................................15

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
   No. 2:17-CV-00513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) .............................16

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ..................................................................................15

*Correct Transmission LLC v. ADTRAN, Inc.*,
   No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) .........................17

*Cub Club Inv., LLC v. Apple, Inc.*,
   No. 6-20-CV-00856-ADA, 2021 WL 12300180 (W.D. Tex. Sept. 7, 2021) ...................10, 15

*DataQuill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ................................10

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...........................................15

*eCardless Bancorp, Ltd. v. PayPal, Inc.*,
   No. 7:22-CV-00245-ADA, 2024 WL 6869428 (W.D. Tex. Feb. 15, 2024)...........................10

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ..................................................................................18

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...........................................................................3, 9, 13

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) ......................................................................................18

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .....................................13, 19

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .....................................9, 10, 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)............................................................19

*In re HP Inc.*,
    No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................16

*In re Hulu, LLC*,
    No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................................16

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ............................................................19

*Koss Corp. v. Apple Inc.*,
    No. 6-20-CV-00665-ADA, 2021 WL 5316453 (W.D. Tex. Apr. 22, 2021) ..........................16

*Lynk Labs, Inc. v. Home Depot USA, Inc.*,
    No. 6:21-cv-00097-ADA, 2022 WL 1593366 (W.D. Tex. May 19, 2022) ..........................16

*In re Media Matters for Am.*,
    143 F.4th 631 (5th Cir. 2025) ................................................................8

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)................................................................2

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ............................................................19

*Valtrus Innovations Ltd. v. Google LLC*,
    No. 3:22-CV-066-L-BW, 2025 WL 2076627 (N.D. Tex. July 22, 2025) ..........................15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ............................................................12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................8, 11, 12, 18

*WAG Acquisition, L.L.C. v. Google LLC*,
    No. W-21-CV-00816-ADA, 2022 WL 9569437 (W.D. Tex. Oct. 5, 2022)....................14, 20

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) ................................12

*WirelessWerx IP, LLC v. Google, LLC*,
    No. 6:22-CV-1056-RP, 2023 WL 11921792 (W.D. Tex. Apr. 14, 2023) ................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................................9

28 U.S.C. § 1404(a) ...........................................................................................1, 8, 11

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(B) ....................................................................................16

## I.     INTRODUCTION

Google LLC ("Google") respectfully requests transfer to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because NDCA is clearly the more convenient forum for this lawsuit. Google is concurrently filing, or has already filed, motions to transfer in the following nine, related cases: *Headwater Research LLC v. Google LLC*, Nos. 7:25-cv-00231, -367, -369, -372, -374, -376, -378, -380, and -518 (W.D. Tex.).[1] In each of these cases, there are certain common facts that weigh heavily in favor of transfer. For example, Plaintiff Headwater Research LLC ("Headwater") has no ties to the Western District of Texas ("WDTX") and instead has roots in Northern California. Indeed, named inventor Gregory Raleigh is listed as residing in Woodside, California, in NDCA on the face of the asserted patents. During the time he allegedly conceived of the Headwater inventions, Dr. Raleigh was working in NDCA at Headwater Partners I LLC—the predecessor entity from which Headwater was born—and its sister company ItsOn; companies he founded in NDCA.[2] *See* Section II.A, *infra*. Even now, Dr. Raleigh resides much closer to NDCA in a town less than five miles from California. Headwater has also chosen to avail itself of NDCA in a prior patent litigation. *See, e.g.*, **Ex. 37**.

The specific facts of this case also warrant transfer. Here, Headwater alleges that the asserted patents are infringed by Google's tethering functionality, and Google's mobile electronic devices on which said functionality is enabled, including devices that operate on Google's network, such as Google's mobile virtual network operator (MVNO) Google Fi.[3] Compl. ¶ 18.

---

[1] In an effort to minimize duplicative review, Google is also filing identically numbered exhibits to accompany the motions to transfer in the -372, -374, -376, -378, -380, and -518 cases.

[2] Headwater relocated to the Eastern District of Texas ("EDTX") prior to commencing patent litigation.

[3] Although the claim charts attached to Headwater's complaint also identify "wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems" as part of the "Accused Instrumentalities," Google maintains such products are not properly accused in Headwater's

███████████

Google's witnesses related to these infringement allegations are primarily in Google's ███

████████████ and/or locations significantly closer to NDCA than WDTX. Google

began creating its tethering functionality in NDCA in 2009 and has since developed and managed

its tethering functionality primarily from there, with additional contributions from other Google

offices in California and in Japan and China. Thus, key witnesses with knowledge of the tethering

functionality's development and operation are in and/or closer to NDCA.  These individuals are

responsible for maintaining any documents describing Google's tethering functionality and,

accordingly, the relevant documents are maintained primarily in those locations. No Google

employees with responsibilities related to the accused technologies are based in Texas, let alone

WDTX.

NDCA is more convenient for relevant third parties. The company that retains the

electronically stored information ("ESI") of ItsOn—which allegedly implemented and productized

Headwater's patented technology—ItsOn-ABC, appears to be in NDCA. *See* Section II.C,

*infra*. Many former Headwater and ItsOn employees also apparently remain in NDCA. *See id*.

Others appear to be within California. *See id.* These and other third parties in or near NDCA may

have information relevant to Google's invalidity, estoppel, disclaimer, waiver, and prosecution

history estoppel defenses. Google is unaware of any relevant third parties located in WDTX.

For all these witnesses, NDCA is more convenient than WDTX. The same is true for others

who reside near either venue as traveling to NDCA would be easier given the greater availability

of flights to the San Francisco Bay Area. Where "the transferee venue is 'clearly more convenient'

than the venue chosen by the plaintiff," the case should be transferred. *In re Nintendo Co.*, 589

---

Complaint. **ECF Nos. 1-4, 1-5, 1-6**. This issue is raised in Google's Motion to Dismiss filed in
this action on November 10, 2025.

███████████████

F.3d 1194, 1197 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)). Accordingly, Google respectfully requests that the Court transfer this case to NDCA.

## II.    STATEMENT OF FACTS

### A.    Headwater Has No Connection to WDTX and Originated in NDCA

Headwater has no presence in this District and originates in NDCA. The Complaint states, "[i]n 2008, Dr. Raleigh formed Headwater"—referring to Headwater Partners I LLC, the predecessor entity from which Plaintiff Headwater was created. **ECF No. 1** (Complaint ("Compl.")) ¶ 10; **Ex. 3** at 12:18–13:3; **Ex. 4**. Dr. Raleigh simultaneously founded Headwater's sister company, ItsOn Inc. ("ItsOn"), in 2008 to "license and productize Headwater's patented technology." **Ex. 3** at 25:18–23; Compl. ¶ 12. He merged Headwater Partners I LLC with Headwater Management LLC (another company he founded) to form Headwater, the Plaintiff, in 2011. **Ex. 3** at 12:18–13:3; Compl. ¶ 13. Headwater Partners I LLC, Headwater Management LLC, and ItsOn were all originally headquartered in NDCA.[4] **Exs. 4–6**.

The asserted patents also have strong ties to NDCA.  All three of the asserted patents in this case list Dr. Raleigh as the inventor, residing in NDCA in Woodside, California. **ECF Nos. 1-1, 1-2, 1-3; Ex. 61** at 22**; Ex. 62** at 19**; Ex. 63** at 61. The applications for all three asserted patents were filed and/or prosecuted by Van Pelt, Yi & James LLP, based in Cupertino, California at the time, by Sheppard, Mullin, Richter & Hampton LLP in Palo Alto, and/or by employees of Headwater Partners I LLC, located in NDCA in ███████████████████████ at the time. **ECF No. 1-1, 1-2, 1-3; Ex. 61** at 2, 18, 21, 22**; Ex. 62** at 9, 18, 19**; Ex. 63** at 25, 27, 35, 57, 60, 61; *see also* **Exs. 18, 19, 22, 53, 54.**

---

[4] Headwater Partners II LLC, another related Headwater entity founded by Dr. Raleigh in 2011, was also originally headquartered in the San Francisco Bay Area in NDCA. **Ex. 8**.

██████████████

Their connection to NDCA was further confirmed at an evidentiary hearing on whether Headwater had standing to assert patent infringement in a prior case against Samsung—asserting a different patent than those at issue. **Ex. 3** at 13:6–15. There, Dr. Raleigh testified he conceived of "many of Headwater's inventions" during a collaboration between ItsOn (headquartered in **NDCA**) and Best Buy—allegedly after he departed from Qualcomm.[5]  *Id.* at 16:13–19:2.

Finally, although Headwater purports to maintain an office in Tyler, Texas (in EDTX), Dr. Raleigh resides in, and likely operates Headwater from, ████████████████████████

████████. **Ex. 9**. Dr. Raleigh also has numerous ties to NDCA. For example, the Complaint describes:

- Dr. Raleigh's time working at Stanford, located in NDCA (Compl. ¶ 4);

- Dr. Raleigh co-founding Clarity Wireless in Mountain View, CA, located in NDCA (Compl. ¶ 6; **Ex. 10**);

- Clarity Wireless's acquisition by Cisco (Compl. ¶¶ 6, 9) where the team was relocated to San Jose, CA located in NDCA (**Ex. 11**); and

- Dr. Raleigh's co-founding of Airgo Networks, Inc. (f/k/a Woodside Networks, Inc.) with a principal place of business in Redwood City, CA, in NDCA (Compl. ¶ 7; **Exs. 12, 13**).

Dr. Raleigh also appears to own property in NDCA, as public records indicate that he was a longtime resident of Woodside, California. *See* **Exs. 9**, **14**.

### B.    Google's Evidence and Witnesses Are Concentrated in NDCA

Google is headquartered in Mountain View, CA, with several other offices in the San Francisco Bay Area in NDCA. **Exs. 43, 44**. Headwater alleges that the asserted patents are infringed by Google's tethering functionality, and its operation on Google's network, such as

---

[5] Contradictorily, Dr. Raleigh admitted during a public interview that he conceived of the inventions that led to the creation of Headwater "[a]t Qualcomm" and "took it to the then CEO of Qualcomm" during his employment. **Ex. 32** at 3. If true, Headwater lacks standing to assert the patents given the terms of Dr. Raleigh's patent assignment agreement with Qualcomm. *Id.* at 1–2.

███████████

Google's mobile virtual network operator (MVNO) Google Fi. Compl. ¶ 18.  Google's tethering functionality is a service for exporting the cellular connection of an Android mobile device via WiFi, Bluetooth, or USB (collectively, "tethering" functionality) to be used by another device. Declaration of Robert Greenwalt ("Greenwalt Decl.") ¶ 3.  Each carrier controls the configuration of how its cellular service may be exported. *Id.* Google Fi is one such carrier. *Id.* Google's tethering functionality was originally developed beginning in 2009 and launched on Android in 2010. *Id.* Android's tethering functionality was primarily developed by engineers in Google's offices in ████ ███████████. *Id.* Google Fi's configuration for use in tethering was also primarily developed by engineers in Google's offices in ██████████████.

Robert Greenwalt, a Senior Staff Engineer, was an early developer of Android's tethering functionality who worked on it from 2009 to 2012. *Id.* ¶¶ 1, 4. Mr. Greenwalt is based in the ████ ███████████. *Id.* ¶ 2. Dr. Lorenzo Colitti, based in ██████, is a Senior Staff Software Engineer who leads the Android Core Networking team, whose current responsibilities include Android's tethering functionality. *Id.* ¶ 5(g).

Google has also developed a setting called "Instant Tether" that allows an Android tablet or Chromebook to detect when an Android device with a cellular connection and using the same user account is nearby, and suggests via notification to connect to the cellular connection via tethering. Ryan Hansberry, a Staff Software Engineer, has worked on Instant Tether functionality since it was created around nine years ago. *Id.* ¶ 5(d). Mr. Hansberry is based in ██████████████. *Id.* Other Google employees who have potentially relevant experience and/or knowledge regarding the Instant Tether functionality are Isaac Katzenelson and Sami Zuhuruddin. *Id.* ¶¶ 5(e)–(f). Mr. Katzenelson, a Staff Software Engineer, worked on Instant Tether for Android tablets. *Id.* ¶ 5(e). Mr. Katzenelson is based in the ███████████. *Id.* Mr. Zuhuruddin is a Senior Staff

███████████████

Engineering Manager whose current responsibilities include the Instant Tether functionality for Android tablets. *Id.* ¶ 5(f). He is based in ████████. *Id.*

Irfan Sheriff, a Senior Staff Software Engineer, was an early developer of the user interface in the Settings application that controls Android's tethering functionality. *Id.* ¶ 5(a). Mr. Sheriff is based in the ████████████. *Id.* Zhibin Liu is a Staff Software Engineer based in ████. *Id.* ¶ 5(h). Mr. Liu leads the Pixel Settings team, whose responsibilities include the user interface in the Settings application that controls Android's tethering functionality. *Id.*

John Huang is a Software Engineer Manager on Google's Google Fi Backend team, whose current responsibilities include Google Fi's configuration for use in tethering. *Id.* ¶ 5(b). Mr. Huang is based in the ████████. *Id.* Ji Yang is a Software Engineer Manager on the Google Fi Core Products and Services Team. *Id.* ¶ 5(c). Mr. Yang and his team are knowledgeable about the use of Google Fi for tethering. *Id.* Mr. Yang is based in the ████████. *Id.*

Google is unaware of any individuals responsible for the design and development of the accused functionalities who are based in Texas. *Id.* ¶¶ 2, 3, 5.

Because documents about Google's products and services, including technical documents and source code, are created and maintained by employees working on those products and services. Such documents for Android's tethering functionality are primarily created and maintained in Google's Northern California offices. *Id.* ¶¶ 2, 3, 5, 6.

### C.    Many Likely Third-Party Witnesses Are in NDCA

Although Google's investigation is in its early stages, several third-party witnesses and/or entities with knowledge likely relevant to Google's defenses appear to be in NDCA. Android's tethering functionality is available on Android mobile devices. Greenwalt Decl. ¶ 3. Android Inc. was founded in Palo Alto, CA, and later acquired by Google. **Ex. 47**. Long before this case, Dr.

███████████████████

Raleigh apparently was well aware of Android's capabilities and, in his role as ItsOn CEO, hired

a team of Android software engineers to develop a product that used Android. **Ex. 33** at 24.

Many former Headwater and ItsOn employees appear to still be in NDCA:

- Charles Giancarlo, ItsOn co-founder, appears to be located in ████████████. *See* **Exs. 17, 45**.

- Krista Jacobsen, Headwater's Head Counsel from 2011 to 2014, appears to be located in ███████████ (or potentially ████████, but not Texas). *See* **Exs. 18, 19, 103**. Ms. Jacobsen testified by deposition at trial in a prior patent infringement suit Headwater brought against Samsung. *See* **Ex. 25**.

- Cory Modlin, a former employee at Headwater, appears to be located in ███████ ███████████ *See* **Ex. 20**; **Ex. 1** at 3.

- James Fitzgerald, an employee of ItsOn and manager of the Android development team, appears to be located in ██████████████. *See* **Exs. 21, 26**. Mr. Fitzgerald testified by deposition at trial in two prior patent infringement suits Headwater brought against Samsung. *See* **Exs. 25, 26**.

These and other former Headwater and ItsOn employees have information potentially

relevant to Google's invalidity, estoppel, disclaimer, waiver, marking, and prosecution history

estoppel defenses based on ItsOn's and Dr. Raleigh's apparent knowledge of Android.

As stated by Headwater, ItsOn "implement[ed] Headwater's patented technologies." **Ex. 3**

at 25:18–23; Compl. ¶ 12. Thus, ItsOn's ESI that could further support Google's defenses—

including source code and technical assets—is also in NDCA. ItsOn filed bankruptcy, and its assets

were liquidated into an "Assignment for Benefit of Creditors" entity ("ItsOn-ABC"), managed by

Sherwood Partners. **Ex. 38** at 1–2. Headwater confirmed these assets still exist in ItsOn-ABC's

possession. *Id.* ItsOn-ABC and Sherwood Partners are based in Mountain View, California and

Santa Clara, California, respectively. **Exs. 23, 48**.

The prosecution attorneys that Headwater used to prosecute the patent applications for the

asserted patents, who may have information and documents regarding Google's standing defense,

are still in NDCA. *See* **Exs. 18, 19, 22, 53, 54, 61–63.**

Other third parties with relevant information are located in or closer to NDCA than WDTX. Southern California-based Qualcomm (**Ex. 27**), Dr. Raleigh's former employer, may have information relevant to Google's standing defense.[6] Interdigital Inc.—a company with offices in NDCA but not Texas (**Ex. 29**)—may also have information potentially relevant to damages in this action (if any) given its recent efforts to acquire the Headwater patents (**Ex. 28**).

## III.    LEGAL STANDARD

A court may transfer a case "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). It first considers "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted). If so, courts weigh eight factors to determine if "good cause" exists for transfer:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; … (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[,] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* at 315 (citations omitted). "Good cause" is established if a movant shows "(1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *In re Media Matters for Am.*, 143 F.4th 631, 638 (5th Cir. 2025) (citation omitted).

---

[6] *See supra* n. 4.

## IV.     ARGUMENT

### A.     This Case Could Have Been Filed in the NDCA

 The threshold transfer requirement is met since Google is headquartered in NDCA at 1600 Amphitheatre Parkway, Mountain View, California, where the allegedly infringing products have also been sold. *See* 28 U.S.C. § 1400(b); **Exs. 30, 44**.

### B.     The Private Interest Factors Favor Transfer

#### 1.     Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *Genentech*, 566 F.3d at 1343 (citation omitted). Given that the relevant witnesses are primarily based in NDCA, elsewhere in California, or Japan or China, for which travel to NDCA is more convenient than to this District, and no known witness is based in Texas, this factor strongly favors transfer.

Google's headquarters have been in NDCA since its founding. **Exs. 43–44**. Many of Google's key employees, including those with technical knowledge of the accused features, are located in NDCA. Greenwalt Decl. ¶¶ 2, 5. Mr. Greenwalt, an early developer of Android's tethering functionality, Mr. Katzenelson, who worked on the Instant Tether functionality for Android tablets, Mr. Sheriff, who was an early developer of the user interface in the Settings application that controls Android's tethering functionality, Mr. Huang, whose responsibilities include Google Fi's configuration for use in tethering, and Mr. Yang, who is knowledgeable about the use of Google Fi for tethering, are based in ███████████████. *Id.* ¶¶ 2, 4, 5(a)–(c), (e). Google's key witnesses are knowledgeable about the development and operation of the accused technologies, which is relevant to noninfringement, state of the art, and invalidity. *Id.* ¶¶ 2–6. This weighs in favor of transfer. *See, e.g.*, *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (finding that the district court correctly considered that

"the Northern District of California would be more convenient for Google employees knowledgeable about the design and development of the accused functionalities"); *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3–4 (W.D. Tex. June 13, 2014) (transferring to NDCA where employees who "helped develop some of the accused products" and "possess specific knowledge relevant to the accused products" resided in NDCA).

Although Google has an Austin office, no employees responsible for the design and development of the accused technologies are based there. Greenwalt Decl. ¶¶ 2–6. In fact, no known Google employees responsible for the design and development of the accused technologies are based in Texas. *Id.* A party's mere presence in the transferor district does not affect this factor if that presence is not relevant to the case. *See, e.g.*, *In re Google LLC*, 2021 WL 5292267, at *2 (finding that the district court correctly weighed this factor in favor of transfer even where Google had employees in Austin, because employees with knowledge relating to the case were mainly in NDCA and none were in Texas). Indeed, courts in this District have granted transfer notwithstanding a defendant's Austin office where "there [was] no evidence . . . demonstrat[ing] a single employee from the Austin campus ha[d] knowledge and/or documents relevant to [the] case." *Cub Club Inv., LLC v. Apple, Inc.*, No. 6-20-CV-00856-ADA, 2021 WL 12300180, at *4 (W.D. Tex. Sept. 7, 2021); *see also DataQuill*, 2014 WL 2722201, at *1, 4 (transferring to NDCA despite defendant "employ[ing] some 3,500 people" in this District where no witnesses were identified in WDTX). Accordingly, Google's office in Austin is irrelevant to this case and does not affect the transfer analysis. Moreover, Google's Austin office is "over 300 miles away from the Midland Division," which "***favors*** transfer." *eCardless Bancorp, Ltd. v. PayPal, Inc.*, No. 7:22-CV-00245-ADA, 2024 WL 6869428, at *2–3 (W.D. Tex. Feb. 15, 2024) (transferring case

to NDCA where defendant "ha[d] 1,022 individuals in this District and Texas" and plaintiff was "unable to identify any willing witnesses within 100 miles of the Midland courthouse").

Litigating this case in NDCA also appears more convenient for Headwater, which does not have a presence in WDTX. Indeed, Headwater previously chose to initiate patent litigation in NDCA against another defendant. *See* **Ex. 37**. In addition to the fact the asserted patents here appear to be related to the patents asserted in *Headwater v. Motorola* because they claim priority to some of the same provisional and non-provisional applications, Headwater's complaints are similar. *Compare* Compl. ¶¶ 2–11, *with*, **Ex. 37** ¶¶ 2–11; *see also* **ECF Nos. 1-1, 1-2, 1-3; Exs. 91–92**. While Headwater claims to have an office in Texas, it is in Tyler (in EDTX)—and over 400 miles away from this Court's Midland division. **Ex. 34**. Further, Dr. Raleigh currently resides in, and likely operates Headwater from, ███████████. **Ex. 9**. While ███████████ is over 1,400 miles from Midland (**Ex. 35**), it is only about 200 miles from (and via the airport in ████ a short direct flight to) the San Francisco Bay Area (**Exs. 36, 102**). Dr. Raleigh also has substantial past and present ties to California. Headwater and its sister company ItsOn were founded by Dr. Raleigh and originally headquartered in NDCA. *See supra* Section II.A. ████████ ████████████████████████████████████████████████████ **Exs. 9, 14**. And the Complaint describes Dr. Raleigh's extensive work in NDCA, including at Stanford, Clarity Wireless, and Airgo Networks. Compl. ¶¶ 2–8.

Other of Google's key witnesses would need to travel much farther to get to this District than to NDCA. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (citation omitted). "[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify

at home[.]" *Id.* (citation omitted). Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id.* Here, the time and the distance witnesses would need to travel favor transfer. A majority of Google and Headwater witnesses would need to travel about 1,000–1,500 miles from California (or farther) to Midland to testify, resulting in costly and unnecessary travel expenses and personal and professional disruptions. *See Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) ("[S]cheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.") (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("[T]he combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiffs chosen forum is an important consideration"). Some witnesses with technical knowledge of the accused technologies are based in ███████. Greenwalt Decl. ¶ 5. Dr. Colitti, who leads the team whose current responsibilities include Android's tethering functionality, is based in ████ *Id.* ¶ 5(g). Mr. Liu, who leads the team whose current responsibilities include the user interface in the Settings application that controls Android's tethering functionality, is based in ████ *Id.* ¶ 5(h). Travel for any international witnesses based in ████████ favors transfer since NDCA is more convenient than this District. There are numerous direct flights from ██████████ to NDCA, whereas there are none to this District, and the flight time to NDCA is shorter. **Exs. 68–70, 77–79**. Travel time for the Google witness in ████ is shorter to NDCA than WDTX. **Exs. 99–101**. Travel time for the Google witness based in ██████ is ultimately shorter to NDCA than to Midland. **Exs. 86–88**. There are no direct flights

to Midland. **Exs. 87, 101**. Even if witnesses were to fly through Austin, Austin has fewer daily direct flights than San Francisco, and is over a 5-hour drive away from Midland. **Exs. 46, 86, 88, 99, 100.**

Because most material witnesses reside in or closer to NDCA, and no known witnesses reside in WDTX, this most important factor overwhelmingly favors transfer. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer"). The Federal Circuit recently noted that this factor favored transfer where, like here, "the Northern District of California would be more convenient for Google employees knowledgeable about the design and development of the accused functionalities as well as [the plaintiff's] founder and CFO." *In re Google LLC*, 2021 WL 5292267, at *2. The same result is warranted here.

### 2. The Relative Ease of Access to Sources of Proof Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (citation omitted) (factor favored transfer based on defendant's evidence). Documents about Android's tethering functionality are created and maintained by the employees who designed, developed, and worked on those products and services in the locations where they work—the majority of whom are in Google's ███████████ ██████, other Google offices in ███████ or in ███████████. Greenwalt Decl. ¶¶ 2, 5. Thus, relevant documents and source code regarding the accused tethering functionality are primarily created and maintained in or significantly closer to NDCA.

Headwater has previously confirmed that ItsOn-ABC—managed by Sherwood Partners—possesses ItsOn's ESI. *See supra* Section II.C. ItsOn-ABC and Sherwood Partners are both located

in NDCA. *Id.* Accordingly, documents relating to ItsOn, the company founded to "license and productize Headwater's patented technology," are also located in NDCA. **Ex. 3** at 25:18–23.

Furthermore, several third-party witnesses who are former ItsOn and Headwater employees likely have relevant evidence and appear to be in NDCA:

- Dr. Raleigh stated Mr. Giancarlo worked with him on his inventions. **Ex. 39** at 25:17–22.

- Deposition testimony of Mr. Fitzgerald was played at the trial of another Headwater case regarding ItsOn, its technology, and its relationship with Headwater. **Ex. 26** at 1054:23–1056:14. Mr. Fitzgerald testified that most of the software engineering he did during his time at ItsOn had to do with Android. *Id.* Mr. Fitzgerald may also be relevant to Google's marking defense. *See* **Ex. 40**.

- Ms. Jacobsen was a prosecution attorney for each of the asserted patents. **Ex. 61** at 2**; Ex. 62** at 9, 18, 19**; Ex. 63** at 25, 27. At least 69 of Dr. Raleigh's patent applications were prosecuted by Ms. Jacobsen. **Ex. 2**. Ms. Jacobsen may be relevant to Google's standing defense.

- Mr. Modlin possesses salient evidence to support Google's defenses, including inequitable conduct before the Patent Office.[7] **Ex. 1** at 3–5 (arguing that testimony from Mr. Modlin about Headwater's evaluation of prior art was relevant to inequitable conduct and secondary considerations of obviousness); **Ex. 41** at 5 (Mr. Modlin testified that Dr. Raleigh was not receptive to prior art searches and would reprimand at least one employee for finding prior art).

Third parties Qualcomm (in San Diego, California) and Interdigital (in the San Francisco Bay Area) also likely have additional evidence. **Exs. 27**–**29**. In contrast, there is no indication that any relevant evidence was created or is maintained in WDTX. Under these factors, transfer is strongly favored. *See WAG Acquisition, L.L.C. v. Google LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022) (factor favored transfer where "[m]ore sources of proof likely reside in, and are likely more easily accessed in, the NDCA than the WDTX[,] Google headquarters are located in the NDCA[,] . . . Google has identified custodians of the key documents

---

[7] Google is investigating whether there is a factual basis to plead an inequitable conduct defense and intends to serve discovery on the issue.

in the NDCA[,]. . . [and] [plaintiff] has not pointed to any evidence that is more easily accessible in the WDTX.") (citations omitted); **Ex. 42** at 7–10 (third-party source code located in Los Angeles favored transfer to NDCA).

Although documents may be stored electronically, the "'location of document custodians and location where documents are created and maintained . . . may bear on the ease of retrieval.'" *Valtrus Innovations Ltd. v. Google LLC*, No. 3:22-CV-066-L-BW, 2025 WL 2076627, at *4 (N.D. Tex. July 22, 2025) (citation omitted). Since California is where several relevant custodians are located and the geographic locus of evidence, this factor favors transfer to NDCA. *See Cub Club Inv.*, 2021 WL 12300180, at *2 (finding this factor favored transfer because "Apple resides in the NDCA" and "the accused features were apparently developed at Apple's offices in California").

### 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer

"Transfer is favored" where, as here, the "transferee district has absolute subpoena power over a greater number of non-party witnesses" whose attendance may require a court order. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). When there is no indication that the non-party witnesses are willing to appear absent compulsory process, a court must presume that compulsory process will be required. *See In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). Because there are "more third-party witnesses resid[ing] within the transferee venue than resid[ing] in the transferor venue," this factor "weigh[s] heavily in favor of transfer." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

There are several potential third-party witnesses in NDCA and none in WDTX. For example, several likely third-party witnesses such as ItsOn co-founder Mr. Giancarlo, ItsOn Lead Android Software Engineer Mr. Fitzgerald, Headwater former Head Counsel Ms. Jacobsen, and former Headwater employee Mr. Modlin all appear to be in NDCA. *See supra* Sections II.C &

IV.B.2. And to the extent individuals from Qualcomm or Interdigital are in California—which is likely given they are based and/or have offices there—they would be subject to NDCA's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(B).

Prior case records indicate it is likely many would be unwilling to testify in WDTX.[8] In the prior cases, Mr. Fitzgerald and Ms. Jacobsen appeared at trial by deposition rather than in person in EDTX. *See* **Exs. 25, 26**. Mr. Modlin testified at deposition that he had negative views of Headwater. **Ex. 1** at 3; *see also Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-cv-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) ("[G]iven her status as a former employee, the Court will treat Ms. Kramer as an unwilling witness . . . the [transferee forum], but not this District, can compel."); *cf. Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 WL 5316453, at *7 (W.D. Tex. Apr. 22, 2021) (noting a third party working for plaintiff's competitor would be "unlikely to willingly testify"). As for other non-party witnesses, there is no indication they would be willing to attend trial in WDTX; thus, they are "presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) (*citing AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)).

As several likely third-party witnesses are in or could be compelled to NDCA and none known in WDTX's subpoena power, this factor favors transfer. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) ("[W]e think that the Fifth Circuit would recognize that where, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this

---

[8] To the extent this Court finds that any of these individuals are willing witnesses, NDCA would still be more convenient for them than WDTX, supporting transfer under the first factor.

factor favors transfer even without a showing of unwillingness for each witness."); *WirelessWerx IP, LLC v. Google, LLC*, No. 6:22-CV-1056-RP, 2023 WL 11921792, at *3 (W.D. Tex. Apr. 14, 2023) ("Because the Northern District of California has subpoena power over at least eight more third-party witnesses than this Court, the factor weighs in favor of transfer.") (citation omitted).

### 4.    The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Favor Transfer

Courts have "previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021) (citation omitted). As discussed, Google's anticipated witnesses are in or significantly closer to NDCA given that eight of the engineers and other current employees identified with responsibilities including Google's tethering functionalities are in or significantly closer to NDCA— ████████████████████████████████████████ ████████████████████████████████████████████. *See supra* Section II.B. Other third-party witnesses are also located in or near NDCA, and even Dr. Raleigh himself is closer to NDCA. In contrast, Google is not aware of any witnesses in this District, nor does Headwater have any presence in WDTX. Further, conservation of judicial resources favors transfer. As discussed *supra*, several potential third-party witnesses, including Charles Giancarlo, James Fitzgerald, Krista Jacobsen, and Cory Modlin, work or reside in NDCA. Transfer will prevent costly out-of-district motions to enforce compliance with these subpoenas. *See, e.g.*, **Ex. 15**.

Transfer may also promote judicial economy. Headwater's other cases against Google are subject to their own transfer motions, and Google has filed a complaint against Headwater in NDCA seeking declaratory judgment of non-infringement of two patents. The two patents in the

NDCA action, U.S. Patent Nos. 8,589,541 and 9,215,613, relate to the asserted patents in this case because they claim priority to some of the same provisional and non-provisional applications. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); **Exs. 7, 89–90**; **ECF Nos. 1-1, 1-2, 1-3**.

### C.    The Public Interest Factors Also Favor Transfer

#### 1.    NDCA Has a Strong Interest in This Action

This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Acer*, 626 F.3d at 1256; *see also Volkswagen II*, 545 F.3d at 318. NDCA has a strong local interest in this dispute for several reasons. First, the Headwater inventions were allegedly conceived there while Dr. Raleigh was working at ItsOn and Headwater Partners I LLC, the companies he founded in the San Francisco Bay Area. **Ex. 3** at 11:21–25, 14:8–15:8; *see supra* Section II.A. Dr. Raleigh has asserted that he came up with the idea for "many of Headwater's inventions" during a collaboration between ItsOn (which was based in NDCA at the time) and Best Buy.  **Ex. 3** at 16:13–19:2, 25:18–23.

Each asserted patent lists Dr. Raleigh as an inventor residing in Woodside, California, and was filed and prosecuted in NDCA. **ECF Nos. 1-1, 1-2, 1-3; Exs. 18, 19, 22, 53, 54, 61, 62, 63.** That "[t]he patented technology was invented in, and the patents prosecuted from," NDCA demonstrates that the local interest factor favors transfer. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).

Moreover, Headwater's Complaint spends numerous paragraphs explaining Dr. Raleigh's background, including work at Stanford, Clarity Wireless, Cisco, and Airgo Networks, all of which were located in NDCA. Compl. ¶¶ 2–8. To the extent Dr. Raleigh's background is relevant (as Headwater seems to contend, given that this information appears in both the *Motorola* complaint (**Ex. 37**) and the Complaint in this case), this further supports NDCA's interest in this action.

Second, Google's tethering functionality was primarily developed originally by engineers in Google's NDCA offices and the engineers primarily responsible for it currently are in Google's ██████████████ offices, and other offices in California, ████████████. *See In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023) ("[T]he place of the alleged wrong is one of the most important factors") (citation omitted). The individuals and teams who developed and work on the accused products are mainly based in or are significantly closer to NDCA than this District. *See supra* Sections II.B, IV.B.1.  NDCA thus has a strong local interest because "the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

On the other hand, this lawsuit has no connection to WDTX. Headwater has no presence here, nor was its claimed technology developed here. No relevant Google employees who design or develop the accused functionalities are based in WDTX or Texas generally, and Google's presence in Austin with respect to other technologies does not demonstrate a local interest in this case. "Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas. . . the local interest factor should [be] weighted strongly in favor of transfer." *In re Google LLC*, 2021 WL 4427899, at *6; *see In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320–21 (Fed. Cir. 2021) ("Juniper's general presence in the [WDTX] is not enough to establish a local interest in that district comparable to that of the [NDCA].").

### 2.    The Remaining Factors Are Neutral

The other public interest factors—administrative difficulties flowing from court congestion, the court's familiarity with the law, and avoidance of conflicts from application of foreign laws—are neutral. WDTX has more open patent cases (498) than NDCA (216), but the median times to trial are roughly the same (approximately 28 months and 30 months respectively). *See* **Exs. 16, 24, 31**. Although this Court's default schedule could lead to a trial date sooner than

-19-

the average time to trial in NDCA, the Federal Circuit and Courts in this District have found that congestion is "the most speculative" and that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *WAG Acquisition*, 2022 WL 9569437, at *7 (citation omitted). Further, "neither discovery nor a *Markman* hearing have occurred in this case" so "transfer at this stage of litigation would not likely create any meaningful delays." *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *5 (W.D. Tex. May 21, 2021). Additionally, both courts are familiar and experienced with patent litigation issues, and there are no issues regarding conflict of laws or application of foreign law.

## V.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer to NDCA.

DATED:  December 5, 2025

Respectfully Submitted,

JACKSON WALKER LLP

PAUL HASTINGS LLP

Nathaniel St. Clair, II
Tex. State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822

By: */s/ Matthias A. Kamber*
Matthias A. Kamber
Cal. Bar No. 232147
matthiaskamber@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Robert W. Unikel
Ill. Bar No. 6216974
robertunikel@paulhastings.com
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Andrea P. Roberts
Cal. Bar No. 228128
andrearoberts@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Robert R. Laurenzi
NY Bar No. 3024676
robertlaurenzi@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Ariell N. Bratton
Cal. Bar No. 317587
ariellbratton@paulhastings.com
4655 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

*Attorneys for Defendant*
*GOOGLE LLC*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), counsel for the Defendants met and conferred with counsel for the Plaintiff on November 25, 2025 in a good faith attempt to resolve the matters raised by this motion. No agreement could be reached. Plaintiff indicated it opposes the relief requested by this motion. Thus, these discussions have conclusively ended in an impasse and leave an open issue for the Court to resolve.

*/s/ Matthias A. Kamber*
Matthias A. Kamber

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on December 5, 2025, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record who have appeared in this case were served with the foregoing document via electronic mail.

*/s/ Matthias A. Kamber*
Matthias A. Kamber

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II
