**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff,* | Case No. 7:25-cv-00376-DC-DTG |
| v. | |
| GOOGLE LLC, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

**HEADWATER'S OPPOSITION TO GOOGLE'S
RULE 12(B)(6) MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED
COMPLAINT (DKT. 34)**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  HEADWATER'S FIRST AMENDED COMPLAINT PROPERLY ALLEGES
      INFRINGEMENT BY GOOGLE'S ACCUSED INSTRUMENTALITIES ....................... 3

      A.   The FAC pleads the "relationship" that Google says it cannot find. ............................ 5

           1.   Google's motion demands device-by-device, element-by-element evidence that
                Rule 8 does not require at the pleading stage. .................................................... 6

      B.   The "category-specific screenshots" Google demands are largely irrelevant because
           the asserted claims target the forwarding *first device* and its policies. ........................ 7

      C.   The FAC and exhibits provide more than enough notice as to what is accused and
           why these categories belong in the case. .................................................................. 8

      D.   Google asks for an improper narrowing order, not dismissal for failure to state a
           claim. .................................................................................................................... 9

IV.   THE PRE-SUIT WILLFUL AND INDIRECT INFRINGEMENT CLAIMS ARE WELL-
      PLEADED. ......................................................................................................... 9

      A.   Rule 12(b)(6) does not permit partial, date-based dismissal of claims. ....................... 10

      B.   Google's Pre-Suit Knowledge of Infringement Is More Than Plausible ..................... 11

      C.   Google's Case Law Misses the Mark, and Its Analysis Misstates the FAC. ............... 13

      D.   Disputed Facts About Pre-Suit Knowledge Based on the Carrier Cases' Complaints
           Preclude Dismissal ............................................................................................... 15

      E.   Headwater Plausibly Alleged Willful Blindness ..................................................... 16

V.    CONTRIBUTORY INFRINGEMENT: NO NEED TO PLEAD ALL NEGATIVES ....... 18

VI.   CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
  No. 6:20-CV-00967-ADA, 2022 WL 2705269 (W.D. Tex. July 12, 2022) ............................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 3

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
  661 F. Supp. 3d 643 (W.D. Tex. 2023). ................................................................................ 17

*AuthWallet, LLC v. Amarillo National Bank*,
  No. 7:24-cv-00064-DC, Dkt. 27 (W.D. Tex. Feb. 25, 2025) ................................................... 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 3

*Bellotte v. Austin*,
  No. 5:24-CV-0876-JKP, 2025 WL 2109962 (W.D. Tex. July 28, 2025) ........................... 10, 11

*BillJCo, LLC v. Apple Inc.*,
  583 F. Supp. 3d 769 (W.D. Tex. 2022) ................................................................................. 20

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................... 4, 6, 7, 9

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) ..................................................................................... 5, 6, 9

*Driessen v. Sony Music Entm't*,
  2013 WL 4501063 (D. Utah Aug. 22, 2013) ......................................................................... 18

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ............................................................................................ 18

*Google LLC v. Headwater Research LLC*,
  No. 5:25-cv-07453, Dkt. 1 (N.D. Cal. Sept. 3, 2025) ........................................................... 12

*Hamilton v. Dallas Cnty.*,
  79 F.4th 494 (5th Cir. 2023) .................................................................................................... 3

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ....................................................................................... 5, 19

*Kruger v. Lely N. Am., Inc.*,
  518 F. Supp. 3d 1281 (D. Minn. 2021) ................................................................................. 10

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ..................................................................................... 5, 6, 8

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ............................................................................................... 5

*Medtronic, Inc. v. Mirowski Fam Ventures, LLC*,
    571 U.S. 191 (2014)........................................................................................................ 18

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)................................. 15

*Merck Sharp v. Teva Pharms. USA, Inc.*,
    C.A. No. 14–874–SLR–SRF, 2015 WL 4036951 (D. Del. Jul 1, 2015) ............................. 19

*Neonode Smartphone LLC v. Samsung Elecs. Co.*,
    No. 6:20-CV-00507-ADA, 2023 WL 5426743 (W.D. Tex. June 27, 2023) ......................... 15

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
    No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023).................................. 10

*PacSec3 LLC v. BlackBerry Corp.*,
    No. 6:22-cv-00128-ADA, Dkt. 38 (W.D. Tex. Oct 4, 2024)............................................. 1, 20

*Samsung Electronics Co. Ltd v. Headwater Research LLC*,
    IPR2024-00341, Paper 4 (2024) ...................................................................................... 12

*Thompson v. City of Waco, Texas*,
    764 F.3d 500 (5th Cir. 2014) ........................................................................................ 3, 16

*Triple S Farms LLC v. DeLaval Inc.*,
    No. 22-CV-1924, 2023 WL 2333410 (D. Minn. 2023) ......................................................... 10

*U.S. v. Carroll Towing Co.*,
    159 F.2d 169 (2d. Cir. 1947) .......................................................................................... 15

*Voip-Pal.com, Inc. v. Facebook, Inc.*,
    No. 6:21-CV-00665-ADA, 2022 WL 1394550 (W.D. Tex. May 3, 2022) ................. 11, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 10

Fed. R. Civ. P. 15(a)(2)..................................................................................................... 1

## I.    **INTRODUCTION**

Google's "Motion" (Dkt. 34) improperly disputes facts at the pleading stage and seeks remedies that Fed. R. Civ. P. 12(b)(6) does not allow.  First, Google asks the Court to carve out entire categories of accused products at the pleading stage because, in Google's view, Headwater's infringement pleadings did not provide enough "product-by-product" detail with annotated screenshots and SKU-level specificity. That is not the pleading standard or the proper scope of a Rule 12 motion, and it is a type of relief for which Google cites to absolutely zero case law, statute, or Rule for support.

Regardless, Headwater's First Amended Complaint ("FAC") exceeds the pleading standard by (1) identifying the accused instrumentalities and the device categories Google seeks to dismiss, (2) alleges the common tethering functionality that ties those categories to the asserted claims, and (3) attaches Exhibits 4–6 that map representative asserted claims to Google's own public technical documentation and support pages describing the "rules," "conditions," and "quality thresholds" used to provide tethering functionality in representative products.

Google's Motion also argues for dismissal of willfulness and indirect infringement based on lack of pre-suit knowledge.  As explained below, pre-suit knowledge is sufficiently well-pleaded to support both willfulness and indirect infringement, and Rule 12(b)(6) does not permit the piecemeal relief that Google seeks.  Google's Motion also argues for dismissal of contributory infringement but improperly demands Headwater to plead negative facts.[1]

---

[1] Although Google complains that the First Amended Complaint was improperly filed (Dkt. 34 at 1), it does not move to dismiss on related Grounds.  Moreover, Headwater's First Amended Complaint was properly submitted in accordance with the Local Rules well before the deadline. As Headwater explained in the parties' Rule 26 submission, the Midland OGP "permits amendments until 16 weeks after fact discovery by default and states that '[a] motion is not required.' Thus, [the FAC] is timely under Fed. R. Civ. P. 15(a)(2) because the Court gave standing leave to amend. Headwater has explained to Google's local counsel that the on-point case *PacSec3,*

Google disputes the pleaded fact that "Google had knowledge of the asserted patents." Dkt. 29 ¶ 18-24. Doing so is fatal to Google's motion. More generally, Google's attempt to dismiss willful and indirect infringement of the asserted patent only ***before*** April 2025 is not allowed under Rule 12(b)(6) because this rule does not allow the court to decide the applicable date ranges for a claim at the pleading stage. Instead, Rule 12(b)(6) concerns a "failure to state a claim upon which relief **can be granted**" (emphasis added). It remains unchallenged that a claim for pre-suit willfulness and a claim of pre-suit indirect infringement **can be granted** for some period of time, so dismissal under Rule 12(b)(6) should be denied entirely. A plaintiff is not required to muster its evidence and provide a detailed expert report at this stage identifying every single relevant pre-suit event on every single pre-suit date at this stage of the pleadings. The claim should proceed to the discovery stage, where Headwater can take discovery on the full extent of when Google first learned of its infringement of the asserted patents and whether Google was willfully blind to such infringement.

## II. <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

*LLC v. BlackBerry Corp.*, No. 6:22-cv-00128-ADA, Dkt. 38 (W.D. Tex. Oct. 4, 2024) resolved this exact issue about *second* amended complaints. Headwater explained that Google's case *AuthWallet, LLC v. Amarillo National Bank*, No. 7:24-cv-00064-DC, Dkt. 27 at 3 (W.D. Tex. Feb. 25, 2025) striking an amendment is distinguished because the notorious Bill Ramey 'offers no argument as to why its Second Amended Complaint should not be struck,' so *AuthWallet* stands for nothing more than granting an unopposed motion to strike. Headwater explained that an amendment mooting a motion to dismiss as authorized by the OGP without need for a motion is inherently good cause." Dkt. 30 at 4. On Jan. 6, 2026, the Court mooted Google's first Motion to Dismiss because of the Amended Complaint. Jan. 6, 2026 Notice.

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) (cleaned up).  The Court must "accept all well-pleaded facts as true and view all facts in the light most favorable to plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014) (abrogated on other grounds in *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023)).

## III.  HEADWATER'S FIRST AMENDED COMPLAINT PROPERLY ALLEGES INFRINGEMENT BY GOOGLE'S ACCUSED INSTRUMENTALITIES

Google's first argument assumes that Headwater must show, at the pleading stage, how each and every category of accused instrumentalities independently practices each and every limitation of the asserted patents' claims, complete with category-specific "screenshots or URLs" for each element. That is not required under Rule 8, and Google's apparent demand for post-discovery expert-witness evidence at the pleading stage is improper. And crucially, it completely misreads what Headwater actually alleged its infringement theory to be. Google also cannot believe it is owed such relief, when it has cited to no case, rule, or statute (whether in this Court or another in this Circuit, the Federal Circuit, or even its preferred Ninth Circuit)[2] to support the idea that some categories of accused devices contributing to infringement should be stricken from an otherwise sufficient Complaint at the pleading phase.

The FAC delineates the infringement theory, centered on Google's tethering/forwarding architecture in Android, where a "first mobile device such as a Pixel smartphone running Android" operates "as an intermediate networking device providing a forwarding service [tethering] between

---

[2] What case law Google does cite to, *e.g.* the C.D. Cal case *Apollo Fin., LLC v. Cisco Sys., Inc.*, involved complaints with no coherent theory and no factual support, as opposed to Headwater's FAC and the over 200 pages of supporting claim charts here. None of those cases dismissed some categories of accused devices and not others.

the [tethered] devices and Google's network." *See* FAC, Dkt. 29 at ¶ 27. The FAC describes these categories of Google devices and Google Fi's tethering service (with its "Fi network elements and client-side logic including Fi app and Fi configuration on Android") as the Accused Instrumentalities. *Id*. at ¶ 26. Further, it alleges that "each of the categories of Accused Instrumentalities . . . is designed, configured, and intended to be tethered . . . ." *Id.* And this description (in addition to referencing to Headwater's example claim charts, Exhibits 4-6 to the Complaint) includes direct citations to Google's own active, publicly available websites describing that each of these categories of devices is capable of tethering in the Android ecosystem. *See id.* (citing    https://support.google.com/android/answer/9059108    (smartphones and tablets) https://support.google.com/googlenest/answer/7029485?hl=en&co=GENIE.Platform%3DAndroi (IoT/M2M wearable setup requires Android phone or tablet), https://support.google.com/chromebook/answer/7457148    (chromebooks), https://support.google.com/fi/answer/6330195    (Fi tablets and laptops) https://support.google.com/androidauto/answer/6348029    (Android Auto), https://support.google.com/chromebook/answer/14784029?hl=en (Chromebook as hotspot). Finally, Exhibits 4-6 of the Complaint identify, claim limitation by claim limitation, how Google's tethering/forwarding architecture infringes an exemplary claim of each of the '425, '102, and '451 patents (over the course of 86, 76, and 112 pages, respectively). *See* generally, Exhibits 4, 5, 6.

That more than satisfies the standard to state a claim for patent infringement. The Federal Circuit has repeatedly held that a patent plaintiff need not "prove its case at the pleading stage," and "[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). The touchstone is plausible notice, not evidentiary proof. *Id.* ("It is

enough 'that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'" (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (further quotation omitted)).

Where (as here) key implementation details reside with the accused infringer, pleading "upon information and belief" is not only permissible but expected. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284-85 (Fed. Cir. 2013). And where, as here, the complaint identifies the accused products and connects them to the accused functionality, dismissal is improper even if the defendant insists it wants more detail *now*. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012).

### A.    The FAC pleads the "relationship" that Google says it cannot find.

Google says the FAC is "incoherent[]" because it "refers to a grab bag" of Google Fi, Pixel smartphones, other devices, and client-side logic, and supposedly "fails to articulate an identifiable relationship between them." Dkt. 34 at 5. But the FAC articulates that relationship in plain English.

Google's Fi service and related network elements, Pixel smartphones running Android on Fi, other wireless end-user devices used on the Fi network, and Fi client-side logic (*i.e.* the Fi app and configuration on Android) are accused. *See* FAC ¶¶ 26-27. And (perhaps unsurprisingly, given that the Asserted Patents claim types of interaction between multiple devices) the devices in Google's architecture work together to infringe. The devices in each category (smartphones, laptops, wearables, IoT/M2M, vehicle infotainment) are "designed, configured, and intended to be tethered to, paired with, or otherwise connected to" another of these devices acting as the "intermediate networking device" providing the forwarding service between the devices and Google's network. *Id.* ¶ 27.

That is not "indiscernible." It is a basic infringement theory in the FAC, played out over 276 pages of notice in Exhibits 4-6 in detail far greater than the standard requires. *See Bot M8 LLC* 4 F. 4th at 1352–53. Simply, Google's Android/Fi-enabled first device provides the claimed forwarding service and enforces Android/Google Fi policy and entitlement controls, while additional devices (e.g. smartphones, laptops, wearables, IoT/M2M, vehicles) make the claimed connections over Wi-Fi/Bluetooth/USB or similar local links.

## 1.    Google's motion demands device-by-device, element-by-element evidence that Rule 8 does not require at the pleading stage.

Google's own framing makes a major mistake clear. It argues that "absent from the FAC and claim charts is any purported evidence" showing how these categories "practice any *(let alone, every)* element" of any asserted claim. Dkt. 34 at 8 (emphasis added). Google then catalogs which categories lack "screenshots or URLs" for which claim elements. *Id.* at 7-8. "A plaintiff is not required to plead infringement on an element-by-element basis," *Bot M8 LLC*, 4 F.4th at 1352, let alone on a device category-by-device category, element-by-element basis.

Google simply is not applying the pleading standard. The question at the Rule 12(b)(6) stage is whether the complaint plausibly alleges infringement, not whether Headwater has already marshaled category-specific exhibits for each limitation. *Disc Disease Sols.*, 888 F.3d at 1260 (reversing dismissal where complaint identified accused products and alleged infringement; Rule 8 requires only a "short and plain statement"). And where, as here, details are in the defendant's possession (such as the internal tethering/forwarding policy implementation and Fi app configuration), requiring such specificity at the pleadings stage is inconsistent with Rule 8. *K-Tech Telecomms.*, 714 F.3d at 1284-85.

Google's approach would subvert Rule 8 and create a regime so strict as to throw out any patent case involving non-public technology, which simply does not square with the case law. *Bot*

*M8*, 4 F.4th at 1352-53 (Rule 8 does not require element-by-element pleading).

**B.    The "category-specific screenshots" Google demands are largely irrelevant because the asserted claims target the forwarding *first device* and its policies.**

Google's argument also ignores what Headwater pleaded and charted: these categories are, in substantial part, the "one or more other devices" (or "additional end point devices") that connect to the first device's forwarding service. That is exactly how the exhibits describe them.

Exhibit 4 ('425 patent chart) states: "For example, phones, tablets, wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems are additional end point devices with which the first end point device is configured to communicate over the network." The same exhibit explains that the accused forwarding functionality is implemented by the "forwarding agent" in the first device, which "forward[s] the data between the [cellular] modem and the Wi-Fi, Bluetooth, or USB" to implement a forwarding service "often referred to as a 'tethering,' 'hotspot,' or 'sharing' service." Exhibit 5 ('102 patent chart) likewise ties the "other device" concept to tethering over local links and uses a laptop/tablet as a concrete example: Android devices include modems that assist the end-user device in communicating with "tethered" devices "(such a laptop or tablet)" over Wi-Fi, USB, or Bluetooth. And the same chart explains that the "service policy settings" at issue "authoriz[e] the end-user device to provide a forwarding service (tethering) to the one or more other devices," and that those settings relate to tethering authorization, data rate, data limits, and network type.

This undercuts Google's core premise. Many of the limitations Google complains lack "watch" or "Chromebook" screenshots are *not limitations about the tethered device at all*. They are limitations about the **first device** (the intermediate networking device) and its forwarding agent, service policy settings, and entitlement/policy controls. So it is no answer to say, for example, "there are no screenshots related to watches for at least claim elements [1d], [1e], or

[1e1-3] of the '102 patent." Those limitations are satisfied (as pled) by Google's Android/Fi implementation on the first device and in Fi's configuration and network elements. The tethered device's role ordinarily is to be one of the "other devices" that receives connectivity through the forwarding service, which is the primary reason these categories appear in the pleadings.

In short: Google is trying to force Headwater to plead a separate infringement story for each tethered endpoint type, even though the asserted claims and Headwater's theory focus on the same forwarding/policy machinery on the first device and in Google's service. That is a merits dispute, not a pleading defect.

### C.    The FAC and exhibits provide more than enough notice as to what is accused and why these categories belong in the case.

Google's motion portrays the device categories as stray words "in passing." But the FAC does not merely list categories; it alleges that these are "tethering-enabled devices" operating on Google's network and that each category is designed to be tethered or paired to a Pixel smartphone providing the forwarding service to Google's network. That is a concrete, falsifiable theory of infringement.

The FAC and exhibits do not merely "parrot" claims. They explain what the accused functionality is (tethering/hotspot/sharing) and where it resides (the first end point device's forwarding agent and policies), and they identify representative device types and connectivity paths (Wi-Fi/Bluetooth/USB) through which laptops and other devices connect.

That is precisely the sort of "short and plain statement" that Rule 8 calls for and that survives Rule 12(b)(6), especially in a case where Google holds the internal details of Android's tethering stack and Google Fi's policy/entitlement enforcement. *K-Tech Telecomms.*, 714 F.3d at 1285. The complaint is not required to litigate claim construction, prove infringement, or attach

exemplary evidence for every device category before discovery even begins. *Bot M8*, 4 F.4th at 1352-53; *Disc Disease Sols.*, 888 F.3d at 1260.

### D.    Google asks for an improper narrowing order, not dismissal for failure to state a claim.

The practical effect of Google's request would be to excise from the case the very "other devices" the patents contemplate and the FAC alleges are tethered to the first device's forwarding service. That is not how Rule 12(b)(6) works. If Google wants to dispute whether a given class of devices can, in fact, be tethered as alleged, whether particular exemplars are properly within the accused set, or the value of tethering functionality, that is what discovery, expert reports, later motions practice, and trial are for.

At this stage, Headwater has plausibly alleged that Google's Fi/Android tethering implementation provides a forwarding service from a first device to additional end-user devices, and that the accused architecture includes tethering-enabled laptops, wearables, IoT/M2M devices, and vehicle infotainment systems that are designed and intended to connect to that forwarding service.  That is more than sufficient.

## IV.    THE PRE-SUIT WILLFUL AND INDIRECT INFRINGEMENT CLAIMS ARE WELL-PLEADED.

The Court should deny Parts III(B)(1)-(2) of Google's Motion, which seek to dismiss pre-suit willful and indirect infringement of the asserted patents for a time period before specific pre-suit dates, because this type of relief is simply not permitted under Rule 12(b)(6).  The Court should further deny Part III(B)(3)-(5) of Google's motion to dismiss related to pre-suit knowledge and willful blindness because this theory is well pleaded in the FAC.

**A.      Rule 12(b)(6) does not permit partial, date-based dismissal of claims.**

The relief that Google seeks (dismissal in part either before April 15, 2025 or before July 2025) is not available under Rule 12(b)(6).  This is because Rule 12(b)(6) only allows dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). So, if *any* relief *can be granted*, the motion to dismiss a claim must be denied.

> Rule 12(b)(6) does not appear to contemplate motions to dismiss specific types of relief. It instead provides a means for litigants to move for dismissal of an action or claims for the "failure to state a claim upon which relief can be granted." The relief sought can certainly bear on whether a party has stated a claim – in that, *if all relief sought, is unavailable for a specific claim*, then that claim may fail under Rule 12(b)(6). But, in general, when a party requests alternate relief on the same underlying claim, the *unavailability of one type of relief should not garner a motion to dismiss under Rule 12(b)(6)*. And such a motion could face a summary denial.

*Bellotte v. Austin*, No. 5:24-CV-0876-JKP, 2025 WL 2109962, at *6 (W.D. Tex. July 28, 2025) (emphasis added).  Courts have ruled that Rule 12(b)(6) does not allow dismissal of only "a portion of damages" that form only "part of a claim."  *Triple S Farms LLC v. DeLaval Inc.*, No. 22-CV-1924, 2023 WL 2333410, at *9 (D. Minn. 2023) (citing *Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281, 1292 (D. Minn. 2021) ("On a Rule 12(b)(6) motion, the Court may only dismiss a claim, not part of a claim").

Courts in the Fifth Circuit do bifurcate willfulness and indirect infringement claims into pre-suit and post-suit conduct.  *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-CV-01331, 2023 WL 11833572, at *5 (W.D. Tex. July 21, 2023).  But nothing indicates that courts further divide up these claims by specific events or date ranges. *See id.*  For example, courts do not further break up the pre-suit willfulness claim into "pre-suit, pre-July 24, 2023 amended complaint willfulness" or "pre-suit, pre-September 2024 expert report willfulness."

Here, as explained below, Headwater has more than adequately pleaded pre-suit willfulness (*e.g.*, seeking a finding of willfulness and resulting enhanced damages) and pre-suit indirect infringement (*e.g.,* seeking a finding of liability and award of reasonable royalty) based on the pre-suit facts occurring before the filing of the FAC. So, dismissal of pre-suit claims for willfulness and indirect infringement before a certain date is improper, and such a motion should face summary denial. *Bellotte*, 2025 WL 2109962, at *6.

Google appears to be trying to improperly convert a 12(b)(6) motion into some sort of excuse to later cut off discovery before certain dates. This should not be allowed. A plaintiff is not expected to put a date-by-date expert accounting of events and corresponding remedies into its complaint. Discovery will reveal the exact pre-suit date of Google's first knowledge of infringement, whether in May 2025, July 2025, or at a different time. Because the complaint sufficiently states a claim for which *some* pre-suit remedy can be granted, the motion to dismiss should be denied.

### B.    Google's Pre-Suit Knowledge of Infringement Is More Than Plausible

The allegation that Google had pre-suit knowledge of the Asserted Patents and their infringement is reasonable and plausible. This Court previously denied a motion to dismiss under similar circumstances. *Voip-Pal.com,* 2022 WL 1394550, at *1. In that case, Voip-Pal alleged that it "sent one or more pre-suit letters notifying Defendants of … patent application that ultimately led to the '721 Patent." *Id.* "Also, based on this letter and as a result of ongoing patent litigation between the parties, the Defendants allegedly monitored Plaintiff's patent portfolio and knew that their conduct amounted to infringement of the '721 Patent." *Id.* The Court then held that these were well-pleaded facts and that pre-suit knowledge of infringement of the Asserted Patents was plausible and adequately pleaded for pre-suit willfulness and indirect infringement. *Id.* at *2–4.

Like the notice letters in *Voip-Pal*, here Headwater's FAC similarly pleads that Google had notice of its infringement by way of a complaint and infringement contentions, and "knew or should have recognized that accused products consist of Google's devices and/or operating systems and services." FAC, Dkt. 29 ¶¶ 20, 21. Moreover, like the portfolio monitoring that happened in *Voip-Pal*, here Google has monitored and analyzed the Headwater patents as a result of ongoing patent litigation, learning of Google's infringement of the Asserted Patents that were asserted against both Samsung and the Carriers. FAC, Dkt. 29 ¶¶ 20-24.

The FAC alleges that Google conducted pre-suit monitoring and analysis of Headwater's related patents, learning of Google's infringement of the Asserted Patents before this case was filed. FAC, Dkt. 29 ¶ 21 ("At minimum, the ongoing business relationship between Google and one or more of the Carriers would compel them to work together and exchange information, if not compelled by contractual obligations between them."); see also ¶¶ 18-24 (detailing Google knowledge and listing over 15 cases implicating Google products and services). This is not speculation. Google recently proved that Google is monitoring and assessing its infringement risk of the Headwater portfolio by selecting Headwater patents to file declaratory judgement actions against. *See, e.g.*, *Google LLC v. Headwater Research LLC*, No. 5:25-cv-07453, Dkt. 1 (N.D. Cal. Sept. 3, 2025) (seeking declaratory judgement of non-infringement of two Headwater patents). Google has also admitted that it is a real party-in-interest in some *Samsung v. Headwater* IPR's. *See, e.g.*, *Samsung Electronics Co. Ltd v. Headwater Research LLC*, IPR2024-00341, Paper 4 at 79 ("Samsung Electronics Co., Ltd ('Samsung') and Google LLC ('Google') are the petitioners and real parties-in-interest.").

Google has been directly involved in the *Headwater v. Samsung* litigations and IPRs and those against the Carriers for years. Google supplied backend smartphone technology (like

12

Android and by providing FCM), and Google has cooperated with Samsung and the Carriers because of their ongoing contractual relationships, including by testifying in the 352 Verizon trial where "Verizon's attorney represented that 'if you sit on this jury, you'll hear from a witness from Apple and you'll hear a witness from Google. You may or may not know Google actually makes the operating system or the program that's running underneath a Samsung phone. They call it Android.'" FAC Dkt. 29 at ¶ 22 (quoting 07/16/2025 Trial Tr. 69:15-23). These are not low-stakes cases; one of them resulted in a $279 million verdict against Samsung and another resulted in a $175 million verdict against one of the Carriers, and Google witnesses testified at both. *Id.* ¶¶ 22. Given the size of this verdict, Google's attorneys at *least* plausibly, if not probably, spent considerable time analyzing Headwater's patents for infringement risk. That analysis clearly included both asserted and unasserted patents, as Google brought declaratory judgments against Headwater naming previously-unasserted patents as noted above. *Id*. The Motion complains Headwater has not identified specific family-member patents, but ignores this litany of cases Google has known about for months and years asserting those many patents.

When accepting all of these facts as true and drawing all reasonable inferences in favor of Headwater, it is more than plausible that Google has long known of its infringement and has been willfully infringing and knowingly inducing infringement.

### C. Google's Case Law Misses the Mark, and Its Analysis Misstates the FAC

*Voip-Pal.com*, discussed above, is the most comparable case and shows that it is plausible that a defendant knew of infringement when they knew of the underlying theory and have been actively monitoring the patents previously asserted against Samsung and the Carriers *and* not-yet asserted patents as evidenced by Google's declaratory judgment action campaign.  2022 WL 1394550 at *1.

None of the cases cited in Google's brief are comparable to the facts here, and none of them involved a case where, as here, Google has been actively monitoring and participating in patent litigation against the plaintiff's patent portfolio, whether previously asserted or newly asserted. Here, the FAC lists over 15 related litigation matters (with several cases resulting in over $400 million in verdicts) implicating Google's infringement of Headwater's patents. This huge degree of risk makes it at minimum plausible that Google monitored and analyzed the Asserted Patents, to inform Google and its contractual partners' ongoing litigation strategy, discuss potential indemnification obligations, and confer on settlement strategy. FAC, Dkt. 29, at ¶¶ 21-24.

Alleged facts supporting Google's pre-suit knowledge of infringement of the Asserted Patents include: (1) explicit pre-suit knowledge of infringement by Google against the Asserted Patents via shared complaints and infringement contentions; (2) Google conducted due diligence analysis on the Headwater's patent portfolio in its defense with Samsung and the Carriers, and (3) the due diligence was so thorough (because it was driven by a $279 million verdict against Samsung and a $175 million verdict against one of the Carriers) that Google learned of its infringement liability for the Asserted Patents. FAC, Dkt. 29 ¶¶ 18-24. None of the cases in Google's Motion addresses this entire set of facts.

Google's arguments for wholesale dismissal of claims completely ignore these allegations of patent portfolio monitoring. By focusing on disputing alleged facts relating to Google's knowledge of the asserted patents and patent family members (in and of itself fatal to Google's Motion), Google chose to completely ignore the unchallenged (and wholly unaddressed) allegations in the complaint that it is actively monitoring Headwater's patent portfolio and the cases implicating its devices, services, and operating systems. *See, e.g.,* Dkt. 34 at 14 (citing *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex.

Nov. 30, 2018); *Neonode Smartphone LLC v. Samsung Elecs. Co.*, No. 6:20-CV-00507-ADA, 2023 WL 5426743, at *3–4 (W.D. Tex. June 27, 2023)).

None of Google's cited cases are comparable to fact (3), that the due diligence was performed with the diligence worthy of cases in the 9-figure range. Spending less than 1% of one of the 9-figure verdicts on due diligence would have allowed enough attorneys to assess Google's exposure to the related Headwater patents and learn of Google's infringement of the Asserted Patents.  It is certainly plausible that Google's attorneys would have conducted such diligence to provide input on settlement strategy and potential indemnification with its customers Samsung and the Carriers. *U.S. v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d. Cir. 1947) (Learned Hand, J.) (due diligence "to provide against resulting injuries is a function of . . . the gravity of the resulting injury").

### D.    Disputed Facts About Pre-Suit Knowledge Based on the Carrier Cases' Complaints Preclude Dismissal

Google's Motion should further be denied because Google disputes the explicitly pleaded fact that Google learned of its infringement of the Asserted Patents through the filing of the Complaint in the Carrier Cases.  As pled in the FAC:

> The 391 Complaint, 428 Complaint, and/or 359 Complaint and the '425, '102, and '451 claim chart exhibits disclosed Headwater's infringement theory against Verizon, T-Mobile, and/or AT&T's (collectively, the "Carriers") devices, ***including Google's devices and/or operating systems and services***. On information and belief, one or more of the Carriers shared the 391 Complaint and claim charts with Google in the April 2025 timeframe.

Although Google protests that "Headwater still has not adequately pleaded that Google had that prior knowledge of *Google's* infringement, via Headwater's prior complaint" (Dkt. 34 at 10), the FAC alleges exactly that.  This is a directly disputed fact that is appropriate for resolution only at

summary judgement or trial, not at the pleading stage. *Thompson*, 764 F.3d at 502. Google even attempt to circumvent the strictures of Rule 12 by beseeching the Court to take judicial notice of claim charts and Complaints from other actions, analyze those documents, and decide this dispute of fact. That overreach—even if it were appropriate—ignores the plainly alleged facts that the infringement contentions in those matters similarly provided pre-suit notice to Google of the patents and their infringement.

Google further complains the references to Google, its devices, and the Android operating system in the Carrier Complaints were insufficient to put Google on notice of its infringement. Dkt. 34 at 11-12. At the time, however, Headwater did not have all of the discovery from Google needed to detail Google's explicit infringement of elements the asserted claim elements, especially because Google was a third-party to those cases. FAC, Dkt. 29 ¶ 18-19. But just because **Headwater** did not have Google's documents necessary to explicitly chart every element, it does not mean that **Google** also lacked Google's documents or knowledge of how its own products infringe. So, when the Carriers shared their Complaints with Google, it is plausible "Google knew or should have recognized that accused products consist of Google's devices and/or operating systems and services" because Google was the entity actually providing the accused features and functionalities. Dkt. 29 ¶ 20. This reasonable inference should be made in favor of Headwater, and Headwater's lack of discovery pre-suit does not negate or make it implausible that Google had more knowledge than Headwater did.

Accordingly, Google's motion should be denied.

### E. Headwater Plausibly Alleged Willful Blindness

Headwater adequately pleaded willful blindness. Google incorrectly argues that there are no "affirmative actions" included in the complaint. Dkt. 34 at 17. But Headwater pleaded exactly that. For example, when the Carriers shared the claim charts and infringement contentions

16

accusing instrumentalities utilizing the Android operating system of infringement, "Google knew or should have recognized that accused products consist of Google's devices and/or operating systems and services" because Google was the entity actually providing the accused features and functionalities.  Dkt. 29 ¶ 20. If Google actively reviewed the Carrier complaints and contentions accusing Google's operating systems' functions described on the Carriers' websites and chose not to investigate this despite Headwater explicitly accusing the Android Operating System included in the present Accused Instrumentalities of patent infringement, then Google remained willfully blind. Google's argument that the complaints or contentions do not cite Google's own websites enough is not credible, given that the complaints and contentions accuse their products through the Carriers' public websites. (i.e. it should not matter to the analysis that a claim chart screenshot showing an Android phone came from the Carrier's sale website, rather than Google's.)

As another example, the FAC pleads that "its customer or business partner Carriers were accused of infringement including by selling Google's devices and/or operating systems services, and instead of seeking to license the patents that Google's Accused Instrumentalities were infringing, Google quietly continued its infringement while simply hoping that it would not be sued." *Id*.  Again, Google was on notice "that there [was] a high probability that a fact [infringement] exists and (2) [it took] deliberate actions to avoid learning of that fact." *Atlas*, 661 F. Supp. 3d at 652.

Google further contends that it could not have been willfully blind as to its infringement, "without an understanding of whether and how Headwater claims the Google Accused Instrumentalities, not the Carriers' Accused Instrumentalities, infringe the Asserted Patents." Dkt. 34 at 18.  But Google produces the Android Operating System accused in the Carrier cases, the same Android Operating System accused here.  To the extent Google contends that it did not have

pre-suit notice, then Google must have willfully ignored Headwater's complaints and infringement contentions.

Again, one of the willfulness theories cannot be dismissed, which means that willfulness cannot be dismissed at all. Either Google actually had pre-suit knowledge of Google infringement of the Asserted Patents, or Google at least knew there was a high risk but chose to ignore it despite the Android Operating System and/or Google devices or services being accused. Google's motion presents no argument for how neither option can be plausible. Either one of these alternatives should prevent dismissal.

## V.    CONTRIBUTORY INFRINGEMENT: NO NEED TO PLEAD ALL NEGATIVES

Headwater clearly pleaded contributory infringement. Dkt. 29 ¶¶ 39,51,63. Google only argues that Headwater did not explicitly plead evidence of the element that there are "no substantial noninfringing uses." Dkt. 34 at 18. Google's Motion has no cases requiring this negative to be pleaded in the Complaint. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) does not apply because it is a summary judgment case, not a Rule 12(b)(6) case. *Medtronic, Inc. v. Mirowski Fam Ventures, LLC*, 571 U.S. 191, 198 (2014) says nothing relevant.

By requiring that Headwater plead that there are no substantial noninfringing uses, Google is trying to "place[] a burden on [plaintiff] to prove a negative in its pleadings. Such a burden is unnecessary." *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-CV-00967-ADA, 2022 WL 2705269, at *8 (W.D. Tex. July 12, 2022); *see also Driessen v. Sony Music Entm't*, 2013 WL 4501063, at *2 (D. Utah Aug. 22, 2013) (denying motion to dismiss and concluding that a plaintiff is not required "to plead a null set under the plausibility standard of *Twombly* and *Iqbal*—that it is impossible to plead with specificity something that does not exist"). The law simply does not require Headwater to plead negative facts.

"[T]he Federal Circuit has held that affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible unless the pleadings undermine that allegation." *Merck Sharp v. Teva Pharms. USA, Inc.*, C.A. No. 14–874–SLR–SRF, 2015 WL 4036951, at *7 (D. Del. Jul 1, 2015) (citing *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). Headwater did exactly that, alleging that the Accused Instrumentalities "are not a staple article of commerce suitable for substantial non-infringing use." Dkt. 29 at ¶ 39, 51, 63.  The nature of the Accused Instrumentalities and identified functionalities within Google's accused architecture provide further support for this allegation. Headwater provided detailed charts in the complaint identifying the accused components, including identifying specific components that are contributorily infringing Headwater's asserted claims by Google's conduct. See, e.g., Dkt. 29 at Exhibit 4 (identifying IoT devices requiring accused functionality for setup).

But now in this motion, Google is both trying to narrow the Accused Instrumentalities to smartphones and at the same time dismiss contributory infringement as to smartphones and every other category of devices, including the IoT devices which require the accused functionality to operate. It simply cannot have it both ways, and at this pleading phase, it should have neither.

Headwater has plausibly pleaded contributory infringement of the Asserted Patents, and Google's Motion to Dismiss this claim should be denied. While the Complaint may not exhaustively list every conceivable non-infringing use, at the motion to dismiss stage, Headwater is not required to definitively prove the absence of such uses. Rather, the plausibility standard requires that the allegations, when viewed in context, suggest that the primary and intended purpose of these components and features is for the allegedly infringing activities and there is no substantial non-infringing use. Therefore, Headwater has plausibly pleaded contributory infringement of the Asserted Patents, and Google's Motion to Dismiss this claim should be denied.

## VI.    <u>CONCLUSION</u>

For the reasons above, Google's motion should be denied in its entirety.

If any part of the FAC is dismissed, then Headwater seeks leave to amend to up to three months into fact discovery, as the Court usually allows, based on any discovery that Google may produce.  *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 782 (W.D. Tex. 2022) ("in accordance with the Court's usual practice, the Court permits [plaintiff] to amend its Complaint after the start of fact discovery"); Standing Order Governing Patent Proceedings at 7 (providing default deadline to amend pleadings after fact discovery); *PacSec3 LLC v. BlackBerry Corp.*, No. 6:22-cv-00128-ADA, Dkt. 38 at 1 (W.D. Tex. Oct 4, 2024) ("parties are permitted to make good-faith amendments to their pleadings up to 16 weeks after the *Markman* hearing without seeking leave").


Dated:   January 12, 2026                              Respectfully submitted,

<div style="margin-left: 50%;">

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com

</div>

Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 12, 2026, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

<div align="right">

*/s/ Marc Fenster*
Marc Fenster

</div>