# Exhibit 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| FLYPSI, INC., (D/B/A FLYP), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:22-cv-00031-ADA |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS .................................................................... 2

    A. Flyp Has No Connection to the WDTX.......................................... 2

    B. Google's Witnesses Are Primarily in, and Sources of Proof Are More Readily Accessible from, the NDCA ................................................ 3

    C. No Known Third-Party Witnesses are Located in the WDTX, but Several Reside in, or Within the Subpoena Power of, the NDCA.................... 4

III. LEGAL STANDARD.......................................................................... 4

IV. THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX................................................................................................ 5

    A. Flyp Could Have Brought This Action in the NDCA........................... 5

    B. The Private Interest Factors Favor Transfer ....................................... 6

        1. The Relative Ease of Access to Sources of Proof Favors Transfer ........... 6

        2. The Cost of Attendance for Willing Witnesses Favors Transfer............... 7

        3. The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Favors Transfer.................................................... 8

        4. Any Practical Problems that Make Trial Easy, Expeditions, and Inexpensive Are Neutral ...................................................................... 10

    C. The Public Interest Factors Favor Transfer ....................................... 12

        1. The Administrative Difficulties Flowing from Court Congestion Favors Transfer or Is Neutral ............................................................. 12

        2. The Local Interest Favors Transfer......................................................... 13

        3. The Court's Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Are Neutral.................................................................................................. 15

V. CONCLUSION.................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
  No. 6:20-cv-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ............................7

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010).........................................................................................8

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020).................................................................................13, 14

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) .....................................................................................9

*BJ Energy Sols., LLC v. Evolution Well Servs., LLC*,
  No. 6:21-cv-00682-ADA, Dkt. 72 (W.D. Tex. June 29, 2022) ...............................13

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)...........................................................................................5

*DataQuill, Ltd. v. Apple Inc.*,
  No. A–13–CA–706–SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014)...............................13

*Decapolis Sys., LLC v. eClinicalWorks, LLC*,
  No. 6:21-cv-00502-ADA, Dkt. 15 (W.D. Tex. Aug. 17, 2021).....................................11

*Decapolis Sys., LLC v. eClinicalWorks, LLC*,
  No. 6:21-cv-00502-ADA, Dkt. 30 (W.D. Tex. Mar. 1, 2022).................................10, 11

*In re DISH Network L.L.C*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...............................1, 11

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) .....................................................................................10

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).................................................................................6, 8, 9

*Gentex Corp. v. Meta Platforms, Inc.*,
  No. 6:21-cv-00755-ADA, 2022 WL 2654986 (W.D. Tex. July 8, 2022).........................8

*In re Google Inc.*,
  No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...............................7, 11

*In re Google LLC*,
  855 F. App'x 767 (Fed. Cir. 2021) .....................................................................................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. 2021) ........................................................14, 15

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ..................................................6

*In re Google LLC*,
No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) ...............................................12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ..........................................................................................................12, 13

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ................................................................................................................10

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ..............................................................................................14

*Honeywell Int'l Inc. v. Zebra Techs. Corp.*,
No. 6:21-cv-01010-ADA, 2022 WL 2161058 (W.D. Tex. June 7, 2022) ..............................10

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ........................................................................................10

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) .............................................................................................6, 7

*L2 Mobile Techs. LLC v. Google LLC*,
No. 6:21-cv-00358-ADA, Dkt. No. 52 (W.D. Tex. Jan. 7, 2022) ....................................6, 7, 8

*LBT IP II v. Uber Techs., Inc.*,
No. 6:21-cv-01210-ADA, 2022 WL 2541355 (Jul. 6, 2022) .................................................13

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
606 F.3d 1353 (Fed. Cir. 2010) ................................................................................................9

*MemoryWeb, LLC v. Samsung Elecs. Co.*,
No. 6:21-cv-00411-ADA, 2022 WL 2195025 (W.D. Tex. June 17, 2022) .............................7

*Moskowitz Fam. LLC v. Globus Med., Inc.*,
No. 6:19-cv-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020) ..............................10

*In re NetScout Sys., Inc.*,
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ...................................................1

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ................................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*ParkerVision, Inc. v. Intel Corp.*,
   No. 6:20-cv-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ................................12

*Phoji, Inc. v. Atlassian, Inc.*,
   No. 6:21-cv-00888-ADA, 2022 WL 2392876 (W.D. Tex. July 1, 2022) ................................9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ..........................................................................................................5

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*,
   No. 2:10-cv-00109-TJW, 2011 WL 13224919 (E.D. Tex. Jan. 12, 2011) ..............................9

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ..............................................................................................4

*In re Samsung Elecs. Co.*,
   2 F. 4th 1371 (Fed. Cir. 2021) ...................................................................................8, 11, 14

*Scramoge Tech. Ltd. v. Apple Inc.*,
   No. 6:21-cv-00579-ADA, 2022 WL 1667561 (W.D. Tex. May 29, 2022) ...........................12

*SITO Mobile R&D IP v. Hulu, LLC*,
   No. 6:20-cv-00472-ADA, 2021 WL 1166772 (W.D. Tex. Mar. 24, 2021) ...........................12

*Sonrai Memory Ltd. v. Oracle Corp.*,
   No. 6:21-cv-00116-ADA, 2022 WL 315023 (W.D. Tex. Feb. 2, 2022) ................................12

*Super Interconnect Techs. v. Google LLC*,
   No. 6:21-cv-00259-ADA, 2021 WL 6015465 (W.D. Tex. Nov. 8, 2021) ......................14, 15

*Unigene Labs., Inc. v. Apotex, Inc.*,
   655 F.3d 1352 (Fed. Cir. 2011) ...........................................................................................7

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ..........................................................................................................5

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ..........................................................................................9, 15

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ...................................................................................5, 6, 8, 14

*XY, LLC v. Trans Ova Genetics, LC*,
   No. 6:16-cv-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017)....................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

28 U.S.C. § 1391 ................................................................................................................5

28 U.S.C. 1400(b) .............................................................................................................5

28 U.S.C. § 1404(a) ..............................................................................................1, 4, 5, 15

**Other Authorities**

MPEP § 2001.06(c) ...........................................................................................................9

PUBLIC VERSION

## I.   INTRODUCTION

Defendant Google LLC ("Google") moves to transfer this action to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). This case has no meaningful connection to the Western District of Texas ("WDTX"). Plaintiff Flypsi, Inc. ("Flyp") is a Boston-based telecommunications company, and neither its employees nor the named inventors of the Patents-in-Suit reside in this District.

On the other hand, undisputed facts favor transferring this case to the NDCA. *First*, nearly all of the known party witnesses for Google are located in the transferee forum. *Second*, most (if not all) of the relevant and material non-party witnesses are located in the transferee forum. If any are unwilling to testify, Google will need a court's subpoena power in the NDCA to compel these witnesses' appearance. *Third*, the primary sources of proof in this action were created and maintained by employees in the transferee forum. The documents and physical evidence in this action are therefore more readily accessible in the NDCA. And *fourth*, the events that form the basis for Flyp's infringement allegations—that is, Google's development of Google Voice—primarily occurred in the NDCA.

Transfer is warranted because no known witness resides in the transferor forum, the sources of proof are more readily accessible from the transferee forum, and the conduct giving rise to the action primarily took place in the transferee forum. *See In re DISH Network L.L.C*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). And while the Court may be presiding over Flyp's co-pending case, *see* No. 6:21-cv-00642-ADA ("Dialpad Litigation"), this fact alone cannot control the § 1404(a) transfer analysis. *See In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021). Google respectfully requests that the Court find the NDCA to be the clearly more convenient forum and grant the instant motion.

PUBLIC VERSION

## II.   STATEMENT OF FACTS

Flyp filed the present action on January 10, 2022, alleging infringement of U.S. Patent Nos. 9,667,770 ("'770 Patent), 10,051,105 ("'105 Patent), 10,334,094 ("'094 Patent"), 11,012,554 ("'554 Patent"), and 11,218,585 ("'585 Patent") (collectively, "Patents-in-Suit"). Compl. ¶¶ 24–28. Flyp accuses Google Voice of infringing the Patents-in-Suit. *See* Compl. ¶¶ 30, 42, 54, 69, 83. The Patents-in-Suit allegedly cover technology for (i) setting up and connecting telephone calls, and delivering information related to said telephone calls using an Internet Protocol (IP) or other data channel, while delivering the voice portion of the call in accordance with telecom voice channel delivery standards; (ii) connecting calls at a switch; and (iii) enabling users to create and own multiple phone numbers on a single mobile device while maintaining the integrity of caller-identification functions. *See* Compl. ¶¶ 12–13. Based on Flyp's allegations, the following Google Voice functionality appears to be at issue in this case: (i) setting up and connecting voice calls using primary and secondary numbers, (ii) routing inbound and outbound calls using bridge numbers and switches, and (iii) maintaining user control over caller ID ("Google Voice Functionality"); *see also* Compl. ¶¶ 29–95.

### A.   Flyp Has No Connection to the WDTX

Flyp is a "Boston-based telecommunications company." Ex. 1.[1] Flyp was incorporated in Delaware, Compl. ¶ 1, and investigations indicate it has never had a place of business in this District. *See* Ex. 2. Flyp's likely witnesses also reside outside this District. As of January 2022, it appears that Flyp's employees—Peter Rinfret, Bob Cleaves, and Jeff Stark—all resided outside of the WDTX. Exs. 3–5. Investigations further indicate that Flyp's likely third-party witnesses—named co-inventors Ivan Zhidov and Sunir Kochar, and patent prosecution attorney Stuart West—

---

[1] All exhibits are attached to the Declaration of Robert W. Unikel, filed concurrently herewith.

also resided outside of the WDTX. Exs. 6–8.

    **B.**    **Google's Witnesses Are Primarily in, and Sources of Proof Are More Readily Accessible from, the NDCA**

    Google's Mountain View headquarters, which includes offices in neighboring Sunnyvale (collectively, "Mountain View") is the strategic center of Google's business. Decl. of Discovery Project Manager ("Discovery Manager Decl.") ¶ 2. As of January 31, 2022 ("January 2022"), the Mountain View headquarters employed approximately ███ employees, which is approximately ███ of Google's U.S. employees. *Id.* As of that date, Google also had approximately ███ other employees in offices in San Francisco, California and other smaller offices also within the NDCA. *Id.* Further, as of January 2022, approximately ███ of Google's ███ total U.S. employees, including engineers, product managers, marketers, executives, and staff were employed out of Google's offices located in the NDCA. *Id.* Finally, although Google has offices in Austin, Texas and San Antonio, Texas, those offices housed only ███ of Google's U.S. employees as of January 2022. *Id.*

    It is therefore not surprising that Google's likely witnesses are primarily in the NDCA. For example, the Google teams that handle the engineering for Google Voice are primarily based in the NDCA. Decl. of Product Manager ("Product Manager Decl.") ¶ 7. Specifically, Google has identified five full-time employees with extensive knowledge about Google Voice Functionality and who have had decision-making responsibility regarding this functionality. *Id.* Each of these employees is based in the NDCA. Other than the engineering team, Google full-time employees with material knowledge about the marketing and sales of Google Voice are based in Seattle, the NDCA, and Washington, D.C. Discovery Manager Decl. ¶¶ 6–9.

    Certain sources of proof in this case are more readily accessible from the NDCA, as well. For example, as a matter of practice, documents about Google's products and services are typically

created and maintained by the employees working on those products and services—most of whom, as explained above, are based in the NDCA. Discovery Manager Decl. ¶ 3. Consequently, nearly all of the relevant technical documents for Google Voice are created and maintained by employees in the NDCA, and thus more easily retrievable from the NDCA. ████████████████████ ██████████████████████████████████████████ Product Manager Decl. ¶ 8. Certain physical devices ████████████████████████ are therefore located in the NDCA. *Id.*

### C. No Known Third-Party Witnesses are Located in the WDTX, but Several Reside in, or Within the Subpoena Power of, the NDCA

Google has identified 17 third-party witnesses who reside in, or within the subpoena power of, the NDCA. Nine are named inventors of prior art who can provide critical testimony regarding issues of invalidity. Exs. 11, 14–17, 20, 23–25. Employees of third-party corporations with relevant prior art systems—such as RingCentral Office and Cisco BroadWorks—also reside in the transferee forum, including at least five individuals Google has preliminarily identified who might have knowledge of those systems. Exs. 29–30, 32–34. The two founders of a critical prior art system—GrandCentral—also reside in the NDCA. Exs. 36–37. Finally, the attorney responsible for prosecuting the '554 and '585 Patents—Stuart West—is of particular importance to one of Google's defenses in this action and resides in the NDCA. Ex. 8.

## III. LEGAL STANDARD

District courts may transfer civil actions "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a). A motion to transfer pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient . . . ." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citation omitted). Section 1404(a) is meant to serve as a check on plaintiffs who "seek not simply justice but perhaps justice

blended with some harassment." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("*Volkswagen II*") ("The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).").

To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *Id.* at 312 (citation omitted). If so, the court weighs eight private and public interest factors:

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* at 315 (citation omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). The "deliberate conduct of a party favoring trial in an inconvenient forum" should not be credited in a court's transfer analysis. *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964). And "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

## IV.    THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX

### A.    Flyp Could Have Brought This Action in the NDCA

Google is headquartered in the NDCA. Discovery Manager Decl. ¶ 2. Flyp could have therefore filed this lawsuit in the NDCA, where Google has a "regular and established place of business." 28 U.S.C. § 1400(b); *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The transfer analysis thus turns on weighing the private and public interest factors.

**B.     The Private Interest Factors Favor Transfer**

**1.     The Relative Ease of Access to Sources of Proof Favors Transfer**

This factor turns on the relative access to sources of evidence—*i.e.*, "documents and physical evidence"—in the two competing forums. *See Volkswagen II*, 545 F.3d at 315; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). In this case, this factor strongly favors transfer.

Under this factor, courts consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Further, under this factor, "the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *See XY, LLC v. Trans Ova Genetics, LC*, No. 6:16-cv-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) ("The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" (citations omitted)). In this case, both documents and certain physical evidence are more easily accessible from the NDCA. For instance, documents about Google's products and services are normally created and maintained by the employees working on those products and services, Discovery Manager Decl. ¶ 3, and most of the employees working on Google Voice Functionality are based in the NDCA. Product Manager Decl. ¶ 7. This fact favors transfer. *See L2 Mobile Techs. LLC v. Google LLC*, No. 6:21-cv-00358-ADA, Dkt. No. 52 at 7 (W.D. Tex. Jan. 7, 2022) (following "the Federal Circuit's lead" and weighing the evidence created and maintained by NDCA-based Google personnel in favor of transfer). Third-party witnesses residing in the NDCA also may possess documents relevant to issues of invalidity, noninfringement, and

███████████████

damages. *Supra* Section II.C.[2] *See MemoryWeb, LLC v. Samsung Elecs. Co.*, No. 6:21-cv-00411-ADA, 2022 WL 2195025, at *3 (W.D. Tex. June 17, 2022) ("This Court has previously recognized that the location of third-parties 'necessarily implicate[s] the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents.'") Finally, certain physical devices ████████████████████████████████████████████ are located in the NDCA. Product Manager Decl. ¶ 8. This fact also favors transfer.

In sum, when the two forums are "fairly weighed against one another, this factor tips significantly in Google's favor." *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017); *see also Juniper Networks*, 14 F.4th at 1321 (analyzing "the difference between the two venues with respect to the sources of proof"). Google respectfully requests that the Court find this factor strongly favors transfer.

## 2.     The Cost of Attendance for Willing Witnesses Favors Transfer

This factor also strongly favors transfer. Indeed, "this Court has previously recognized Google's strong presence in the NDCA." *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-00810-ADA, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021). Here, nearly all of Google's party witnesses reside in the NDCA, whereas *none* of the party witnesses in this case reside in the WDTX. Specifically, Google has identified five employees that have extensive and material knowledge about Google Voice Functionality. Product Manager Decl. ¶ 7. Google has also identified the employee with the most knowledge regarding the marketing of Google Voice, and whose testimony may be relevant to damages in this case. Discovery Manager Decl. ¶¶ 6–9. Five of these likely witnesses reside in the NDCA, and one resides near the NDCA, in Seattle, Washington.

---

[2] Google has "reason to believe" documents held by Mr. West are not subject to privilege. *L2 Mobile*, Dkt. 52 at 9; *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1358–59 (Fed. Cir. 2011) (holding that "both fraudulent misrepresentations and omissions can support a finding of common law fraud" to pierce the attorney-client privilege).

Their convenience should be given considerable weight. *See Genentech*, 566 F.3d at 1343; *Gentex Corp. v. Meta Platforms, Inc.*, No. 6:21-cv-00755-ADA, 2022 WL 2654986, at *7 (W.D. Tex. July 8, 2022) ("These identified individuals [in Washington State] can drive or take a short flight to the courthouses in the NDCA, testify for several hours, and return home within the same day.").

"It is an 'obvious conclusion' that it is more convenient for witnesses to testify at home." *Volkswagen*, 545 F.3d at 317. Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id.* Here, transfer to the NDCA would allow most willing witnesses "to testify at home." If the Court denies the instant motion, the above witnesses will need to travel about 1,700 miles from the NDCA to Waco, resulting in costly and unnecessary travel expenses, missed work, and personal disruptions. Ex. 38; *see In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (holding that the willing witness factor favors transfer where "[a] substantial number of party witnesses . . . and prosecuting attorneys" reside in the transferee forum) ("These costs would be significantly minimized or avoided by transferring the case to Northern California.").

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *Genentech*, 566 F.3d at 1343 (citation omitted). Here, because nearly all relevant witnesses reside within or near the NDCA—and none reside within the WDTX—the NDCA is the clearly more convenient forum. Google respectfully requests that the Court find this factor strongly favors transfer. *See In re Samsung Elecs. Co.*, 2 F. 4th 1371, 1379 (Fed. Cir. 2021) ("[W]ith nothing on the other side of the ledger, the factor strongly favors transfer.").

### 3. The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Favors Transfer

"This factor 'weighs heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.'" *L2 Mobile*, Dkt. 52 at 10 (quoting

*In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)). Google has identified at least 17 witnesses in the NDCA who can provide relevant and material testimony regarding issues of invalidity, noninfringement, and damages. *Supra* Section II.C. Google has also identified third-party entities in the transferee venue—RingCentral and Cisco—that have pertinent information regarding prior art systems. These entities likely employ relevant prior art witnesses beyond the five already identified by Google that the NDCA could compel to testify. *See Phoji, Inc. v. Atlassian, Inc.*, No. 6:21-cv-00888-ADA, 2022 WL 2392876, at *6 (W.D. Tex. July 1, 2022) ("Slack, an NDCA-based company, likely employs relevant prior art witnesses that the NDCA could compel to testify."). Finally, Google will seek to depose Flyp's patent prosecution attorney, Stuart West. When prosecuting U.S. Application No. 17/243,041, which issued as the '585 Patent, Flyp did not affirmatively disclose the existence of pending litigation involving the '770, '105, '094, and '554 Patents until after the '585 Patent had already issued. This nondisclosure may constitute inequitable conduct, resulting in the unenforceability of the '585 Patent. *See* MPEP § 2001.06(c); *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362 (Fed. Cir. 2010) (holding that litigation involving the "parent patents" falls under the requirements of MPEP § 2001.06(c)). Mr. West resides in the NDCA. Ex. 9.

This factor therefore strongly favors transfer. *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."); *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("*Volkswagen I*") (noting the "relevance and materiality" of non-party witnesses). This factor further "stresses the convenience *to a party* in having a particular court with subpoena power over relevant and material witnesses." *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, No. 2:10-cv-00109-TJW, 2011 WL 13224919, at *3 (E.D. Tex. Jan. 12, 2011) (emphasis added). Google requires the subpoena power of courts in the NDCA to fully put on its defense in this case, as none of the

identified third-party witnesses can be compelled to appear in the WDTX. Google respectfully requests that the Court find this factor favors transfer.

### 4. Any Practical Problems that Make Trial Easy, Expeditions, and Inexpensive Are Neutral

Under this factor the Court "considers problems such as those rationally based on judicial economy . . . ." *Moskowitz Fam. LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *5 (W.D. Tex. July 2, 2020). Questions of judicial economy are decided on "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). Therefore, any "subsequent familiarity" the Court gained about the Patents-in-Suit "*after* the filing" of the present lawsuit does not weigh against transfer. *Id.*; *see also In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) (finding that the district court "had no familiarity with any of the issues" at the time the suit was instituted). Here, Flyp filed its complaint against Google on January 10, 2022. At that time, the Court's familiarity with the Patents-in-Suit was nominal, if it existed at all. The co-pending Dialpad Litigation had not yet proceeded to a *Markman* hearing, which is relevant for this factor. *See* Dialpad Litigation, Dkt. Nos. 24, 26, 33, 49; *Honeywell Int'l Inc. v. Zebra Techs. Corp.*, No. 6:21-cv-01010-ADA, 2022 WL 2161058, at *8 (W.D. Tex. June 7, 2022) ("This case has not proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor biases toward transfer."). Courts in the NDCA were also unfamiliar with the Patents-in-Suit as of January 10, 2022, so this factor is neutral.

Even if the Court finds that the mere "existence of duplicative suits involving the same or similar issues may create practical problems," this factor cannot outweigh "each of the factors in favor of transfer." *See Decapolis Sys., LLC v. eClinicalWorks, LLC*, No. 6:21-cv-00502-ADA, Dkt. 30 at 7, 13 (W.D. Tex. Mar. 1, 2022). This is especially true where, as here, no known

witnesses reside in the transferor forum, no evidence is more readily accessible in the transferor forum, and none of the conduct giving rise to the action took place in the transferor forum. *See DISH Network*, 2021 WL 4911981, at *3 (discussing *Samsung*, 2 F.4th at 1379); *see also Google Inc.*, 2017 WL 977038, at *2 n.1 (finding abuse of discretion where, "[h]aving no basis other than judicial economy for denying transfer, the district court still ruled in [non-movant's] favor").

The Court's recent decision in *Decapolis* is instructive. There, plaintiff Decapolis filed multiple lawsuits in this District involving "the same patents and questions." *Decapolis*, Dkt. 30 at 8. Notwithstanding the co-pending lawsuits, this Court granted defendant eClinical's transfer motion because "the sources of proof, cost of attendance for willing witnesses, and local interest factors" all favored transfer. *Id.* at 13. The Court concluded that, in light of the weight accorded to each of these factors favoring transfer, the transferee forum was a "clearly more convenient forum than the WDTX despite relevant judicial efficiency concerns." *Id*.

The same analysis applies here. Like in *Decapolis*, the sources of proof factor, *supra* Section IV.B.1, cost of attendance for willing witnesses factor, *supra* Section IV.B.2, and local interest factor, *infra* Section IV.C.2, all favor transfer. And like in *Decapolis*, the co-pending action here does not involve the same accused products. *See Decapolis Sys., LLC v. eClinicalWorks, LLC*, No. 6:21-cv-00502-ADA, Dkt. 15 at 10 (W.D. Tex. Aug. 17, 2021); *see also DISH Network*, 2021 WL 4911981, at *4 (holding judicial economy does not outweigh factors favoring transfer where the co-pending suits involve "different software"); *Samsung*, 2 F.4th at 1379 (finding judicial economy concerns "overstated" where co-pending action "involves an entirely different underlying application"). The Google Voice application accused of infringing the Patents-in-Suit is different software and a "different underlying application" than the application accused in the Dialpad Litigation. This action and the Dialpad Litigation will therefore likely result in "significantly different discovery and evidence." *DISH Network*, 2021 WL 4911981, at *4.

While the WDTX might be a convenient forum for the Dialpad Litigation, the co-pendency of that case does not allow Flyp to bootstrap successive suits in this District. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022) ("[J]ust because a patent is litigated in a particular [forum] does not mean the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that [forum]." (citations omitted)). Finding otherwise would encourage plaintiffs to gerrymander venue simply by filing successive cases in a specific district. Google respectfully requests that the Court find this factor neutral. *Accord ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021) (finding this factor neutral despite co-pending lawsuits involving "the same patents but different defendants, products, and witnesses"); *Sonrai Memory Ltd. v. Oracle Corp.*, No. 6:21-cv-00116-ADA, 2022 WL 315023, at *3 (W.D. Tex. Feb. 2, 2022) (same). *Cf. Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA, 2022 WL 1667561, at *9 (W.D. Tex. May 29, 2022) (granting transfer despite having consolidated the co-pending cases for claim construction).

### C. The Public Interest Factors Favor Transfer

#### 1. The Administrative Difficulties Flowing from Court Congestion Favors Transfer or Is Neutral

"Administrative difficulties manifest when litigation accumulates in congested centers instead of being handled at its origin." *SITO Mobile R&D IP v. Hulu, LLC*, No. 6:20-cv-00472-ADA, 2021 WL 1166772, at *8 (W.D. Tex. Mar. 24, 2021) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)), *vacated on other grounds*, *In re Hulu LLC*, No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021). Under this factor, courts consider "whether there is an appreciable difference in docket congestion between the two forums." *Id.* (citation omitted).

This factor favors transfer because the "origin" of this case is the NDCA, not the WDTX. *See infra* Section IV.C.2. Moreover, this District has recently become one of the "congested

██████████

centers" contemplated in *Gulf Oil*. *See, e.g.*, Ex. 39 at 5–6 (showing WDTX as the top patent litigation district in the country and the Honorable Judge Albright presiding over 19% of all patent cases filed in Q1 2022); Ex. 40 at 2, 7–8 (showing that the Honorable Judge Albright presided over 23% of all patent cases filed in 2021, and that over the past three-years, the Honorable Judge Albright has presided over 16.9% of all patent cases. Second on the list is the Honorable Judge Gilstrap, presiding over 6.8% of all patent cases).

Notwithstanding the high-volume of patent cases before this Court, "[a]ttempting to accurately understand another court's docket from the outside is always a difficult task." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014). This is particularly true for this Court, which carries approximately 873 active patent cases but still reaches trial faster than most other dockets in the country. Ex. 41 at 3; *see BJ Energy Sols., LLC v. Evolution Well Servs., LLC*, No. 6:21-cv-00682-ADA, Dkt. 72 at 16 (W.D. Tex. June 29, 2022) (noting this Court's "proven track record to expeditiously resolve patent cases"). The NDCA, on the other hand, has 19 judges to share a total of approximately 253 active patent cases. Ex. 41 at 8. This is why the Federal Circuit has reiterated that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020). Thus, to the extent this factor is relevant, it slightly favors transfer.

Alternatively, the Court should hold this factor neutral for the same reasons it did in *LBT IP II v. Uber Techs.*, No. 6:21-cv-01210-ADA, 2022 WL 2541355, at *6 (Jul. 6, 2022) ("Although this District is more congested than the NDCA in terms of caseload, the median time-to-trial is significantly faster in the WDTX."). The Court is presented with the same calculus here as in that case. Google respectfully requests that the Court find this factor favors transfer or is neutral.

## 2.    The Local Interest Favors Transfer

This factor strongly favors transfer because the "relevant events leading to the infringement

████████████

claims" took place in the NDCA, and not the WDTX. *Samsung*, 2 F.4th at 1380. For example, as of January 2022, most of the Google engineers who worked on and developed Google Voice Functionality were based in the NDCA. Product Manager Decl. ¶¶ 7–8.  This means that "the locus of the events that gave rise to the dispute" is in the NDCA, and not the WDTX. *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. 2021); *see also Apple*, 979 F.3d at 1345 (weighing in favor of transfer where "the accused products were designed, developed, and tested"). The NDCA thus has "a legitimate interest in adjudicating [this case] 'at home.'" *Samsung*, 2 F.4th at 1380.

This factor also favors transfer because Google was founded and maintains its headquarters in the NDCA, and because most employees with relevant knowledge of Google Voice are based in the NDCA. Discovery Manager Decl. ¶ 2; Product Manager Decl. ¶ 7. The cause of action therefore "calls into question the work and reputation of several individuals residing in or near [the NDCA]." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also Super Interconnect Techs. v. Google LLC*, No. 6:21-cv-00259-ADA, 2021 WL 6015465, at *10 (W.D. Tex. Nov. 8, 2021) (holding that "[t]he NDCA would certainly have an interest in this case").

On the other hand, the WDTX has a relatively small interest in this case, if any. To begin, Google's general presence in Austin does not give this District "a special interest in the case." *Google*, 2021 WL 4592280, at *5. Google's Austin office—and the activities that take place there—bear no relation and are "not tethered" to this case. *See In re Google LLC*, 855 F. App'x 767, 768 (Fed. Cir. 2021). And the fact that residents in the WDTX may use Google Voice is not relevant to the transfer analysis—if it were, then every district in the country would have a localized interest in deciding this case. *See Hoffman-La Roche*, 587 F.3d at 1338 (concluding that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *Volkswagen II*, 545 F.3d at 318 (finding this rationale "eviscerates the public

interest that this factor attempts to capture" because it "could apply virtually to any judicial district or division in the United States"). Finally, Flyp has no meaningful corporate connection to the WDTX, and none of its relevant employees reside in or near this District. *Supra* Section I.A; *cf.* *Super Interconnect*, 2021 WL 6015465, at *10 (finding a local interest where plaintiff "was founded in the WDTX").[3]

At bottom, the WDTX has "no factual connection with the events" that form the basis for Flyp's infringement claims. *Volkswagen I*, 371 F.3d at 206, Google respectfully requests that the Court find this factor favors transfer.

### 3. The Court's Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Are Neutral

The courts in both forums are experienced with the issues relevant to this case, and no conflicts-of-law issues are present. These factors are neutral.

## V. CONCLUSION

The NDCA is the "clearly" more convenient forum. Nearly all of Google's likely witnesses are located in or near the NDCA, where relevant documents were created and are maintained and where certain physical evidence is located. Google will also need the compulsory process of courts in the NDCA, while no relevant third-party witnesses reside in the WDTX. In total, except for Flyp's co-pending lawsuit, there are no facts tying this case to this District. Google respectfully requests that the Court grant its motion and transfer this case to the NDCA under 28 U.S.C. § 1404(a).

---

[3] Even if Google's office in Austin, and the fact of its sales in the WDTX, give rise to some nominal local interest in this District, the localized interest in the NDCA is far greater and favors transfer. *See Google*, 2021 WL 4592280, at *6 (holding that "[u]nder the circumstances," the WDTX does not have a local interest "that is comparable to that of the Northern District of California").

███████████

DATED: July 19, 2022

Respectfully Submitted,

/s/ Robert W. Unikel
Robert W. Unikel (*Pro Hac Vice*)
robertunikel@paulhastings.com
John A. Cotiguala (*Pro Hac Vice*)
johncotiguala@paulhastings.com
Daniel J. Blake (*Pro Hac Vice*)
danielblake@paulhastings.com
Grayson S. Cornwell (*Pro Hac Viceg*)
graysoncornwell@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Robert R. Laurenzi (*Pro Hac Vice*)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Elizabeth Brann (*Pro Hac Vice*)
elizabethbrann@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Joshua Yin (*Pro Hac Vice*)
joshuayin@paulhastings.com
David M. Fox (*Pro Hac Vice*)
davidfox@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Paige Arnette Amstutz
State Bar No.: 00796136
pamstutz@scottdoug.com
SCOTT, DOUGLASS & MCCONNICO, LLP

███████████

303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for the parties to this motion conferred in a good-faith effort on July 18, 2022 to resolve the matter presented herein. Counsel for Plaintiff opposes the instant motion.

*/s/ Robert W. Unikel*
Robert W. Unikel

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2022, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document throught the Court's CM/ECF system and by email.

*/s/ Robert W. Unikel*
Robert W. Unikel