# Exhibit 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA GREIST, et al.,

Plaintiffs,

v.

LENDUS, LLC, et al.,

Defendants.

Case No. 24-cv-02411-AMO

**ORDER GRANTING PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY THE COLLECTIVE ACTION AND MOTION FOR EQUITABLE TOLLING**

Re: Dkt. Nos. 40, 45

This action arises out of Plaintiffs' allegations that Defendants LendUS, LLC and CrossCountry Mortgage, LLC instituted a policy and practice of discouraging Loan Assistants and Loan Processors from reporting overtime work and failing to compensate those employees for such work. Plaintiffs bring a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., as well as a putative class action for various alleged California Labor Code violations.

Pending before the Court are Plaintiffs' motion to certify the FLSA collective action and motion for equitable tolling of the statute of limitations for potential opt-in plaintiffs. (ECF 40, 45-1.)[1] During the April 24, 2025 case management conference, the Court granted Defendants leave to file a belated opposition to Plaintiffs' motion to certify the collective action. (*See* ECF 68.) The motion was fully briefed on May 12, 2025, and upon reviewing the parties' submissions, the Court determines the matter is suitable for resolution without oral argument. *See* Civ. L.R. 7-1(b).

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Further, the parties agreed the motion for equitable tolling could be decided without a hearing. (*See* ECF 68 at 11.) Now, having considered the moving papers and relevant authority, the Court **GRANTS** both motions.

## I. MOTION TO CONDITIONALLY CERTIFY THE COLLECTIVE ACTION

Plaintiffs move to conditionally certify a collective action prior to full discovery based on the allegations in the Amended Collective and Class Action Complaint as well as the supporting declarations submitted by Zimmerman and Green. Defendant LendUS opposes, arguing Plaintiffs have failed to bear even the light burden of conditional certification and cannot show by substantial allegations that the Plaintiffs are "similarly situated" to potential opt-in plaintiffs.[2] The Court addresses these arguments in turn.

### A. Legal Standard

Under 29 U.S.C. § 216(b), a plaintiff may institute an action "against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . for and in behalf of himself or themselves and other employees similarly situated." These "collective actions" permit workers to "litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). "In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective action under the FLSA must 'opt in' to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment." *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1028 (N.D. Cal. 2017) (citations omitted). "Employees who do not opt in are not bound by a judgment and may subsequently bring their own action." *Id*.

Certification of an FLSA collective action proceeds in two stages. The preliminary certification stage occurs prior to any significant discovery and "refers to the dissemination of

---

[2] Defendant also argues that certification of a collective action would be futile since "all relevant employees were terminated or otherwise stopped working by May 2022." (ECF 66 at 17.) Consequently, even with a three-year statute of limitations for "willful" conduct, there would be no potential opt-in plaintiffs. The Court resolves this argument in its discussion of the motion for equitable tolling.

2

notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Campbell*, 903 F.3d at 1109. "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id*. (citations omitted). The court's review at this stage is "lenient"—often articulated as requiring "substantial allegations" or a "reasonable basis"—and is "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id*. The second stage permits a defendant to move to decertify the collective action following discovery and requires a more exacting analysis of the plaintiffs' case, equivalent to summary judgment. *Id*. at 1109, 1119.

At either stage, the district court's inquiry focuses on whether the plaintiffs are "similarly situated" under the FLSA. Though the statute itself is silent on the term's definition, the Ninth Circuit has defined "similarly situated" to mean "a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id*. at 1115. To conditionally certify a collective action, "[d]istrict courts have required 'little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent.'" *Zeman v. Twitter, Inc.*, 747 F. Supp. 3d 1275, 1283 (N.D. Cal. 2024) (citation omitted). Further, "[u]nder section 216(b), if the party plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims." *Id*. (emphasis in original).

Given the parties have not engaged in significant discovery, the Court considers conditional certification at the first stage.

**B.   Analysis**

Plaintiffs seek conditional certification of a collective action comprising:

> [A]ll Loan Assistants and Loan Processors, however variously titled,

3

|  |  |
|---|---|
| 1 | employed by LendUS at any time during the three years preceding the filing of this lawsuit who did not receive compensation for all of their overtime hours worked. |
| 2 | |

3    (ECF 19 ¶ 11.)  Based on the Amended Complaint's allegations as well as the Zimmerman and

4    Green Declarations, Plaintiffs have met their burden for conditional certification of the collective

5    action.  To establish the Loan Assistants here are "similarly situated," Plaintiffs allege a "common,

6    uniform, and widespread policy and practice that discouraged Loan Assistants and Loan

7    Processors from reporting overtime hours."  (*Id*. ¶ 6.)  They further allege "LendUS instituted and

8    continued this policy and practice notwithstanding the fact that it assigned work to Loan

9    Assistants and Loan Processors that could not reasonably be completed in a 40-hour work week,

10   such that Loan Assistants and Loan Processors regularly worked more than 40 hours in a work

11   week, without compensation for their off-the-clock overtime hours worked and at an appropriate

12   overtime rate of pay."  (*Id*. ¶ 8.)  Irrespective of any written policy, Plaintiffs assert the practice at

13   LendUS was to discourage Loan Assistants from reporting overtime, (*id*. ¶ 46), and instruct

14   employees "to clock in at the beginning and out at the end of their scheduled shift, in order to

15   avoid any additional labor costs, regardless of the time they actually worked," (*id*. ¶ 45).

16           The Zimmerman and Green Declarations provide additional points of similarity among the

17   collective.  For instance, both declarants describe their job responsibilities, including overlap with

18   other Loan Assistants/Loan Processors based on discussions had with their colleagues in the

19   workplace.  (*See* ECF 40-4 ¶ 3; ECF 40-5 ¶ 3.)  Both declarants describe the number of unpaid

20   overtime hours worked, the lack of uninterrupted meal breaks, and interactions with supervisors

21   indicating unlogged overtime was expected.  (*See* ECF 40-4 ¶¶ 8-12; ECF 40-5 ¶¶ 7-11.)

22   Zimmerman and Green also attest to conversations with other Loan Assistants/Loan Processors

23   indicating a widespread policy of unpaid overtime work.  (*See* ECF 40-4 ¶¶ 15-17; ECF 40-5 ¶¶

24   14-16.)  These conversations involved other named employees, with similar job duties, and

25   included discussion of the after-hours work each employee conducted as well as their

26   underpayment.  Under the "lenient" standard of review for preliminary certification, Plaintiffs

27   have provided "substantial allegations" that LendUS Loan Assistants and Loan Processors are

28   "similarly situated" for purposes of an FLSA collective action.

4

1         Defendant LendUS raises various counterarguments to certification—none is persuasive.

2 First, Defendant asks the Court to consider evidence it offers which cuts against Plaintiffs' claims.

3 (ECF 66 at 14.) In support, Defendant cites district court decisions such as *Luksza v. TJX*

4 *Companies, Inc.*, No. 2:11-CV-01359-JCM, 2012 WL 3277049, at *11 (D. Nev. Aug. 8, 2012).

5 However, in *Luksa*, significant discovery had taken place prior to the motion for certification.

6 2012 WL 3277049, at *1 (noting the parties had conducted significant amounts of discovery and

7 depositions of all plaintiffs). Because this case is at its early stages, the Court employs a

8 plausibility standard to determine whether Plaintiffs have offered "substantial allegations" of an

9 FLSA violation. *Campbell*, 903 F.3d at 1109; *see also Sanchez v. Sephora USA, Inc.*, No. 11-

10 03396 SBA, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012) ("[F]ederal courts are in

11 agreement that evidence from the employer is not germane at the first stage of the certification

12 process, which is focused simply on whether notice should be disseminated to potential

13 claimants."). Even if the Court did consider Defendant's proffered evidence—severance

14 agreements with FLSA claim waivers—those agreements would likely have no legal effect here,

15 since FLSA claims "cannot be abridged by contract or otherwise waived because this would

16 'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to

17 effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

18         Second, Defendant asserts there is no widespread, unlawful practice because Plaintiffs

19 have not presented "credible evidence" a supervisor "discouraged or obstructed" employees from

20 accurately reporting their time. (ECF 66 at 19-20.) Defendant further relies on the Merritt

21 Declaration to argue the approval of some overtime for Plaintiffs indicates no such unlawful

22 practice existed. (*Id*. at 20.) Defendant misapprehends the applicable standard for conditional

23 certification. Prior to any discovery, the Court does not wade into assessments of credibility, the

24 weighing of the evidence, or the merits. *See, e.g.*, *Carter v. XPO Last Mile, Inc,* No. 16-CV-

25 01231-WHO, 2016 WL 5680464, at *2 (N.D. Cal. Oct. 3, 2016) ("Courts have also rejected

26 attempts by defendants to introduce evidence going to the merits of plaintiffs' allegations at the

27 notice stage."); *see also Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL

28 723599, at *7 (N.D. Cal. Mar. 18, 2009) (same). A variety of conclusions could be drawn from

the fact that LendUS paid some amount of overtime to its employees. But considering such evidence is the purpose of a motion to decertify the collective, which occurs later in litigation and benefits from more fulsome discovery. *See Campbell*, 903 F.3d at 1117-18. At this preliminary stage, the Court cannot discredit Plaintiffs' allegations and declarations based solely on the Merritt Declaration.

Third, Defendant argues the Court should not credit the contents of Plaintiffs' declarations because they refer to "vague" conversations with other employees and lack "detail or credibility." (ECF 66 at 21.) As already explained, arguments regarding the credibility of evidence are premature at the preliminary certification stage. Plaintiffs' burden requires only that they provide "substantial allegations" supported by declarations. To the extent Defendant relies on out-of-circuit authority to contest the validity of Plaintiffs' declarations, such cases are distinguishable.

For instance, in *Sanchez v. JMP Ventures, L.L.C.*, the district court denied conditional certification of a collective action involving "all tipped employees, including delivery persons, bussers, runners, waiters and bartenders" at a restaurant chain. No. 13 CIV. 7264 KBF, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014). The plaintiff was a delivery person and submitted a single declaration to establish all five categories of employees were subject to a common policy or practice based on his undescribed "observations" and "conversations" with others. *Id*. at *2. Plaintiffs here have supplied additional declarations, each of which provides details of the conversations had with other employees as well as managers regarding overtime expectations and the basis for the overtime work. (*See, e.g.*, ECF 40-4 ¶¶ 12, 16-18; ECF 40-5 ¶¶ 14-17.) Plaintiffs also attest to team meetings that confirmed similar job duties and treatment among LendUS Loan Processors. (*See* ECF 40-4 ¶ 15.) Further, Plaintiffs seek to conditionally certify a collective comprised of other employees with the same job title and responsibilities, i.e. Loan Assistants/Processors, not additional dissimilar positions, as in *Sanchez*. Defendant's remaining authority is likewise distinguishable, as the proffered declarations in those cases either did not provide the same level of detail as here, or the court applied a different standard. *See Ali v. New York City Health & Hosps. Corp.*, No. 11 CIV. 6393 PAC, 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013) (denying certification because plaintiff's conversations with other employees did

6

1   not address where they worked or why they worked more than 40 hours per week); *Mitchell v.*
2   *Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020) (denying certification when the
3   submitted declarations provided "no indication of what locations these individuals worked at, nor
4   any indication of whether they were paid on a salaried or hourly basis"); *Palacios v. Boehringer*
5   *Ingelheim Pharms., Inc.*, No. 10-22398-CIV-UU, 2011 WL 6794438, at *4 (S.D. Fla. Apr. 19,
6   2011) (applying an "opt-in interest" requirement that is not present in the Ninth Circuit).

7     Fourth, Defendant asserts this case is ill-suited to collective treatment because the claims
8   "must be resolved on individual testimony" and are "not amenable to common proof." (ECF 66 at
9   22.) Again, such arguments are appropriate at the decertification stage when the Court will
10  consider the results of discovery and apply a summary judgment standard. *See, e.g.*, *Deatrick v.*
11  *Securitas Sec. Servs. USA, Inc.,* No. 13-CV-05016-JST, 2014 WL 5358723, at *4 (N.D. Cal. Oct.
12  20, 2014) (noting arguments about "disparate factual and employment settings" and "the various
13  defenses available to the defendant with respect to each plaintiff" were for the decertification
14  stage). Additionally, even if the case required certain individualized inquiries among the members
15  of the collective, that would not necessarily prohibit collective treatment. As the Ninth Circuit
16  held in *Campbell*, "the district court may be able to decertify where conditions make the collective
17  mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed collectively
18  based on its perception of likely inconvenience." *Campbell*, 903 F.3d at 1117. So long as there is
19  a "similar issue of law or fact material to the disposition" of the FLSA claim, the action may
20  proceed collectively as to that issue. *Id*. These nuanced factual questions are better left for a
21  motion to decertify the collective, when the Court can assess a more fully developed record.

22    Lastly, Defendant argues Plaintiffs have failed to show "opt-in interest" by other potential
23  litigants. (ECF 66 at 25.) Though Defendant acknowledges the Ninth Circuit Court of Appeals
24  has not weighed in on this element, it points to a limited number of district court decisions
25  requiring a plaintiff demonstrate such interest. (*Id*. (citing *Silverman v. SmithKline Beecham*
26  *Corp.*, No. CV 06-7272, 2007 WL 6344674, at *2 (C.D. Cal. Oct. 15, 2007), and *Hargrove v.*
27  *Sykes Enterprises, Inc.*, No. CIV. 99-110-HA, 1999 WL 1279651, at *4 (D. Or. June 30, 1999)).)
28  The Court is not persuaded. To begin, an "opt-in interest requirement" at the conditional

certification stage makes little sense. Since the purpose of conditional certification is to provide notice so other potential plaintiffs may opt in, such a requirement at this early stage would put the cart before the horse. *Campbell*, 903 F.3d at 1101 ("'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals."); *see also Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (observing an opt-in interest requirement "puts the named plaintiff[s][in] the 'ultimate chicken and egg dilemma'" (citation omitted)). Moreover, an opt-in interest requirement could result in plaintiffs employing notice procedures without the court approval process. Plaintiffs would need some method of seeking out opt-in plaintiffs prior to the conditional certification stage, and that method would not benefit from motion practice to test the means and content of such a notice. So, the Court declines to import an "opt-in interest requirement" into the conditional certification stage.

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion to conditionally certify a collective action. However, for the reasons discussed in the Court's analysis of Plaintiffs' motion for equitable tolling, the definition of the collective class will be amended as follows:

> [A]ll Loan Assistants and Loan Processors, however variously titled, employed by LendUS at any time during the three years preceding the filing of ***the motion to conditionally certify the collective action, i.e. September 4, 2024,*** who did not receive compensation for all of their overtime hours worked.

### C. Plaintiffs' Proposed Notice Form

In addition to certifying the collective action, Plaintiffs request the Court enter an order requiring Defendants:

> [P]roduce to Plaintiffs a list setting forth for each putative Collective member their: (1) full name; (2) job title; (3) dates of employment; (4) last known address; (5) last known cell phone number; (6) location of employment; (7) employee number or ID; (8) social security number (last four digits only); and (9) last known email address, within ten (10) days of the entry of an Order conditionally certifying this action as a collective action.

(ECF 40-1 at 20.) Further, Plaintiffs request the Court authorize them:

> [T]o send Notice in the form attached as Exhibits C (via mail and email) and D (via text) to Meireles Decl., and made available at a website, pursuant to 28 U.S.C. Section 216(b) to all potential Opt-In

8

> Plaintiffs that they may join this action and assert claims under the Fair Labor Standards Act, 29 U.S.C. section 206; and . . . to send a reminder notice, in the forms Exhibits E (via mail and email) and F (via text) to Meireles Decl, half-way through the opt-in period.

(*Id.*)  Defendant objects to the content of the Notice, specifically its failure to notify opt-in plaintiffs that they may be liable for costs if LendUS prevails.  (ECF 66 at 27.)  Defendant also opposes the timeline for producing information to Plaintiffs, as well as the requirement to produce any data "not maintained in its electronic records or otherwise not reasonable accessible."  (*Id.* at 28.)

Prior to ruling on these issues, the Court orders the parties to meet and confer to discuss the contents of the notice and the process for identifying and contacting potential opt-in plaintiffs.  The parties shall jointly file proposed notice language as well as a stipulation regarding the data points Defendant must produce, the timeline for production of that data, and the procedure for notifying potential opt-in plaintiffs by June 16, 2025.

Should the parties be unable to reach an agreement as to this process, they may submit a joint letter brief regarding their respective proposals, in accordance with the procedures set out in the Court's Civil Standing Order regarding discovery disputes between the parties.  Any such letter brief must be submitted by June 16, 2025.  The Court will then notify the parties of a hearing date on the matter to be held via Zoom videoconference.

## II. MOTION FOR EQUITABLE TOLLING

Prior to resolving Plaintiffs' motion for equitable tolling, the Court summarizes the procedural history of the case, as this history is germane to the motion.  On April 23, 2024, Plaintiffs filed their Collective Action Complaint alleging Defendants' violation of the Fair Labor Standards Act.  (ECF 1.)  After Defendant LendUS failed to respond to the Complaint, the Clerk noticed an entry of default on May 24, 2024.  (ECF 17.)  Defendant CrossCountry Mortgage had stipulated with Plaintiffs to extend the time to respond and moved to dismiss the Complaint on May 31, 2024.  (ECF 15, 18.)  On June 14, 2024, Plaintiffs filed an Amended Collective and Class Action Complaint, adding state law claims and a putative class.  (ECF 19.)  Ten days later, Opt-in Plaintiff Zimmerman filed a notice joining the putative collective action.  (ECF 21.)  Defendant CrossCountry Mortgage renewed its motion to dismiss, and in mid-July, Defendant LendUS filed

9

1  a motion to set aside the default as well as a motion to compel arbitration and motion to stay the
2  proceedings.  (ECF 22, 27, 29, 32.)
3        During the briefing process on this flurry of motions, Plaintiffs then filed a motion to
4  conditionally certify the collective action on September 4, 2024.  (ECF 40.)  Defendants did not
5  provide a substantive opposition to the motion, instead requesting the Court rule on the pending
6  motion to compel arbitration first, and if denied, permit them to file an opposition within 21 days
7  of the Court's order.  (*See* ECF 42 at 3.)  Though these various motions had not yet been resolved,
8  Plaintiffs also filed the instant motion for equitable tolling of the statute of limitations for putative
9  opt-in plaintiffs on September 27, 2024.  (ECF 45.)  Plaintiffs requested the statute of limitations
10 be tolled from April 23, 2024, to the date of the Court's order on the motion to conditionally
11 certify the collective action.  (ECF 45-1 at 6.)  Given the volume of motions, the Court's
12 congested docket, and the Defendants' request to consider certain motions first, the Court ruled on
13 CrossCountry Mortgage's motion to dismiss as well as LendUS's motion to set aside default and
14 motion to compel arbitration in February and March of 2025.  (ECF 53-55.)  The Clerk then
15 entered a notice of default against Defendant CrossCountry Mortgage on April 14, 2025, for
16 failing to answer the Amended Complaint.  (ECF 60.)  Despite earlier representations, Defendants
17 did not file a substantive response to Plaintiffs' motion to conditionally certify the collective
18 action within 21 days of the Court's denial of the motion to compel arbitration.  It was not until
19 the April 24, 2025 case management conference that it was established that LendUS would file an
20 opposition.  (ECF 68.)  The motion was then fully briefed by May 12, 2025.
21       With this procedural history in mind, the Court turns to the substance of the motion for
22 equitable tolling.

### A.   Legal Standard

24       "Statutes of limitations are meant to ensure fairness to defendants by giving them timely
25 notice of the claims against them.  However, this policy 'is frequently outweighed . . . where the
26 interests of justice require vindication of the plaintiff's rights.'"  *Herrera v. Command Security*
27 *Corp.*, 837 F.3d 979, 985 (9th Cir. 2016) (quoting *Burnett v. New York Cent. R. Co.*, 380 U.S. 424,
28 428 (2016)).  Further, "[i]t is hornbook law that limitations periods are customarily subject to

10

United States District Court
Northern District of California

1  equitable tolling, unless tolling would be inconsistent with the text of the relevant statute."
2  *Young v. United States*, 535 U.S. 43, 49 (2002) (internal quotation marks and citations omitted).
3  "The FLSA statute of limitations is a procedural limitation that may be tolled when equity
4  warrants." *Coppernoll v. Hamcor, Inc*., No. C 16-05936-WHA, 2017 WL 1508853, at *2 (N.D.
5  Cal. Apr. 27, 2017) (citing *Partlow v. Jewish Orphan's Home of Southern California, Inc*., 645
6  F.2d 757, 761 (9th Cir. 1981) (abrogated on other grounds)).  "Equitable tolling applies when the
7  plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or
8  when extraordinary circumstances beyond the plaintiff's control ma[ke] it impossible to file a
9  claim on time." *Id*. (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)).  Though the
10  statute of limitations may be tolled, "typically '[e]quitable tolling is extended sparingly and only
11  where claimants exercise diligence in preserving their legal rights.'" *Woods v. Vector Mktg.*
12  *Corp*., No. C-14-0264 EMC, 2015 WL 1198593, at *6 (N.D. Cal. Mar. 16, 2015) (quoting *Irwin v.*
13  *Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).
14  Plaintiffs argue both wrongful conduct by Defendants and circumstances beyond
15  Plaintiffs' control warrant equitable tolling of the statute of limitations for potential opt-in
16  plaintiffs from April 23, 2024, to the date of this Order.

### B. Analysis

On the current record, the Court does not agree Defendant LendUS has exhibited wrongful conduct.  Plaintiffs point to various pre-suit negotiations, LendUS's motion practice, and the entry of default as evidence of "dilatory tactics."  (*See* ECF 45-1 at 11-14.)  However, LendUS's behavior appears consistent with another narrative—litigating the case.  The Court will not rehash its ruling on Defendant's motion to set aside default, through which many of Plaintiffs' arguments were already considered.  (*See* ECF 53.)  Suffice to say, the Court disagrees with the characterization of Defendant's actions as bad-faith conduct.  That said, the Court agrees that circumstances beyond Plaintiffs' control indicate equitable tolling is appropriate in this case.

It has been over one year since Plaintiffs filed their initial complaint and nearly nine months since they filed their motion to conditionally certify the collective.  (*See* ECF 1, 40.) Three factors contributed to this delay: 1) the Court's impacted calendar, 2) the number of motions

11

1  that accumulated from June through September of 2024, and 3) Defendants' requests regarding the
2  order of disposition of the motions.  None of these factors were within Plaintiffs' control.  To
3  begin, the realities of the Court's docket in late 2024 and early 2025 meant that Plaintiffs could
4  not proceed with a hearing on their motion on the date originally noticed.  Other district courts
5  have recognized that judicial sequencing of proceedings fall within the considerations of equitable
6  tolling.  *See, e.g., Helton v. Factor 5, Inc.*, No. C 10-04927 SBA, 2011 WL 5925078, at *2 (N.D.
7  Cal. Nov. 28, 2011) (permitting equitable tolling after nearly a year delay due to mandatory
8  settlement discussions and the court's hearing calendar); *Koval v. Pac. Bell Tel. Co.*, No. C 12-
9  1627 CW, 2012 WL 3283428, at *7 (N.D. Cal. Aug. 10, 2012) ("Other courts within this district
10 have applied equitable tolling prospectively where the court's discretionary case management
11 decisions have led to procedural delay beyond the control of the putative collective action
12 members.").  Further, then-pending before the Court were Defendants' motions to dismiss, to set
13 aside default, to compel arbitration, and to stay the case.  The motion to set aside default needed to
14 be resolved first as that would bear on the remaining motions.  Then, at Defendants' request, the
15 Court ruled on the motion to compel arbitration prior to resolving Plaintiffs' pending motion to
16 conditionally certify the collective action.  (*See* ECF 42 at 3.)  Though Defendants were supposed
17 to seek leave to oppose the motion within 21 days of the ruling on the motion to compel
18 arbitration, they did not, and the motion was not fully briefed until May 12, 2025.  This delay was
19 of Defendants' own making.  As the Court recognized during the April 24, 2025 case management
20 conference, it is understandable that Defendants chose to delay opposing the motion so as to avoid
21 waiver of their arbitration position.  (*See* ECF 68 at 5.)  However, that litigation tactic comes with
22 risk, particularly when the Defendant does not promptly oppose a pending motion for conditional
23 certification after denial of the motion to compel arbitration.  Each of these circumstances were
24 outside Plaintiffs' control and resulted in a delay that would significantly contract the window of
25 time for valid opt-in plaintiffs.  Therefore, the Court determines equitable tolling is in the interest
26 of justice.
27        Additionally, Defendant is not prejudiced by tolling the statute of limitations.  Defendant
28 LendUS has been aware of the scope and nature of these claims even prior to the initiation of the

lawsuit, when the parties engaged in third-party mediation to consider settlement. (*See* ECF 33-1.) Moreover, a portion of the delay in resolving the motion to conditionally certify the collective action resulted from the Court granting Defendants' own requests with the respect to resolving certain motions. *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) ("Where the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate."). In comparison, potential opt-in plaintiffs face significant prejudice, as failure to toll the statute of limitations would extinguish their claims through no fault of their own.

Defendant LendUS's arguments against equitable tolling do not disturb the Court's reasoning. First, Defendant argues Plaintiffs' own lack of diligence cuts against equitable tolling; specifically, Defendant suggests Plaintiffs could have stipulated to lifting the default to avoid delay, or they could have filed their motion to certify the collective action sooner, or even filed the case sooner. (ECF 46 at 13-14.) These suggestions do not indicate a lack of diligence, but rather fall within the range of expectations for typical litigation. Defendant's contention regarding the filing of the case is particularly off-base, given the parties were engaged in active settlement negotiations to resolve the Plaintiffs' claims without judicial intervention.

Second, Defendant argues "allowing an FLSA plaintiff to seek tolling on behalf of unrepresented, uninvolved individuals, is contrary to the statutory scheme." (ECF 46 at 10.) In support, Defendant relies on cases such as *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129 (N.D. Cal. 2009), and *Hightower v. JPMorgan Chase Bank, N.A.*, No. 11-CV-1802 PSG (C.D. Cal. Mar. 2, 2011), among others. The Court does not find these cases persuasive. To start, *Lewis* does not elaborate on the relevant facts, let alone address facts analogous to this case. As for *Hightower*, and Defendant's remaining authority, the Court disagrees that equitable tolling cannot be applied to opt-in plaintiffs that have not yet been identified. In *Hightower*, the court noted:

> Until putative FLSA collective action members opt in, neither their interests nor the independent factors, if any, that prevented them from timely filing their claims are before the Court. At present, the Court can merely speculate as to whether putative plaintiffs will opt in, whether their claims will be timely, and whether the circumstances

13

1   giving rise to any untimeliness will justify equitable tolling.

2   *Hightower*, No. 11-CV-1802-PSG, ECF 43 at 4 (C.D. Cal. Mar. 2, 2011) (internal citation

3   omitted).  Here, however, the Court has already identified the independent factors for opt-in

4   plaintiffs justifying equitable tolling: the activities of this litigation to date.  It is not speculative to

5   say the three-year statute of limitations would foreclose nearly all potential opt-ins, given the

6   current date of this Order and the May 2022 termination of all relevant LendUS employees.

7   Under this proposed approach, opt-in plaintiffs would have no occasion to bring their equitable

8   tolling arguments before the Court because no notice would reach those plaintiffs in the first place.

9   To circumvent this inequity, the Court would need to authorize notice to individuals outside the

10  relevant statute of limitations period—a process which could become unwieldy and overinclusive.

11  Still further, the Court would be required to entertain individual motions from these potential opt-

12  in plaintiffs, disrupting the efficiency-driven purpose of a collective action.  The Court declines to

13  adopt this approach, and indeed, the Court is not alone in permitting equitable tolling with

14  consideration for potential opt-in plaintiffs.  *See, e.g.*, *Coppernoll*, No. 16-CV-05936-WHA, 2017

15  WL 1508853, at *4 (N.D. Cal. Apr. 27, 2017); *Hughes v. S.A.W. Entertainment, Ltd.*, 16-CV-

16  03371, 2019 WL 3979592, at *1 (N.D. Cal. Aug. 23, 2019).

### C. Proper Equitable Tolling Period

Having decided equitable tolling is in the interest of justice, the Court must now determine the appropriate period of tolling.  Plaintiffs request tolling of the statute of limitations for potential opt-in plaintiffs from April 23, 2024 (the date the initial complaint was filed), to the date of this Order.  (ECF 45-1 at 6.)  Defendant opposes, arguing this period is overly broad.  The Court agrees with Defendant and tolls the statute of limitations from the date Plaintiffs filed the motion to conditionally certify the collective action, i.e. September 4, 2024, to the date notice goes out to the potential opt-in plaintiffs.

Tolling from the date of the initial complaint is not appropriate here because "when Congress enacted Section 256 of the FLSA, it was aware that 'time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period.'" *Woods*, 2015

14

1  WL 1198593, at *7 (N.D. Cal. Mar. 16, 2015) (citation omitted). Some amount of delay exists

2  inherently in the design of the FLSA. Plaintiffs have not shown any exceptional circumstances

3  occurred between April 23, 2024, and the ultimate filing of their motion to conditionally certify

4  the collective action on September 4, 2024. The delays discussed in the Court's prior analysis of

5  equitable tolling all occurred in the intervening months following the motion.

6  In response, Plaintiffs argue they could not seek conditional certification until after

7  LendUS had defaulted, and so the date of default would be appropriate for tolling. (ECF 47 at 8

8  (citing *Pardini v. Mi Casa Su Casa LLC*, No. CV-22-00796-PHX-MTL, 2023 WL 2534158 (D.

9  Ariz. Mar. 15, 2023), and *Eyo v. Ace High Mktg., LLC*, No. 1:20-CV-1018-AT, 2020 WL 8224928

10 (N.D. Ga. Nov. 23, 2020)).) Assuming, *arguendo*, such delay was required, the Clerk entered

11 notice of default on May 24, 2024, and the motion was filed on September 4, 2024. (ECF 17, 40.)

12 The Court will not use the date of default as the beginning of tolling considering the Court

13 ultimately set aside the default, and there was a period of delay prior to Plaintiffs' filing of the

14 motion to conditionally certify the collective action.

15 The Court extends tolling prospectively to the date notice goes out since the Court has

16 ordered the parties to meet and confer regarding Defendant's objections, and either stipulate to a

17 notice process or file briefing on the matter. These lingering case management concerns should

18 not prejudice opt-in plaintiffs.

## CONCLUSION

20 For the reasons stated above, the Court **GRANTS** Plaintiffs' motion to conditionally

21 certify the collective action and **GRANTS** the motion for equitable tolling. The conditionally

22 certified collective comprises the following:

> [A]ll Loan Assistants and Loan Processors, however variously titled, employed by LendUS at any time during the three years preceding the filing of ***the motion to conditionally certify the collective action, i.e. September 4, 2024,*** who did not receive compensation for all of their overtime hours worked.

26 The statute of limitations for potential opt-in plaintiffs is tolled from September 4, 2024, to the

27 date notice is sent out to the potential opt-ins.

28 Further, the parties are ordered to meet and confer regarding the notice process, per the

Court's instructions in Section I.C., *supra*. A stipulated notice form and procedure shall be filed with the Court no later than June 16, 2025. If the parties cannot come to agreement, they shall submit briefing on the issue in accordance with the formatting and page-limit specifications set out in the Court's Civil Standing Order regarding discovery disputes. Any joint dispute letter brief shall be filed no later than June 16, 2025.

This Order disposes of Docket Nos. 40 and 45.

**IT IS SO ORDERED.**

Dated: June 6, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

16