# Exhibit 45

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **ATLAS GLOBAL TECHNOLOGIES, LLC,** | § § | |
| *Plaintiff* | § § | **6-21-CV-00820-ADA** |
| -vs- | § § § | |
| **ASUSTEK COMPUTER INC.,** | § § | |
| *Defendant* | § | |

### MEMORANDUM OPINION AND ORDER

Came on for consideration this date is Defendant ASUSTeK Computer Inc.'s ("ASUSTeK") Motion to Transfer Venue to the Central District of California, or alternatively to the Northern District of California filed on May 18, 2022. ECF No. 39 (the "Motion"). Plaintiff Atlas Global Technologies, LLC ("Atlas") filed an opposition the Motion on September 16, 2022 (ECF No. 56), to which ASUSTeK filed a reply on September 30, 2022. ECF No. 58. After careful consideration of the briefs and applicable law, ASUSTeK's Motion is **DENIED**.

### I.     FACTUAL BACKGROUND

On August 9, 2021, Atlas sued ASUSTeK by alleging infringement of seven patents: U.S. Patent Nos. 9,763,259 ("the '259 Patent"); 9,825,738 ("the '738 Patent"); 9,848,442 ("the '442 Patent"); 9,912,513 ("the '513 Patent"); 9,917,679 ("the '679 Patent"); 10,020,919 ("the '919 Patent"); 10,153,886 ("the '886 Patent"); and 10,756,851 ("the '851 Patent") (collectively, the "Asserted Patents"). *See* ECF No. 1 ¶ 1; ECF No. 21 ¶ 1 ("FAC"). The Asserted Patents were assigned to Atlas by Newracom, Inc., in February 2021. FAC ¶ 4. The Asserted Patents are alleged to cover essential aspects of the latest generation of Wi-Fi, known as "802.11ax" or more simply as "Wi-Fi 6." *See, e.g.*, FAC ¶¶ 4, 12, 17, 21–22.

.

Atlas, the owner of the Asserted Patents, is a limited liability company organized under the laws of the state of Texas and its principal place of business is located in Austin, Texas. *Id.* ¶ 3. ASUSTeK is a corporation organized in Taiwan, where it maintains its principal place of business. *Id.* ¶ 5. ASUSTeK produces and sells devices with Wi-Fi 6 capabilities, such as Wi-Fi 6 Access Points ("APs"). *Id.* ¶¶ 18–19. While ASUSTeK is located in Taiwan, its wholly owned subsidiary "ASUS Computer International," which is a non-party in this Action, is a California Corporation and has its principal place of business in Fremont, California, in the Northern District of California. ECF No. 39-1, Declaration of Barbara Chen ("Chen Decl.") ¶ 6.

After answering Atlas's complaint, ASUSTeK filed the instant motion to transfer. ECF No. 39. It does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Central District of California ("CDCA")—and alternatively, the Northern District of California ("NDCA")—is a more convenient forum, leaning heavily on the location of potential witnesses and relevant records. *Id*. at 8. Atlas contends that the case should remain in the WDTX, refuting ASUSTeK's claims regarding compulsory service and location of relevant witnesses. ECF No. 56 at 4.

Atlas further bases its arguments on four related cases co-pending in this Court. *See Atlas v. Sercomm Corp.*, No. 6:21-cv-00818-ADA (filed Aug. 9, 2021; includes 6 patents asserted in this lawsuit); *Atlas v. OnePlus Tech. (Shenzen) Co., Ltd.*, No. 6:21-cv-01217-ADA (filed Nov. 22, 2021; includes all 8 patents asserted in this lawsuit); *Atlas v. Zyxel Networks Corp.*, No. 6:22-cv-00355-ADA (filed April 4, 2022; includes all 8 patents asserted in this lawsuit); *Atlas v. D-Link Corp.*, No. 6:22-cv-00520-ADA (filed May 20, 2022; includes all 8 patents asserted in this lawsuit). Only one of these four parallel Defendants, Sercomm, has moved to transfer venue.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on

the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is *clearly* more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the CDCA. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). Neither party contests that venue could be proper in the CDCA. Plaintiff bases venue on the fact that ASUSTeK is not a resident of the United States, and thus may be sued in any judicial district, FAC ¶ 23, so venue is equally proper under 28 U.S.C. § 1391(c)(3) in the Central District of California or the Western District of Texas. Neither party disputes whether personal jurisdiction would have been proper in this District or the CDCA. This Court therefore finds that venue would have been proper in the CDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine if the CDCA is a clearly more convenient forum than the WDTX.

A.  **The Private Interest Factors**

i.    *The Cost of Attendance and Convenience for Willing Witnesses*

The Fifth Circuit established the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *14 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *id.* at *12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the court transfers the action or not. *See In re Apple Inc.*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be, "rigidly," applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and

documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at *12.

The Court finds this factor neutral. Atlas argues that this factor is neutral. ECF No. 56 at 1. ASUSTeK also contends that this factor is neutral, but that if "this Court finds that any of those witnesses [ASUSTeK identified under this compulsory process factor] should not be analyzed under the compulsory process factor, then this willing-witness factor would also favor transfer." ECF No. 39 at 8. Because the Court will analyze some of those witnesses under this factor then, the Court recognizes that ASUSTeK argues that this factor favors transfer.

Defendant ASUSTeK is in Taiwan and has no relevant employees in the U.S. ECF No. 56 at 3. Thus, this factor is neutral as to ASUSTeK. *See Kajeet, Inc. v. Trend Micro, Inc.*, 2022 U.S. Dist. LEXIS 6603, at *14 (W.D. Tex. Jan. 12, 2022) (finding Taiwan witnesses neutral).

There is one willing witness in the WDTX—Mr. Yudell—who finds the WDTX and not the CDCA convenient. ECF No. 56 at 4. The remaining willing witnesses either find both the WDTX and the CDCA convenient or they are located far enough away to make both districts equally inconvenient. *Id.* at 5. ASUSTeK's argument that because Mr. Yudell has a vacation home in the CDCA, the CDCA is not inconvenient for him is of no moment. The fact that Mr. Yudell recently purchased a "vacation" property in Laguna Beach, California and has spent a "minority of [his] time" there is irrelevant. *See Heieck v. Fed. Signal Corp.*, No. SACV1802118AGKESX, 2019 WL 6872836, at *3 (C.D. Cal. Oct. 9, 2019) (denying transfer to Arizona even though plaintiff's "vacation home is in Arizona"). This Court must use the Federal Circuit's inquiry asking whether the witnesses travelling to a distant forum are required to be away from their homes and work for an extended period of time. *Motion Offense, LLC v. Google LLC*, U.S. Dist. LEXIS 154766, at *24–25 (W.D. Tex. Aug. 29, 2022). Here, Mr. Yudell would be required to be away

6

from home, family, and work for an extended period of time if this case were to be transferred to California.

Thus, the Court finds that this factor is neutral

### ii. *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the

transferee venue "just because individual employees were not identified." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *8 (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

ASUSTeK argues that "[m]ost of the witnesses relevant to this litigation—other than employees of ASUSTeK in Taiwan—are third party witnesses that reside in the Central District of California or within its subpoena power, which are presumed to be unwilling and are therefore considered under this factor." ECF No. 39 at 6. In support of this argument, ASUSTeK provides a declaration from Mr. Michael J. Newton, an attorney at Alston & Bird LLP. ECF No. 39-2 (the "Newton Decl.") ¶ 1. Citing the Newton Declaration and the exhibits cited therein, ASUSTeK identifies multiple categories of nonparty witnesses. First, ASUSTeK identifies that the original owner of the patents-in-suit has its global headquarters within the Southern Division of the Central District of California. ECF No. 39 at 6 (citing Newton Decl. ¶ 16). Then ASUSTeK identifies that six of the named inventors—Young Hoon Kwon, Yujin Noh, Yongjin Kwon, Hyungu Park, Jongee Oh, and Je-Hun Lee—are located within the Central District of California. *Id.* And further, that inventor Ahmad Reza Hedayat resides in San Diego, California, which is less than 100 miles from the Santa Ana courthouse of the Central District of California, and can be subpoenaed for trial or deposition testimony pursuant to Fed. R. Civ. P. 45(c)(1)(A). *Id.* at 6–7 (citing Newton Decl. ¶ 13).[1] ASUSTeK next identifies Newracom's Irvine-based "IP Group" Vice President, Joongwon Cho, who signed the Letter of Assurance committing to license the asserted patents on FRAND terms, an obligation which allegedly binds Atlas. *Id.* at 7 (citing Newton Decl. ¶ 14). ASUSTeK next identifies Acacia executives Erik Ahroon, who negotiated the purchase of the patents from Newracom and has knowledge relevant to the valuation of the patents-in-suit and negotiations over

---

[1] Because inventors Park, Lee, Oh, and Hedayat were considered under the willing witness factor, the Court will not consider them here.

the purchase price, and Evan Woolley, who conducted all pre-litigation correspondence with ASUSTeK on behalf of Atlas. *Id.*

Then ASUSTeK identifies various third-party companies in California. First, ASUSTeK identifies that "[t]hree of ASUSTeK's four relevant Wi-Fi 6 chip suppliers are also headquartered in California." *Id.* ASUSTeK identifies that of these three chip suppliers, "ASUSTeK's supplier Qualcomm is headquartered in California with offices located less than 100 miles from the Central District of California courthouse in Santa Ana, and can be subpoenaed for trial or deposition testimony pursuant to Fed. R. Civ. P. 45(c)(1)(A)." *Id.* (citing Newton Decl. ¶ 17, Ex. 14). According to ASUSTeK, the two other ASUSTeK chip suppliers, Broadcom and Intel, are headquartered elsewhere in California and its personnel may be compelled to testify at trial pursuant to Fed. R. Civ. P. 45(c)(1)(B)(ii). *Id.* (citing Newton Decl. ¶ 15, Ex. 12). Relying on the Chen declaration, ASUSTeK argues that "all three of its U.S.-based suppliers perform relevant design and development activities pertaining to the Wi-Fi 6 chips at issue in this case at their facilities less than 100 miles from the Central District of California courthouse in Santa Ana or in the Northern District of California." *Id.* at 8. (citing Chen Decl. ¶¶ 12–15). Further, ASUSTeK identifies Broadcom's Marketing Director as someone who ASUSTeK interfaces with and who works or resides in these districts (or within their subpoena power) and who has knowledge relevant to the Wi-Fi 6 chips at issue. *Id.*

In response, Atlas contends that the compulsory factor weighs against transfer. ECF No. 56 at 6. In support of its argument Atlas relies on the Declaration of Ms. Alejandra C. Salinas, an attorney at the law firm of Susman Godfrey LLP. ECF No. 56-1 (the "Salinas Decl.") ¶ 1. Atlas first rebuts ASUSTeK's arguments regarding its chip suppliers in California. ECF No. 56 at 6. Atlas argues that none of ASUSTek's Wi-Fi 6 chip suppliers are headquartered in CDCA.

Qualcomm is headquartered in SDCA, Broadcom, and Intel in NDCA, and MediaTek in Taiwan. *Id.* Further, that no purportedly relevant employees of these chipmakers are located in CDCA. *Id.* For Broadcom, Atlas argues that ASUSTek identifies one employee in NDCA and one in SDCA. *Id.* (citing ECF No. 39-1 ¶13). For Intel, Atlas asserts that there is one employee in NDCA and one in Oregon. *Id.* (citing ECF No. 39-1 ¶14). And for Qualcomm, Atlas argues that there is one employee in SDCA. *Id.* (citing ECF No. 39-1 ¶ 15). Atlas contends that ASUSTek identifies zero purportedly relevant MediaTek employees. *Id.* Thus, Atlas argues that ASUSTeK has not met its burden.

Then Atlas cites the various offices of these chipmakers that are within the subpoena power of this Court. *Id.* at 6–7. According to Atlas, Broadcom has offices in Austin and Plano, TX; Intel has two offices in Austin, one in Houston, and one in Dallas; MediaTek has offices in Austin and Allen; and Qualcomm has offices in Austin and Richardson. *Id.* Thus, Atlas asserts that all four chipmakers are subject to this Court's absolute subpoena power. *Id.* The Court gives weight to Atlas's arguments on the Court's subpoena power over the location of these Texas chipmakers because ASUSTek did not investigate any of the four chipmakers' Texas operations and does not know whether they design or develop Wi-Fi 6 chips in Texas. *See* ECF No. 56-7 47:20–48:15; 52:18–53:6; 62:7–62:24; 57:15–58:4.

Atlas then identifies eleven potentially relevant witnesses from ASUSTeK's Wi-Fi 6 chip suppliers, Broadcom, Qualcomm, MediaTek, and Intel, who are located in WDTX. ECF No. 56 at 7–8. Atlas further identifies Lance Watson who is a "HW [hardware] & RF [radio frequency] Staff Applications Engineer (Bluetooth, Wi-Fi, GNSS and BLE)" at Qualcomm in Dallas, Texas. *Id.*

Atlas then identifies that there are likely additional relevant witnesses affiliated with ASUSTeK's Wi-Fi 6 chip manufacturers within WDTX because ███████████████

██████████████████████████████████████████████

███████████████████. *Id.* at 8–9. Atlas further identifies that ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████. *Id.*

Next, Atlas places special emphasis on the fact that the Wi-Fi Alliance worldwide headquarters are located in Austin and that at least four specific relevant Wi-Fi Alliance witnesses are located in Austin. *Id.* at 9–10. Atlas argues that to prove infringement at trial, Atlas will introduce evidence that ASUSTeK's products actually comply with the Wi-Fi 6 standard, and to prove damages, Atlas will introduce evidence about the benefits the patented features provide to Wi-Fi 6 and that the Wi-Fi Alliance is one of the best sources of proof for this evidence. *Id.* Importantly, the Wi-Fi alliance has tested and certified approximately 51 ASUSTeK Accused Products as Wi-Fi 6 compliant. *Id.*

Atlas then argues against ASUSTeK's assertion about the inventors being primarily located in the CDCA. *Id.* at 10. Atlas asserts that "it is undisputed that at least one potentially unwilling named inventor, Minho Cheong, is in WDTX." *Id.* Then Atlas asserts that contrary to ASUSTeK's unsubstantiated assertion, there is only one potentially unwilling named inventor, Young Hoon Kwon, within CDCA. *Id.* According to Atlas, the other CDCA inventors, Hyungu Park, Je-Hun Lee, and Jongee Oh, are all willing to testify in WDTX and are thus considered under the willing witness factor. *Id.* Atlas further maintains that Youngjin Kwon is no longer employed by Newracom and appears to currently work for ETRI in Korea, and Yujin Noh appears to no longer be employed by Senscomm in California and currently works for LG, likely in Korea. *Id.*

11

Finally, Atlas argues that even in the NDCA, ASUSTeK's arguments cannot overcome the large number of specific, relevant witnesses Atlas has identified in WDTX. *Id.* at 10–11. Atlas argues that the two unwilling named inventors within NDCA—Yongho Seok and Sungho Moon—is likely duplicative of testimony from willing inventors on the same patents. *Id.*

In reply, ASUSTeK reiterates its argument that this factor weighs in favor of transfer. ECF No. 58 at 2. ASUSTeK contends that the "vast majority of relevant third parties in this case are located in California: (i) CDCA-based Newracom, the original patent owner that developed the claimed technology and participated in the standard-setting process; (ii) seven of the named inventors who are under the subpoena power of CDCA, Southern Division; (iii) CDCA-based Acacia, Plaintiff's parent company and the entity that acquired the patents-in-suit from Newracom; and (iv) three of the four third-party suppliers of the Wi-Fi chips in the accused products, which form the basis of Atlas's infringement claims." *Id.*

The Court finds that this factor is neutral towards transfer. While it is true that ASUSTeK's Wi-Fi 6 chip suppliers Qualcomm may be able to be compelled to testify in the *Southern Division* of the CDCA, none of ASUSTeK's suppliers are located in the CDCA. Further, Atlas identified specific former Qualcomm employees who are able to be compelled to testify in this district and may have relevant information. That Broadcom is headquartered in the NDCA is only relevant to the analysis to the NDCA because the CDCA cannot compel Broadcom under Rule 45(c)(1)(A). However, Atlas has identified specific and relevant employees in the WDTX that this Court can compel. *See* ECF No. 56 at 7–8. And the presence of inventors (those who have not said they are willing to testify) in both districts is neutral with regard to transfer. The Court notes, however, that Acacia and Newracom's substantial presence in the CDCA weighs towards transfer. However, Atlas similarly relies on a substantial third-party witnesses within this District, the Wi-Fi Alliance,

which may also require subpoenas to secure testimony. The Court finds the Wi-Fi Alliance's presence in this district weighs against transfer because it is especially relevant to the Asserted Patents and the Accused Products in this case. *See STC.UNM v. Apple Inc.*, No. 6:19-CV-00428-ADA, 2020 WL 4559706, at *4 (W.D. Tex. Apr. 1, 2020) ("the presence of the Wi-Fi Alliance and its documentation in the WDTX [] push back against transfer") *mandamus denied In re Apple Inc.*, 818 F. App'x 1001, 1004 (Fed. Cir. 2020) ("The court's conclusion that the Wi-Fi Alliance's location in Austin, Texas could be a source of relevant information in this case does not seem unreasonable in light of [plaintiff's] stated theory of infringement. In that regard, the court fairly could find that a test or certification that the Wi-Fi Alliance has in its possession concerning whether the products comply or are interoperable with the 802.11ac standard could be relevant.").

Accordingly, this factor is neutral with regard to transfer to the CDCA.

### iii. *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

According to ASUSTeK, the relevant documents are mostly stored in the CDCA. ECF No. 39 at 9–10. According to ASUSTeK, the allegedly infringing products were developed in the CDCA, and most of the named inventors, Atlas's relevant personnel, and Wi-Fi chip suppliers are "almost all located in or within the subpoena power of the CDCA." *Id.* ASUSTeK claims that any

relevant documents Atlas and its affiliates have are likely to be in Acacia's possession and its key personnel residing in the CDCA. *Id.* Atlas responds by stating that its documents are maintained on a server in Austin, with some backed up in the cloud; Atlas' hard copy documents are also located in Austin; and any relevant Acacia documents are hosted in the cloud by Microsoft, not stored on physical servers. ECF No. 56 at 11. Atlas further contends that while it does not dispute that Newracom is headquartered in California, Newracom's relevant documents are also located in Houston, Texas at the offices of Atlas' outside counsel and were with outside counsel prior to this litigation. *Id.* at 11–12. Atlas finally responds that even though the third-party chipmakers collectively have ten offices in Texas and at least twelve relevant employees in Texas, ASUSTek provided no information about where the chipmaker's documents are located and speculated about the location about where the documents are located because ASUSTeK did not speak with any of the chipmakers and has no idea whether they store relevant documents in Texas. *Id.* Thus, Atlas contends that the Court should discount any weight that the Court should give to ASUSTeK's declarations about sources of proof. *Id.*

The Court finds that the sources of proof factor slightly favors transfer. It is true that some of the named inventors are in the CDCA, the original owner of the patents-in-suit is located in the CDCA, ASUSTeK's wholly owned subsidiary is in the NDCA, ASUSTeK's key chip suppliers are located within subpoena power of a certain division of the CDCA or in California, and Atlas's parent company and key personnel are in the CDCA. On the other hand, Atlas has a physical presence in the WDTX and this Court cannot discount the information that its only Texas "server"—the lone Texas employee's computer—stores the company's documents. Furthermore, Atlas is correct in asserting that ASUSTeK failed to identify specific relevant documents in its Motion. That said, Atlas, too, failed to state that any specific relevant documents are stored in the

14

WDTX. However, the Court cannot discount the fact that Atlas has identified that the Wi-Fi Alliance has their headquarters in Austin and that as discussed above, has potentially highly relevant documents and sources of proof may be located there.

Moreover, while ASUSTeK contends that all of Newracom's relevant documents are in California, Atlas has identified that Newracom's relevant documents are also located in Houston, Texas with its outside counsel. These documents relate to the inventions, conception, and reduction to practice of the inventions, participation in the 802.11ax standard-setting process, and sale of the Asserted Patents. These documents were collected by Newracom's outside counsel prior to Defendants' transfer motion and include all Newracom records for the Asserted Patents that could be reasonably identified by Newracom and the inventors. These documents could be conveniently accessed from the WDTX. Further, ███████████████████████████████ ████████████, the Wi-Fi Alliance's certification activities in Austin, Texas, and the numerous specific witnesses associated with these entities all weigh against transfer on this factor. As discussed above, each likely possesses relevant documents that are stored, if not exclusively maintained, in WDTX.

Upon consideration of the above, the Court finds this factor slightly favors transfer.

### iv.     *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive.*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . .

15

pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

ASUSTeK asserts that there are minimal practical problems associated with a transfer because the "overwhelming majority of identifiable witnesses and evidence are in California," thus increasing judicial economy. ECF No. 39 at 11. ASUSTeK also argues that transfer would also be in accord with the "only related case that would proceed on the same schedule as this action." *Id.*; *Atlas Glob. Technologies LLC v. Sercomm Corp.*, 6:21-cv-00818-ADA. These assertions are made despite the fact that Atlas has multiple other pending suits in front of this Court involving the Atlas patents. ECF No. 36 at 11–12. In response, Atlas argues that the co-pending cases involving the Atlas patents make this factor weigh heavily against transfer. ECF No. 56 at 12–13.

ASUSTeK's argument relies on the notion that cases filed after the immediate case do not impact transfer analysis, which "appl[ies] to the situation at the time this case was filed." ECF No. 39 at 11–12 (citing *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021)). This Court disagrees with the claim that the § 1404(a) inquiry cannot contemplate facts arising after an action commences. In *Unification Technologies LLC v. Micron Tech., Inc.*, this Court rejected the argument that it must analyze convenience factors in a motion to transfer as they existed when the complaint was filed. 2022 WL 92809, *3 (W.D. Tex. Jan. 10, 2022). It "refuse[d] to hold…that the convenience analysis is fixated on pre-complaint facts merely because the evaluation of where an action 'might have been brought' must be." *Id.* The Court found—and still finds—it illogical to "permit[] transfer to a proper forum that, at the time of transfer, is *inconvenient*—so long as it *was* convenient when the suit was filed. *Id.* While "the Federal Circuit has endorsed this position in non-precedential opinions. . . .[t]hese opinions

ultimately rely on [and overextend] *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)." *Id.*; *see also In re EMC Corp.*, 501 F.App'x 973, 976 (Fed. Cir. 2013); *In re Netscout Sys.*, No. 2021-173, 2021 WL 4771756 at *4 (Fed. Cir. Oct. 13, 2021). *Hoffman* held "that courts must judge the transferee forum's personal jurisdiction without reference to post-complaint facts; it did not bar those facts from the convenience analysis." *Micron Technologies*, 2022 WL 92809, at *3. Therefore, the co-pending related cases are relevant in the transfer analysis.

The existence of four co-pending cases in the WDTX raises significant hurdles to transfer. That, alone, is not dispositive, but this Court has held that parallel actions involving the same patents weighs heavily against transfer. *See NCS Multistage v. Nine Energy Serv.*, C.A. No. 6:20-00277-ADA, 2021 U.S. Dist. LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021). The Federal Circuit looks at such situations similarly. *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3. In weighing this factor, this Court must also "consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). Here, only one of these Defendants, Sercomm, has moved to transfer venue. Indeed, D-Link and Zyxel have expressly consented to venue in Waco and will not be moving to transfer.

Transfer to the CDCA or the NDCA, while the other cases involving the same patents and questions proceed here, would create significant practical difficulties. Two courts ruling on the same patents asserted by the same plaintiff wastes judicial resources and risks inconsistent rulings on the patents-in-suit. Trying all five cases in the same court increases judicial economy.

The Court finds that this factor weighs strongly against transfer but recognizes that this factor alone is not dispositive.

## B. The Public Interest Factors

### i. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.*

Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

According to ASUSTeK, the WDTX has a minimal local interest in this case. ECF No. 39 at 12. It admits that Atlas headquarters and Atlas president Craig Yudell are located in Austin but argues neither is sufficient to create a local interest. ECF No. 58 at 5. Rather, ASUSTeK asserts

18

that the local interest lies where allegedly the relevant documents and most witnesses are located—the CDCA. ECF No. 39 at 12. Atlas responds that its presence in Austin and connection to third parties in the district create a local interest in the WDTX. ECF No. 56 at 14-15.

ASUSTeK bears the burden to show that the CDCA has a local interest in this case. It proves a local connection to the CDCA, as it is the location of the original patent owner, the invention of the patents–in–suit, and the key personnel behind Atlas and its parent, Acacia. California is also home to all three third-party manufacturers of the Wi-Fi 6 chips in the Accused Products.

In contrast, Atlas leans on its Austin presence and connection to third parties in the WDTX to establish a localized interest. ECF No. 56 at 14–15. It does not refute ASUSTeK's argument that the CDCA also has a local interest. *Id.* It merely argues that transfer would hinder a third party's goals and call into question the work and reputation of third-party chipmakers and their Texas employees. *Id.*

Both the CDCA and the WDTX have localized interests in this case. Atlas has a business presence in both districts. But the alleged infringing products were likely developed in the CDCA, and the chipmakers are based in California, two within 100 miles of the district. *See, e.g.*, *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("the Eastern District of North Carolina's local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). Atlas's relatively recent opening in Austin—about one year before filing this suit—and the presence of a single employee does not weigh in its favor. *See Juniper Networks*, 14 F.4th at 1320. However, ███████ and Wi-Fi Alliance's location in the

WDTX, which the Court found to have a significant and important connection to this case above, shows a strong local interest in the WDTX.

Considering all of the above facts, the Court finds that on balance this factor is neutral with regard to transfer.

### ii.     *Familiarity with Governing Law and Conflicts of Law*

Both parties agree that this factor is neutral. ECF No. 39 at 13–14; ECF No. 56 at 1. The Court agrees.

### iii.    *Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Court finds this factor to weigh slightly against transfer. ASUSTeK claims this factor favors transfer. ECF No. 39 at 13. ASUSTeK argues that the CDCA has a less congested docket, a faster civil disposition time, and a faster time to trial. *Id.* The alleged time to trial for this Court is 23.8 months, compared to a claimed 20.8 months in the CDCA. *Id.* "While the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and courts like the CDCA and NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent data show that this Court has been able to hold trials faster

than the these courts, with an approximate time to trial of two years.[2] The Federal Circuit has previously emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and recent time-to-trial statistics, the Court finds this factor weighs slightly against transfer.

### iv. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties consider the factor to be neutral. ECF No. 56 at 1. The Court agrees.

## C. Conclusion on Transfer to the CDCA

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Weights slightly in favor of transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |

---

[2] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*., No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC,* 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Info. Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
|---|---|
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

ASUSTeK has only established that the relative ease of access to sources of proof weighs slightly in favor of transfer. Atlas has established that the practical problems and administrative difficulties factors weigh against transfer. Because all other factors are neutral, ASUSTeK has failed to meet its burden to show that the CDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. ASUSTeK's Motion with respect to the CDCA is therefore **DENIED**.

### D. ASUSTeK's Alternate Motion to Transfer to the Northern District of California

In the alternative, ASUSTeK also argues that the Court should transfer this case to the NDCA. ECF No. 39 at 13–15. Because ASUSTeK barely briefed its Motion to transfer to the NDCA (*see id.*), the Court will also briefly consider its alternative arguments to transfer to the NDCA. To begin, as it did with its analysis of the CDCA, the Court finds that under the threshold determination in the § 1404(a), this suit could have been brought in the NDCA. Neither party contests that venue could be proper in the NDCA. Plaintiff bases venue on the fact that "ASUSTeK is not a resident of the United States, and thus may be sued in any judicial district," FAC ¶ 23, so venue is equally proper under 28 U.S.C. § 1391(c)(3) in the NDCA or the WDTX. Thus, the Court now analyzes the private and public interest factors to determine if the NDCA is a clearly more convenient forum than the WDTX.

#### i. Private Interest Factors

The primary differences in ASUSTeK's arguments that it makes in its alternative motion to transfer to the NDCA are that the NDCA is home to the non-party ACI and that one of ASUSTeK's chip suppliers—Broadcom and Intel—are headquartered in the NDCA. ECF No. 39

at 13–14. ASUSTeK first argues that because the NDCA is home to non-party ACI, which imports and provides sales support for certain of the Accused Products. *Id.* Further, ASUSTeK contends that ACI also stores all of its documents in the NDCA and Taiwan, so any relevant documents in ACI's possession in the United States are in the NDCA. Thus, ASUSTeK contends that when "[c]ompared the relative absence of relevant third-witnesses and sources of proof in Texas, these facts weigh strongly in support of transfer, whether analyzed primarily under the compulsory process factor, the witness convenience factor, and/or the sources of proof factor." *Id.*

In response, Atlas rebuts ASUSTeK's arguments that the NDCA is any more clearly convenient than the CDCA. ECF No. 56 at 9. *First*, for the willing witness factor, Atlas responds that "[t]o the extent this Court considers ASUSTeK's proposed alternative venue, NDCA, these potentially relevant witnesses further believe that holding trial in NDCA and WDTX would require the same inconveniences.'" *Id.* at 4. *Second*, for the compulsory process factor, Atlas responds that the unwilling witnesses are still outnumbered by the specific relevant unwilling witnesses Atlas has identified in WDTX. *See id.* at 9–10. *Third,* for the sources of proof factor, Atlas responds that while ACI allegedly "maintains all of its corporate records and documents in California," (ECF No. 39-1 ¶ 9), ASUSTek "provides no details about what these 'records' are or where in California they are stored, and ASUSTek did not check whether ACI has relevant documents in Texas." ECF No. 56 at 11.

In reply, ASUSTeK first asserts that "[s]ales information for the accused products is located at ACI in NDCA." ECF No. 58 at 1. Then ASUSTeK contends that while ASUSTeK found five Texas-based remote ACI employees who may have some knowledge of sales out of its 320+ employees, only one is located in WDTX, and none have access to complete sales data. *Id.*

The Court finds that similarly to the above analysis for the motion to transfer to the CDCA, these factors are neutral except for the sources of proof factor weighing slightly in favor of transfer and the practical problems weighing against transfer. That ACI, Broadcom, and Intel are in the NDCA may tip the scales for compulsory process and willing witnesses in some regard, but the NDCA loses out on some the very same witnesses and sources of proof that were accessible in the CDCA. Therefore, while the witnesses and sources of proof may change, the end result does not. The private interest factors remain the same in regard to transfer to the NDCA as they did for the CDCA.

### ii.    Public Interest Factors

ASUSTeK argues that the local interest factor and the court congestion factor favor transfer to the NDCA. ECF No. 39 at 14. For the local interest factor, ASUSTeK argues that it weighs in favor of transfer to the NDCA because of the "concentration of relevant individuals and entities in the Northern District of California, including two inventors, key suppliers, and an importer-of-record that also provides sales support for accused products in the United States, as compared to this forum, with a recently opened office with one part-time employee and one inventor in Austin." *Id.* Yet ASUSTeK does not address the absence of Acacia and Newracom in the NDCA. *See generally id.* Because the Court does not find that there is any appreciable difference (there is most likely even less of a local interest in the NDCA than the CDCA), the Court also finds that this factor is neutral for similar reasons as it did for the CDCA.

For the court congestion factor, ASUSTeK argues that "[a]ccording to the most recent publicly available statistics, the Northern District of California had 789 total actions per judgeship, while the Western District of Texas had 997." *Id.* Thus, ASUSTeK argues that this factor slightly favors transfer. The Court, however, finds that while the Federal Circuit has previously held that

there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent data show that this Court has been able to hold trials faster than the NDCA, with an approximate time to trial of two years. Thus, this factor slightly favors transfer.

### E. Conclusion on Transfer to the NDCA

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Cost of attendance for willing witnesses | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| The relative ease of access to sources of proof | Weighs slightly in favor of transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs strongly against transfer |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

ASUSTeK has only established that the relative ease of access to sources of proof weighs slightly in favor of transfer. Atlas has established that the practical problems and administrative difficulties factors weigh against transfer. Because all other factors are neutral, ASUSTeK has failed to meet its burden to show that the NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. ASUSTeK's Motion with respect to the NDCA is therefore **DENIED**.

### IV. CONCLUSION

Having considered both ASUSTeK's motion to transfer to the CDCA and its alternative motion to transfer to the NDCA, the Court concludes for the above reasons it should deny ASUSTeK's Motion. ASUSTeK has failed to meet its burden to show that either the CDCA or the

NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. Accordingly, ASUSTeK's Motion is **DENIED**.

SIGNED this 31st day of October, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE