FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| HEADWATER RESEARCH LLC, | | |
| *Plaintiff,* | | Case No. 7:25-cv-00376-DC-DTG |
| v. | | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | | **FILED UNDER SEAL** |
| *Defendant.* | | |

**<u>HEADWATER'S OPPOSITION TO</u>**
**<u>GOOGLE'S MOTION TO TRANSFER</u>**

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

## **TABLE OF CONTENTS**

I. Introduction ...................................................................................................................1

II. The Relevant Technology: Tethering and Google Fi...................................................1

III. Background: EDTX Cases ...........................................................................................1

IV. Legal Standard.............................................................................................................2

    A. The 2-pronged burden of proof heavily favors Headwater .........................................2

    B. Fifth Circuit law, not Federal Circuit law, controls transfer motions ..........................3

V. The Private Interest Factors Weigh Against Transfer.................................................4

    A. The Compulsory Process Factor Weighs Against Transfer .........................................4

    B. Convenience For Willing Party Witnesses Weighs Against Transfer ..........................9

        i. Headwater Witnesses Weigh Against Transfer.................................................. 10

        ii. Google's Texas Witnesses Weigh Against Transfer ......................................... 10

        iii. Google fails to clearly demonstrate that CA-based employees will actually materialize ........................................................................................................ 13

    C. Ease of Access to Evidence Weighs Against Transfer ................................................15

    D. Other Practical Problems Weigh Against Transfer .....................................................17

VI. The Public Interest Factors Weigh Against Transfer.................................................18

    A. The Local Interest Factor Weighs Against Transfer ...................................................18

    B. The NDCA Is Congested, and This Weighs Against Transfer ....................................19

    C. Conflict of Laws and Familiarity with Governing Law Are Neutral..........................20

VII. Conclusion.................................................................................................................20

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACQIS LLC v. MiTAC Computing Tech. Corp.*,
No. W-20-CV-00962-ADA, 2021 WL 4805431 (W.D. Tex. Oct. 14, 2021) ............................ 13

*Atlas Global Tech. LLC v. ASUSTek Computer Inc.*,
No. 6:21-cv-00820-ADA, Dkt. 71 (W.D. Tex. Nov. 8, 2022)..................................................... 19

*AudioEye, Inc. v. accessiBe Ltd.*,
No. 6:20-CV-997-ADA, 2022 WL 827805 (W.D. Tex. Mar. 9, 2022) ..................................... 16

*Barbara Greist v. Lendus, LLC*,
No. 3:24-cv-02411, Dkt. 70 (N.D. Cal. June 6, 2025)................................................................. 19

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022)........................................................................................................ 2

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir.)........................................................................................................... 4

*Emerging Auto. LLC v. Kia Corp.*,
No. 2:23-CV-00434-JRG, 2024 WL 3170398 (E.D. Tex. June 25, 2024)................................. 2

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019).............................. 3

*Flypsi, Inc. v. Google LLC*,
No. 6:22-cv-00031-ADA (W.D. Tex) ......................................................................................... 13

*Google LLC v. Headwater Research LLC*,
No. 5:25-cv-07453-NW, Dkt. 35 (N.D. Cal. Jan. 21, 2026)....................................................... 18

*Hammers v. Mayea-Chang*,
No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019)................................. 2

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022)...................................................... 11

*In re Chamber of Com. of U.S. of Am.*,
105 F.4th 297 (5th Cir.2024)....................................................................................................... 9

*In re Clarke*,
94 F.4th 502 (5th. Cir. 2024)....................................................................... 1, 2, 3, 18, 19, 20

*In re DoDots Licensing Sols. LLC*,
No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023) ..................................................... 3

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)...................................................................................... 20

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022)....................................................................................... 16, 20

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023)........................................................... 9, 15, 18, 19, 20

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010)...................................................................................... 17

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004)............................................................................................ 9

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)............................................................................................ 2

*Kajeet, Inc. v. Trend Micro, Inc.*,
No. 6:21-CV-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022) .............................. 15, 17

*Lionra Tech. Ltd. v. Apple, Inc.*,
6:22-cv-00351-ADA, Dkt. 94 (May 9, 2023).................................................................... 3

*Resonant Sys., Inc. v. Apple, Inc.*,
No. MO:23-CV-00077-ADA, 2024 WL 4346391 (W.D. Tex. 2024) ......................................... 2

*Scramoge Tech. Ltd. v. Apple Inc.*,
No. 6:21-CV-00579-ADA, 2022 WL 1667561 (W.D. Tex. May 25, 2022) ............................ 15

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).................................................................................................... 3, 19

*Touchstream Tech., Inc. v. Google LLC*,
No. 6:21-cv-00569-ADA (W.D. Tex.) ............................................................................. 13

*VirtaMove, Corp. v. Int'l Bus. Mach.*,
No. 2:24-cv-00093-JRG, Dkt. 139 (E.D. Tex. 2025)......................................................... 15

*Winner Int'l Royalty Corp v. Wang*,
202 F.3d 1340 (Fed. Cir. 2000)........................................................................................ 3

**Statutes**

Fed. R. Civ. P. 45(c)(1)(B). ............................................................................................ 4

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

**TABLE OF EXHIBITS[1]**

| Exhibit | Description |
|---|---|
| 01 | $278M Verdict from *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:23-cv-00103 (E.D. Tex.) |
| 02 | $175M Verdict from *Headwater Research LLC v. Verizon Wireless*, No. 2:23-cv-00352 (E.D. Tex.) |
| 03 | Samsung's Motion to Strike "Battery Testing" from *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 04 | Trial Transcript for Dr. Wesel regarding battery testing from *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 05 | Trial Transcript for Rachel Roberts on behalf of Samsung from *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 06 | Trial Transcript for Steven Rice on behalf of Verizon from *Headwater Research LLC v. Verizon Wireless*, No. 2:23-cv-00352 (E.D. Tex.) |
| 07 | Kevin Hess (Austin) profile on McKool Smith website |
| 08 | Mitch Verboncoeur (Austin) profile on McKool Smith website |
| 09 | Richard Kamprath (Dallas) profile on McKool Smith website |
| 10 | William Merritt (Grand Prairie) profile on State Bar of Texas website |
| 11 | Theodore Stevenson (Dallas) profile on Alston & Bird website |
| 12 | Chris Bovenkamp (Dallas) profile on Charhon Callahan Robson & Garza website. |
| 13 | Eric Hansen (Dallas) profile on McKool Smith website |
| 14 | Jonathan Powers (Dallas) profile on McKool Smith website |
| 15 | Combined Minute Entries from Trial Days 1–5 in *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 16 | Combined Minute Entries from Trial Days 1–5 in *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:23-cv-00103 (E.D. Tex.) |
| 17 | Combined Minute Entries from Trial Days 1–5 in *Headwater Research LLC v. Verizon Wireless*, No. 2:23-cv-00352 (E.D. Tex.) |
| 18 | Trial transcript for Hongjung Son of Samsung in *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 19 | Trial transcript for Rachel Roberts on behalf of Samsung from *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:23-cv-00103 (E.D. Tex.) |
| 20 | Entire testimony of Krista Jacobsen played at trial in *Headwater Research LLC v. Samsung Elec. Co.*, No. 2:22-cv-00422 (E.D. Tex.) |
| 21 | Redacted copy of Dr. Raleigh's AA Flight Records for 2024–2026 |
| 22 | Docket Navigator Report showing all active Headwater cases in Texas |
| 23 | Excerpted trial transcript of Diaz on behalf of Verizon Wireless in *Headwater Research LLC v. Verizon Wireless*, No. 2:23-cv-00352 (E.D. Tex.) |
| 24 | Excerpted trial transcript of Sid Sibal on behalf of Verizon *Headwater Research LLC v. Verizon Wireless*, No. 2:23-cv-00352 (E.D. Tex.) |
| 25 | Redacted public version of Google's Motion to Transfer in *Flypsi, Inc. v. Google* |

---

[1] For convenience, Exhibits 1–41 are common across cases 7:25-cv-00369, -00372, -00374, -00376, -00378, -00380, -00518.  Sealed exhibits are 51 and onward.

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

| | |
|---|---|
| | *LLC*, No. 6:22-cv-00031-ADA, Dkt. 45 (W.D. Tex. Jul. 25, 2022) |
| 26 | Witness list from *Flypsi, Inc. v. Google LLC*, No. 6:22-cv-00031-ADA, Dkt. 289 (W.D. Tex. Feb. 26, 2024) |
| 27 | Redacted public version of Google's Motion to Transfer in *Touchstream Tech., Inc. v. Google LLC*, No. 6:21-cv-00569-ADA, Dkt. 28 (W.D. Tex. Dec. 30, 2021) |
| 28 | Redacted public version of Google's Motion to Transfer in *Touchstream Tech., Inc. v. Google LLC*, No. 6:21-cv-00569-ADA, Dkt. 28 (W.D. Tex. Dec. 30, 2021) |
| 29 | Photos of physical evidence at Headwater |
| 30 | Deposition Transcript of Jennifer Smith from *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00231-DC-DTG (Nov. 25, 2025) |
| 31 | Redacted public version of *VirtaMove, Corp. v. International Business Machines Corp.*, No. 2:24-cv-00064-JRG, Dkt. 139-1 (E.D. Tex. Feb. 5, 2025) |
| 32 | TravelMath website showing distance from Overland Park, Kansas to Midland, TX |
| 33 | TravelMath website showing distance from Overland Park, Kansas to San Francisco, CA |
| 34 | NDCA Local Civil Rules, available at https://cand.uscourts.gov/rules-forms-fees/local-rules/civil-local-rules |
| 35 | NDCA General Order No. 44, available at https://cand.uscourts.gov/sites/default/files/general-orders/GO-44_11-19-2025.pdf |
| 36 | NDCA Order Determining [*Google v. Headwater*] Cases Are Not Related, *Google LLC v. Headwater Research LLC*, No. 5:25-cv-07453-NW, Dkt. 35 (N.D. Cal. Jan. 21, 2026) |
| 37 | Google Maps screenshot showing Wi-Fi Alliance in Austin, TX |
| 38 | Wi-Fi Alliance website screenshot showing "Who We Are" and describing "Our vision and mission" |
| 39 | Docket Navigator Report showing time to trial statistics in WDTX from 2020–2025 is on average 28 months |
| 40 | Docket Navigator Report showing time to trial statistics in NDCA from 2020–2025 is on average 40 months |
| 41 | *Barbara Greist v. Lendus, LLC*, No. 3:24-cv-02411-AMO, Dkt. 70 (N.D. Cal. Jun. 6, 2025). |
| 42 | Compiled LinkedIn Profiles of TELUS employees |
| 43 | Compiled LinkedIn Profiles of non-TELUS third-parties |
| 44 | Compiled LinkedIn Profiles of Google employees |
| 45 | *Atlas Global Tech. LLC v. ASUSTek Computer Inc.*, No. 6:21-cv-00820-ADA, Dkt. 71 at 19–20 (W.D. Tex. Nov. 8, 2022) |
| 46 | --Intentionally omitted for numbering synchronization-- |
| 47 | --Intentionally omitted for numbering synchronization-- |
| 48 | --Intentionally omitted for numbering synchronization-- |
| 49 | --Intentionally omitted for numbering synchronization-- |
| 50 | TELUS website showing support for "Hotspot and Tethering" |
| 51 | [SEALED] Excerpted Deposition Transcript of Robert Greenwalt, *Headwater Research v. Google LLC*, No. 7:25-cv-00376-DC-DTG (Feb. 20, 2026). |
| 52 | [SEALED] Headwater Research LLC's Supplemental Objections and Responses to Google's Venue Interrogatories 1–5. |

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

| | |
|---|---|
| 53 | [SEALED] Excerpted Deposition Transcript of Dr. Greg Raleigh, *Headwater Research v. Google LLC*, No. 7:25-cv-00369-DC-DTG (Feb. 26, 2026). |
| 54 | [SEALED] Google's response to Venue Interrogatory No. 4. |

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

## I.      Introduction

Google's Motion to Transfer (Dkt. 26-3, hereinafter "MTT") should fail because many Texas-based witnesses will find trial here more convenient, and because Google cannot clearly demonstrate that its proposed witnesses will "*actually* materialize" as required by *In re Clarke*, 94 F.4th 502, 508 (5th. Cir. 2024).

## II.     The Relevant Technology: Tethering and Google Fi

At a very high level, the Asserted Patents in this case relate to tethering or "hotspot" functionality by which a device shares an upstream network connection with another device. Google itself describes the accused "tethering functionality" as a service for exporting an Android mobile device's cellular connection via Wi-Fi, Bluetooth, or USB to be used by another device, and Google acknowledges that Google Fi is one carrier whose configuration is relevant to that tethering functionality. *See* Dkt. 26-3 ¶ 3; Dkt. 26-2 at 5–6. The extent to which the accused products and Google Fi use, configure, and support tethering will therefore be relevant to infringement and damages. *See* Ex. 51 at 49:21–50:3; 77:10–24.

## III.    Background: EDTX Cases

Headwater has asserted its patents against multiple defendants in the EDTX, including against Verizon, AT&T, Samsung, and others. To date, Headwater has won verdicts of $278 million and $175 million.  Ex. 01; Ex. 02. Headwater's damages theories frequently have been based on power saving advantages of its inventions.  These power saving methodologies have been hotly disputed in the briefing and at trial.  *See* Ex. 03 (*Daubert* motion); Ex. 04 (trial testimony) at 303:11–304:6, 348:12–355:25.  Headwater settled following these verdicts. Given the proven success of its power-saving based damages theories, Headwater rely upon such theories again here.

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

IV.    **Legal Standard**

A.    **The 2-pronged burden of proof heavily favors Headwater**

Both the WDTX and EDTX make all inferences in favor of the non-moving party. "When deciding a motion to transfer under § 1404(a), the Court . . . must draw all reasonable inference and resolve factual conflicts in favor of the non-moving party." *Emerging Auto. LLC v. Kia Corp.*, No. 2:23-CV-00434-JRG, 2024 WL 3170398, at *2 (E.D. Tex. June 25, 2024) (*citing Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019 (collecting cases)); *Resonant Sys., Inc. v. Apple, Inc.*, No. MO:23-CV-00077-ADA, 2024 WL 4346391, at *4 (W.D. Tex. 2024).[2]

The Fifth Circuit ruled in 2024 that movants like Google have the heavy burden of making it "plainly obvious—i.e., clearly demonstrated" that its proposed witnesses will "*actually* materialize." *In re Clarke*, 94 F.4th at 508.

> Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*Id.* This burden does not require Google to present its final witness list, but Google made no other argument that witnesses will materialize (e.g., at evidentiary hearings). *Id.* at 514 (possible "evidentiary hearings"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 n.12 (5th Cir. 2008). To credit a witness relied on by Google, the Court should otherwise be so plainly convinced that they will *actually* travel to the courthouse such that this Court would be *willing to bet on it*, because Google's burden is higher than a preponderance. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("[T]he standard is not met by showing one forum is more likely than not to be more

---

[2] The Court's ruling in related case 7:25-cv-00231-DC-DTG, Dkt. 83 (W.D. Tex. Feb. 18, 2026) does not recite any burden of proof. Headwater requests that this Court's forthcoming decision explicitly recite Headwater's recitation of the burden if it is used, in case appeal is needed.

2

FILED UNDER SEAL
REDACTED PUBLIC VERSION

convenient."). The Court starts with the presumption that for Google, only a "few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019).

Headwater enjoys the much lower, pre-*Clarke* burden of proof: the non-moving party only needs to identify "relevant" witnesses for them to be considered. *See, e.g., Lionra Tech. Ltd. v. Apple, Inc.*, 6:22-cv-00351-ADA, Dkt. 94 at 7 (May 9, 2023) ("When parties are able to 'articulate the relevant and material knowledge' that the employees identified by LinkedIn possess, the Court may give weight to them."); *In re DoDots Licensing Sols. LLC*, No. 2024-100, 2023 WL 8642716, at *1 (Fed. Cir. Dec. 14, 2023) (assessing "which individuals have relevant and material information, was not error"). The Fifth Circuit's requirement to have "clearly demonstrated" that a witness will "*actually* materialize" does not apply to Headwater because the high burden of proof is "the movant's burden—and the movant's alone." *In re Clarke*, 94 F.4th at 508. Headwater also does not have a burden to identify *all* relevant witnesses—only enough to defeat Google's motion.

In summary, Headwater's proposed witnesses count if they are merely *relevant*. Google's proposed witnesses only count if Google clearly demonstrated that they will *actually* materialize. All disputes of witness relevance and witnesses materializing should be resolved in favor of Headwater under the proper burden of proof.

## B. Fifth Circuit law, not Federal Circuit law, controls transfer motions

*In re Clarke* published in 2024, clarifying the law. *Id*. Fifth Circuit law, not Federal Circuit law, controls on procedural issues, like transfer. *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). All of Google's cited pre-*Clarke* cases that favor the movant are outdated, and any conflicts of law between the Federal Circuit and Fifth Circuit must be resolved by following Fifth Circuit law.

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

**V.       The Private Interest Factors Weigh Against Transfer**

The private factors weigh strongly against transfer because (i) Headwater's evidence and witnesses are in Texas; (ii) Google has multiple witnesses in Texas; (iii) multiple third parties are in Texas, and (iv) transferring the Headwater cases to California would cause administrative chaos.

**A.       The Compulsory Process Factor Weighs Against Transfer**

Texas is more convenient for more relevant third-parties who can only be subpoenaed in Texas.  The subpoena power extends throughout "the state where the person resides, is employed, or regularly transacts business."  Fed. R. Civ. P. 45(c)(1)(B).

Google's venue witness made no meaningful effort to identify third-party witnesses. Mr. Greenwalt ████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████. He also ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

3–4 License/Settlement Witnesses.  Headwater asserted its patent family and reached a settlement covering Samsung, Verizon, AT&T, and others in prior cases in the EDTX.  Headwater will likely call relevant witnesses to establish the comparability of that license in this case and to establish their underlying facts to support Headwater's damages case. *See EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1345 (Fed. Cir.) (requiring evidence of "sufficient facts or data" underlying the recitals in license agreements). Thus, Headwater is likely to call the following witnesses: **Rachel Roberts** employed in Plano, Texas to provide Samsung's perspective and facts,

4

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

**Stephen Rice** of Keller, Texas to provide Verizon's perspective and facts, and **Robert LaGrone** and **Kristen Lucas** of Dallas, Texas to provide AT&T's perspective and facts. Ex. 52 at 6; Ex. 05 (Roberts Tr.) at 712:19–713:24; Ex. 06 (Rice Tr.) at 733:12–25. LaGrone and Lucas were slated to testify in the AT&T case that settled just before trial.

3 Non-TELUS Third Parties in Texas. **Matthew Hill** of Austin, TX is "Head of Partner Engineering, NA – Comms products" whose mission was "to drive technical engagement with partners to bring Google's comms products and services to users; We extend engineering and address the 'last mile' between Google and partners, at scale" and should be able to speak to engineering (or lack thereof) for Google's partners to support tethering over their networks. Ex. 43 1-2. He "Led the cross-functional collaboration between engineering, product management, marketing, reverse logistics, and support teams to equip all Pixel devices (from Pixel 1 to Pixel 6) with the necessary support infrastructure for new hardware features" like tethering (or the lack of marketing of tethering, as Google might argue). Ex. 43 at 1, 2, 6. **Karthik Rao** is a Ph.D "SoC [system on chip] architect with deep knowledge in Power Management." Ex. 43 at 9–17. He has potential expert testimony about power saving benefits of tethering that drive damages—a hotly contested issue in prior cases. *See* Section III, above. **Zain Saleh** was "a Google Fi Sales Lead at the Google Store" who would "coach associates on Fi activations" and would "work directly with customers . . . from Pixel devices and Nest products to . . . Google Fi wireless plans." Ex. 43 at 18. His testimony is relevant to establishing Google's *inducement* of its customers to use the accused technology on Google Fi. *E.g.*, Dkt. 1 ¶¶ 28, 30 (alleging inducement).

8 InterDigital-Related Witnesses: Google argued that InterDigital Inc. is relevant to damages. MTT at 8. The knowledgeable witnesses on this subject are in Texas, not California.

5

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████    These people were involved in the InterDigital meeting that Google sought venue discovery on.  Ex. 52 at 10–12.

Overlooked Technical Witnesses. Google cannot explain how its investigation failed to captured Texas-based carrier-support or carrier-partnership witnesses. Ex. 54 at 22–23. This omission is critical, as highlighted by Mr. Greenwalt's ████████████████████████

█████████████████████████████████████████████████████. But he ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████. For example, Google cannot explain how its initial investigation overlooked TELUS, which has 134 employees in Texas.

TELUS is a third party that sells the Accused Products in Canada. TELUS also has a significant presence in Texas providing technical support for the Accused Products, including their use of the infringing tethering technology on Pixel devices and their use on Google Fi. Ex. 50 (showing support for "Hotspot & tethering" on Google Pixel).  TELUS's website instructs users to commit infringing acts, and their technical support team is likely to have knowledge of how this is implemented. Ex. 50. Headwater may rely on a subset (e.g., 1 or 2) of the following former TELUS employes to provide unbiased testimony about tethering on Google Pixels. As disinterested third parties, they will provide important, impartial testimony compared to what Google's biased witnesses will say. Exemplary LinkedIn profiles are provided, but the Court can see from the full exhibit that if Google had performed even a basic keyword search, Google would

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

have found dozens of TELUS employees (that Google contracted with) who provided technical

support for the relevant technology and accused products:

| Name & Location | Relevance | Exhibit |
|---|---|---|
| Aaron Abendroth Austin, TX "TELUS International @ Google" | "Technical Support Representative I/II" "Answered inquiries about Project Fi." | Ex. 42 at 1–2 |
| Amanda Waver Austin, TX "Google via Telus International" | "Customer Service Representative" "Provide technical and customer support via chat, email, and phone in regards to Google Fi mobile phone service questions" | Ex. 42 at 3–5 |
| Billy S. Houston, TX TELUS International | "Network Engineer" "Google Network Support Specialist" "Google Fi Tier 2 Technical Support Specialist" | Ex. 42 at 6–7 |
| Bryan Copus Austin, TX TELUS International | "Technical Support" "Project Fi Cell Service" | Ex. 42 at 14–15 |
| Daniel Leaderer Spicewood, TX TELUS International | "Tier II Technical Service Representative" "Deliver Tier II issue resolution and service support for new products and Google Phone, Google Fi." | Ex. 42 at 35 |
| Daniel Stevens Austin, TX TELUS International | "Tier 2 Agent" "File bug reports of either known or emerging issue regarding both Pixel devices, and Google Fi service." | Ex. 42 at 42–43 |
| Jalyssa McGill San Antonio, TX TELUS International | "troubleshooting assistance to hardware and software issues pertaining to Android devices and Google's mobile service, Project Fi." | Ex. 42 at 63–64 |
| Jeffrey Anderson Austin, TX TELUS International | "provide chat support for Google's Project Fi cellular service." | Ex. 42 at 77-78 |
| Jonathan Vasquez Austin, TX TELUS International Volt | "updating and improving hundreds of Google Fi wireless articles to ensure accurate and user-friendly documentation"—likely to authenticate articles and overcome hearsay objections. "a Google Fi Subject Matter Expert" | Ex. 42 at 84-86 |
| Marjory Gregory Austin, TX TELUS International | "Tier 2 Technical Support – SME" "Led network improvement and beta testing for the launch of Google Fi Phone" "diagnosed cellular network troubleshooting procedures" | Ex. 42 at 121-122 |
| Stephen Greenhalgh Austin, TX Google Project Fi for TELUS International | "Tier 1 Technical Support Representative" "Tier 2 Technical Support Representative" | Ex. 42 at 143–144 |

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

**<u>The following third parties identified by Google are unlikely to materialize:</u>**

<u>ItsOn-ABC/Sherwood is irrelevant and did not materialize</u>.  Google's Answers in related cases do not mention "ItsOn," and the same is expected when Google files its answer in this case. ItsOn, Inc. ceased operations and stopped existing nearly a decade ago. ItsOn-ABC/Sherwood are merely liquidation entities that have no knowledge of relevant issues. Thus, no representative of ItsOn-ABC or Sherwood materialized in the three previous Headwater trials.  *See* Exs. 15–17.

<u>Mr. Giancarlo is irrelevant and did not materialize.</u>  The evidence (Google's Exhibit 39 at 25:17–22) does not show that Mr. Giancarlo worked on the Asserted Patents as Google argues. Mr. Giancarlo is only named as an inventor on one, unasserted Headwater Patent: U.S. 8,558,796 which relates to an overlay keyboard. Mr. Giancarlo materialized in none of the three prior trials. *See* Exs. 15–17.

<u>Mr. Fitzgerald is irrelevant</u>.  Google's cited evidence shows that the **three minutes** of his deposition testimony included nothing relevant to this case. Dkt. 25-25 at 3:23–26 PM; Dkt. 25-26 at 1054–56.  He gave no testimony in two of the three trials (67% failure to materialize).

<u>Mr. Modlin is irrelevant and did not materialize</u>.  Page 14 of the MTT argues that Mr. Modlin might be relevant to inequitable conduct, but that very page admits that *inequitable conduct is not even asserted in this case*, and there is not even a Rule 11 basis to assert it. Mr. Modlin materialized in none of the three prior trials.  *See* Exs. 15–17.

<u>Ms. Jacobsen is irrelevant</u>. **Two minutes** of Ms. Jacobsen's deposition testimony was introduced in only the first trial for absolutely no reason. Ex. 20 at 837:19–39:19.  Thus, she gave no testimony in the next two trials (67% failure to materialize). *See* Exs. 15–17.

<u>Qualcomm is irrelevant</u> because Qualcomm does not claim rights to Dr. Raleigh's patents. The EDTX soundly rejected Google's same standing defense *six times* already, making

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

Qualcomm-based standing arguments now frivolous. *See, e.g.*, *Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 4332693, at *1–8 (E.D. Tex. Aug. 2, 2024) ("As such the Court finds that Drs. Raleigh and Raissinia conceived of the relevant inventions ***after they left Qualcomm,*** *emphasis added*), *report and recommendation adopted*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 4953798 (E.D. Tex. Dec. 3, 2024). No Qualcomm witness materialized in any prior jury trial or evidentiary hearing. Exs. 15–17.

Party Attorneys do not count.  Headwater's attorneys Ms. Jacobsen, Van Pelt Yi & James LLP, and Shepphard Mullin cannot be considered in the analysis.  The "convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004); *In re Chamber of Com. of U.S. of Am.*, 105 F.4th 297, 306 (5th Cir. 2024) ("Because § 1404(a) is concerned with the convenience of parties, not attorneys, we do not consider the convenience of counsel").

Conclusion: The record (2 out 18 instances, or 11.1%) proves that Google's proposed witnesses **have overwhelmingly not materialized in Court**, below a preponderance and even shorter of clearly demonstrating they will appear**.** If the Court had placed even bets on Google's proposed witnesses materializing in the three prior trials, it would have lost 89.9% of the time. The 3-4 settlement witnesses, 8 InterDigital damages-related witnesses, 3 non-TELUS technical witnesses, and 1 or 2 TELUS witnesses in Texas have established relevance and significantly outweigh the 11% chance that one of Google's identified third party witnesses might appear.

### B.    Convenience For Willing Party Witnesses Weighs Against Transfer

When evaluating this factor, the Fifth Circuit uses the 100-mile rule. "When the distance between an existing venue for trial ... and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023). This rule has no

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

geographical limit and covers all willing witnesses, even those beyond the Western District of Texas. *Id.* at 361–62 (considering witnesses all the way in China). The Fifth Circuit has explained that it is reversible error when a "conclusion ignores our 100-mile test." *Id.* at 361.

### i.    2 Headwater Witnesses Weigh Against Transfer

Headwater is located in Tyler, Texas and has only two employees: Dr. Gregory Raleigh and Jennifer Smith. Dr. Raleigh is the founder of Headwater, a named inventor on every asserted patent, and has testified live in all three prior trials. He resides in Nevada but regularly travels to conduct business at Headwater's Tyler office, participate in licensing negotiations, and testify at evidentiary hearings, depositions, and trials in Headwater's numerous cases in EDTX and WDTX, including 31 active cases in those courts. Ex. 21 (Dr. Raleigh's travel logs); Ex. 53 at 107:14–109:10 (explaining Ex. 21 is a subset of travel); Ex. 22 (31 active Texas cases). The law presumes that Dr. Raleigh will be travelling from Tyler when he is needed in Court, unless Google can clearly demonstrate that it can accurately predict his future location. Jennifer Smith is Headwater's office manager, resides in Tyler, Texas, and may authenticate Headwater's records at trial. Ex. 52 at 6. They will find the WDTX more convenient under the 100-mile rule, which does not discount their convenience for being in the EDTX. Tyler is about 1,200 miles closer to Midland than the NDCA.

### ii.   Google's 8 Texas Witnesses Weigh Against Transfer

Google's investigation was designed to overlook its Texas witnesses. As explained above,

[REDACTED] Google thus cherry-picked a narrow list of "design and development" witnesses even though Google bears the burden to show that, considering all

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

relevant witnesses, transfer would be clearly more convenient. Google presenting a cherry-picked list of California-based witnesses and then stuck its head in the sand; this is insufficient to prove which venue has more relevant employee witnesses.

Of Google's eight listed witnesses, three (Hansberry, Katzenelson, Zuhuruddin) were picked for their knowledge of "Instant tethering" from 2017 or later, but they are simply not relevant. ███████████████████████████████ Dkt. 26-3 ¶¶ 4(d)(f)(h). Three (Hansbery, Liu, Colitti) ████████████████████ are so far from either venue such that their convenience is neutral. Dkt. 26-3 ¶¶ 4(d)(g)(h); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (travel from distant places like Florida "imposes a similar burden"). Google picked two Google Fi employees in California but omitted equivalent carrier relationship employees in Texas. Dkt. 26-3 ¶¶ 4(b)(c); Ex. 51 63:6–10, 64:13–25. Finally, one unidentified "willing" witnesses from the declaration no longer works for Google and will not be "willing," and Google gave no evidence of who it is. Ex. 51 at 30:8–20.

| Name, Location | Relevance | Exhibit |
|---|---|---|
| Adrienne McCallister Austin, TX | "Google Technology … Regulatory \| Finance … Executive Committee" "First-Party Hardware & Services: Direct commercial strategy for Google's Pixel devices" that will be relevant to a hypothetical negotiation. | Ex. 44 at 1, 3 |
| Rob McBride Dallas Fort Worth, TX | "Global Partnerships \| Devices & Services" "Carrier Experience with AT&T Sprint, T-Mobile & Verizon" relevant to value tethering on their networks (or lack of discussions of value) "Contract Negotiations" experience relevant to how Google would have approached a hypothetical negotiation for damages | Ex. 44 at 7 |
| Bharath Kumar Maradani Austin, TX | "I played a key leadership role on … Google Fi testing projects." | Ex. 44 at 19, 20 |
| Izaak Smith Spring, TX | At "Accenture / Google," formerly at "BcForward / Google, Inc." "Project Fi Support Technician Tier 3" | Ex. 44 at 22-23 |

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

|  |  |  |
|---|---|---|
|  | "Last stop for technical support for Project Fi" with technical knowledge of tethering on Google Fi |  |
| Nalini Belaramani Austin, TX | "Senior Engineering Manager (Android OS)" who is "Leading a distributed team for Android CoreOS." The accused functionality resides in Android. "Focus Areas: * Application lifecycle and optimizing system server resources to extend battery life." Relevant to any damages theory based on power savings. *See* Section III, above. | Ex. 44 at 27, 29 |
| Shivang P. Austin, TX | "HW Validation Engineer" and "QA Automation Test Engineer" "Power battery test for pixel devices on monthly new releases build to find out regression issue i.e. Each month battery train test." "Work on stress testing for power regression in on 5G phone device." "Conducted 24 & 48 hours of stress testing regarding power/battery." "Verifying power consumption i.e. Calculate milliwatts." Relevant to any damages theory based on power savings. *See* Section III, above. | Ex.44 at 32-35 |
| Charlie Stiernberg Austin, TX (only if the Court is counting counsel) | "Litigation Counsel at Google" "Attorney with ten-plus years' experience in complex commercial and intellectual property (IP) litigation, trials, licensing, and counseling" that will be relevant to a hypothetical negotiation. "Managed complex commercial and intellectual property litigation dockets across multiple product … such as Pixel" | Ex.44 at 36-37 |
| Kesh Patel Dripping Springs, TX | "Head of Android Platforms & Partnerships, NA Telcos" "I lead high-impact partnerships with telecommunications … and accelerate the adoption of next-gen technologies." "I champion negotiations that reshape how consumers engage with the Android ecosystem—securing market share through dynamic retail programs and forward-thinking revenue models" that are relevant to a hypothetical negotiation. "Executing several revenue share agreements with top tier North American telcos" relevant to how a hypothetical revenue sharing negotiation with Headwater would look for damages. "Closing 11 deals worth $100M+ to lock in recurring revenue for multiple fiscal years"—relevant to Google's negotiation tactics used in a hypothetical negotiation | Ex. 44 at 41, 43 |
| Mohammed Fayyazuddin Fort Worth, TX | "QA Field Test Engineer | Google Pixel Team" "Experienced in Device and Field Testing / Mobile Device Testing (Smartphones)" knowledgeable of proper methodologies for testing benefits of invention in the field. | Ex. 44 at 50 |

12

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

| | | |
|---|---|---|
| | "Work on issue log analysis for Test scenarios such as … Wi-Fi Calling Scenarios" and capabilities on tethered connections | |

### iii. Google fails to clearly demonstrate that CA-based employees will actually materialize

Google cited numerous CA-based employees to inflate its witness count, but Google cannot clearly demonstrate that they will *actually* materialize. In Headwater's three jury trials, defendants Samsung and Verizon relied upon very few party witnesses. At Headwater's first trial against Samsung, only two Samsung employees testified live (Roberts and Son). Ex. 05; Ex. 18. At the second Samsung trial, only one Samsung employee testified live (Roberts). Ex. 19. At the Verizon trial, only three Verizon employees testified live (Rice, Diaz, Sibal). Ex. 23; Ex. 24; Ex. 06.

At most,[3] Google's case will be similarly limited to 1–3 employees.  Google's past transfer motions have been highly inaccurate—far short of clearly demonstrating who will *actually* materialize. For example, this Court had recent trials in *Flypsi, Inc. v. Google LLC*, No. 6:22-cv-00031-ADA (W.D. Tex) and *Touchstream Tech., Inc. v. Google LLC*, No. 6:21-cv-00569-ADA (W.D. Tex.).  The Court can compare Google's unredacted motions to transfer in those cases with the public witness lists to see how inaccurate Google's predictions are. *Compare* Ex. 25 at 4, 7 (*Flypsi* motion naming "five employees" and 17 third-party witnesses) *with* Ex. 26 (*Flypsi* actual witness list); *compare* Ex. 27 (*Touchstream* motion) *with* Ex. 28 (*Touchstream* actual witness list).[4]

Courts also discount the movant's redundant and duplicative witnesses. *ACQIS LLC v. MiTAC Comp. Tech. Corp.*, No. W-20-CV-00962-ADA, 2021 WL 4805431, at *3 (W.D. Tex. Oct. 14, 2021) ("The Court is not convinced that any testimony from the subsidiary employees would

---

[3] The accused devices run Android, which is public code.  The parties will likely pick independent experts over party members to explain its operation, to avoid the appearance of witness bias before the jury.  Google's technical witnesses will likely not appear at all.

[4] Google should supply the unredacted versions.

13

not be duplicative of testimony garnered from the named witnesses or expert witnesses at trial.").

Only one of John Huang or Ji Yang might materialize to testify about Google Fi's role in tethering, but Google has not shown why both would be needed. Greenwalt ███████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ .

Only one Google witness might materialize to testify about core tethering implementation. Google has not shown why more would be needed. Mr. Greenwalt testified ████████████

████████████████████████████████████████████████████ By contrast, Irfan Sheriff "understood how tethering worked but he was not responsible . . .", *id.*, and Zhibin Liu's role relates only to the Pixel Settings UI. Dkt. 26-3 ¶ 5(a), (g), (h).

The remaining employees that Google relies on are irrelevant and unlikely to materialize.

Ryan Hansberry, Isaac Katzenelson, and Sami Zuhuruddin are unlikely to materialize because they only know about "Instant Tether." Greenwalt ██████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Mr. Greenwalt's is unlikely to appear because his memory of events from 10 years ago is irrelevant to infringement today. His knowledge, to the extent not forgotten, is from the earliest development period, not current implementation. Greenwalt ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

No unnamed individual on the teams mentioned in the Chen Declaration should be considered. Without more evidence, "the Court assumes each team is small and has mostly duplicative knowledge with a named representative member." *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *8 (W.D. Tex. May 25, 2022).

#### iv. Conclusion on Willing Party Witnesses

The convenience of Headwater's 2 relevant witnesses in Texas neutralize the few witnesses of Google who are actually likely to appear. Then, the convenience of the actually relevant Google employees in Texas identified in the chart above cause this factor to heavily weigh against transfer.

### C. Ease of Access to Evidence Weighs Against Transfer

Under this factor, Fifth Circuit law (which is binding) explicitly evaluates the relative convenience of "bringing" such evidence in from other Districts. *In re TikTok, Inc.*, 85 F.4th at 359 (considering the convenience of moving code in from the NDTX).[5]

Headwater's physical evidence can be more easily transported to the WDTX than to the NDCA from its Tyler, Texas office. Originals of Headwater's business documents, patent files, and physical, ribbon-issued patents are kept in massive file cabinets. Ex. 29 (Photos); Ex. 30 at 21:6–23, 22:2–13, 25:23–26:14, 31:3–17 (describing Headwater's Tyler office and its contents). This physical evidence weighs against transfer. *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 WL 126490, at *3 (W.D. Tex. Jan. 12, 2022) (crediting plaintiff's file history and license agreement at counsel's office); Ex. 36 (*VirtaMove, Corp. v. Int'l Bus. Mach.*, No. 2:24-cv-00093-JRG, Dkt. 139-1, at 6 (E.D. Tex. 2025) (two boxes of patent files "bears much more strongly

---

[5] The Court did not recite this rule in related case 6:25-cv-00231-DC-DTG, Dkt. 83 (W.D. Tex. Feb. 18, 2026).

on the transfer analysis when, as in *Volkswagen*, the evidence is purely physical in nature")
(provided as Ex. 31). Headwater's server is physically located at its Tyler, Texas office. Ex. 30 at
31:3–17; *AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, at *3 (W.D.
Tex. Mar. 9, 2022) ("the location of [party]'s servers in New York is accorded some weight").

Google's Motion merely identifies electronic evidence. But Google's electronic evidence
can be accessed just as easily from Google's office in Texas as from California, as long as there is
an internet connection. Mr. Greenwalt ███████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████. The Fifth Circuit
ruled that when "the vast majority of the evidence was electronic," it was "therefore equally
accessible in either forum." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th
Cir. 2022). He also admitted he did not investigate the location of any servers or repositories of
work product. Ex. 51 at 61:6–62:1. To the extent the accused functionality resides in AOSP,
Greenwalt further acknowledged that the source code is publicly available electronically. *Id.* at
58:15–59:7. In Headwater's previous trials against Samsung and Verizon, any third-party evidence
used at trial was electronic. Google's electronic evidence should receive no weight because it can
be electronically sent to either venue.

To the extent there is any damages evidence relating to InterDigital, it is likely available at
McKool Smith's offices in Dallas and/or Austin. *See* Section V(A), above; MTT at 8 (arguing
InterDigital's relevance).

If anything related to ItsOn is relevant, Headwater already has possession of all ItsOn-
related documents from previous cases (and has already produced to Google all docs previously

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

produced by ItsOn-ABC / Sherwood), so these can now be accessed from RAK's Dallas office. *Kajeet,* 2022 WL 126490, at \*3 (crediting location of a plaintiff's file history and license agreement at counsel's office). Any further evidence relating to ItsOn's integration project with Sprint (now T-Mobile) and Samsung is likely to be in or around Overland Park, Kansas, and any such evidence can be more easily transported to Texas than to NDCA. Ex. 52 at 13–15; Ex. 32 (637 miles to WDTX); Ex. 33 (1503 miles to NDCA). There is no need to go to ItsOn-ABC or Sherwood.

### D.      Other Practical Problems Weigh Against Transfer[6]

Headwater has 31 co-pending cases in Texas, including 8 against Google and 1 against Amazon in the WDTX. Ex. 22. These cases all assert the same family of Headwater patents. This Court will gain familiarity with the patent family and improve efficiency by keeping these cases here. *Kajeet,* 2022 WL 126490, at \*6 (finding this factor weighed against transfer where plaintiff sued other defendants in two other cases on same patent in this District).

Keeping the pending *Headwater v. Google* cases here before Judge Counts and Magistrate Judge Gilliland is inherently more efficient. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) ("it was not plainly incorrect to conclude that having the same magistrate judge handle this and the co-pending case involving the same patent would be more efficient than requiring another magistrate judge or trial judge to start from scratch").

Transferring Headwater's cases would create an administrative nightmare because the cases will be randomly assigned to different judges if transferred to the NDCA.  Ex. 34 at 3-3(a) (citing Ex. 35 § D(2) ("Cases shall be assigned blindly and at random by the Clerk")). There is no mechanism by which Headwater can later have them reassigned to a single judge, as evidenced by the denial of Headwater's unsuccessful attempt to assign have a later-filed Google declaratory

---

[6] The Court did not address this factor in related case 6:25-cv-00231-DC-DTG, Dkt. 83 (W.D. Tex. Feb. 18, 2026).

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

judgement case before Judge Tigar reassigned to Judge Wise, who was presiding over a previously filed declaratory judgement action by Google. *Google LLC v. Headwater Research LLC,* No. 5:25-cv-07453-NW, Dkt. 35 (N.D. Cal. Jan. 21, 2026) (provided as Ex. 36).  Transferring this case to the NDCA will result in a giant mess of different judges with uncoordinated schedules.  They may issue conflicting rulings, and each judge will have to learn the technology and facts from scratch.

## VI.    The Public Interest Factors Weigh Against Transfer

### A.    The Local Interest Factor Weighs Against Transfer

The Fifth Circuit (which is binding over the Federal Circuit on issues of procedure) has repeatedly ruled it is improper to double-count the parties' private connections under this public interest factor. "We look **not** to the parties' significant connections to each forum." *In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023) (emphasis added, internal quotation marks omitted, and finding this factor neutral); *In re Clarke*, 94 F.4th at 511 ("We do **not** consider the parties' connections to the venue because the local interest analysis is a public interest factor," emphasis added). "That point bears repeating: … not the *parties*." *Id*.[7]

"Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." *Id* at 511. This includes third parties in Texas in Section VI.A above. First, settlement witnesses will be curious if their settlements were worth it when Headwater wins at trial. Second, local TELUS contractors will want to know if they have been providing technical support for infringing technology. Finally, InterDigital-related witnesses in Austin and Dallas will want to see how their dealings affected damages.  The non-party local interest is centered in Texas.

In addition, the WiFi Alliance is a non-profit organization headquartered in Texas.  Ex. 37; Ex. 38.  The organization helps industries to collaborate and standardize WiFi-related technologies

---

[7] The Court's ruling in related case 7:25-cv-00231-DC-DTG, Dkt. 83 (W.D. Tex. Feb. 18, 2026) does not recite this rule from the Fifth Circuit.

FILED UNDER SEAL
REDACTED PUBLIC VERSION

and certifies devices like the Google Pixels accused in this case. Ex. 38. The WiFi Alliance has a huge interest in whether their "WiFi Certified" logo is applied to infringing tethering functionality on products like Pixels. *Atlas Global Tech. LLC v. ASUSTek Computer Inc.*, No. 6:21-cv-00820-ADA, Dkt. 71 at 19–20 (W.D. Tex. Nov. 8, 2022) ("Wi-Fi Alliance's location in the WDTX … shows a strong local interest in the WDTX") (copy provided as Ex. 45).

Google's argument about the NDCA's local interest is based on where Dr. Raleigh lived and worked ages ago. Dr. Raleigh now resides in Nevada and works in Texas (and has for many years), so the NDCA cannot claim his interest. Ex. 53 at 8:23–9:15. More importantly, this factor does **not** look to the connections of the parties, and Dr. Raleigh is Headwater's party representative.

Google also relies on its own development in the NDCA. Again, the Fifth Circuit prohibits this because this factor does **not** consider the parties' connections to the forums. To the extent any Federal Circuit case conflicts with *TikTok* and *Clarke*, the Supreme Court ruled that the Fifth Circuit controls on issues of procedure. *Stewart*, 487 U.S. at 32.

## B.    The NDCA Is Congested, and This Weighs Against Transfer

Google's reliance on statistics was foreclosed by the Fifth Circuit.[8] *Clarke*, 94 F.4th at 510. The only permissible evidence comes from the Courts themselves, and Google has no evidence from this Court that the WDTX is congested. The Court's assessment of its ability to expeditiously hold trial in November 2027 is reflected in the Court's scheduling order. *Headwater*, No. 7:25-cv-00376, Dkt. 41 at 5. In contrast, the NDCA recently called itself "congested" in 2025 based on "the realities of the Court's docket." *Barbara Greist v. Lendus, LLC*, No. 3:24-cv-02411, Dkt. 70 at 10, 12 (N.D. Cal. June 6, 2025) (attached as Ex. 41 at 10, 12).

---

[8] And if not, Google's evidence (Dkt. 25-24, 25-31) is misleading by including stale data from 2010. Recent statistics show this Court's faster trials (28 v. 40 months). Ex. 39; Ex. 40.

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

When such evidence is presented, this factor deserves full weight under Fifth Circuit law. "This factor normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' transferee district." *In re TikTok, Inc.*, 85 F.4th at 363; *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) ("this case appears to be timely proceeding to trial before the Amarillo Division. That fact further counsels against transfer"). The Fifth Circuit stated that this is the law, even though "some courts [the Federal Circuit] have held that this factor is 'speculative.'" *Planned Parenthood*, 52 F.4th at 631 (criticizing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Although the Fifth Circuit ruled that older, *statistics-driven* predictions are speculative and deserve little weight, assessments from the Courts themselves receive full weight. *In re Clarke*, 94 F.4th at 510.

### C.    Conflict of Laws and Familiarity with Governing Law Are Neutral

Headwater agrees that these factors are neutral.

## VII.    Conclusion

For the foregoing reasons, Google's Motion to Transfer should be denied.

20

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

Dated: March 13, 2026

Respectfully submitted,

*/s/ Peter Tong*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**

21

FILED UNDER SEAL
**REDACTED PUBLIC VERSION**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on March 13, 2026, I electronically filed the foregoing document using the Box/CM/ECF system which will send notifications to all parties of record. Additionally, a copy of the sealed filings are being sent to all counsel of record via e-mail.

March 13, 2026                                                    /s/ *Peter Tong*_____
                                                                         Qi (Peter) Tong

## AUTHORIZATION TO FILE UNDER SEAL

This filing is made under seal in accordance with Judge Gilliland's Standing order Regarding to File Documents Under Seal and Redacted Public Versions, dated June 2, 2022, which "grants leave for any party in a patent case to file materials containing confidential information under seal. Parties need not file a separate motion for leave."

March 13, 2026

                                                                         /s/ *Peter Tong*_____
                                                                         Qi (Peter) Tong

22