**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| HEADWATER RESEARCH LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 7:25-cv-00376-DC-DTG |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**GOOGLE'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND .............................................................................................................. 1

III. ARGUMENT .................................................................................................................... 2

    A. U.S. Patent Nos. 8,023,425; 8,631,102; and 8,799,451 ................................................. 2

        1. "user response" ................................................................................................. 2

        2. "[the] one or more processors" ......................................................................... 6

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carrum Techs., LLC v. Ford Motor Co.,*
    Nos. 2024-1183, 2024-1480, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025)...............................9

*Convolve, Inc. v. Compaq Comput. Corp.,*
    812 F.3d 1313 (Fed. Cir. 2016)...............................................................................................9

*Finjan LLC v. SonicWall, Inc.,*
    84 F.4th 963 (Fed. Cir. 2023) ........................................................................................6, 9, 10

*InTouch Techs., Inc. v. VGo Commc'ns, Inc.,*
    751 F.3d 1327 (Fed. Cir. 2014)........................................................................................4, 5, 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
    521 F.3d 1351 (Fed. Cir. 2008).............................................................................................2, 6

*Salazar v. AT&T Mobility LLC,*
    64 F.4th 1311 (Fed. Cir. 2023) ...............................................................................................9

## I.    INTRODUCTION

There are two central claim construction disputes at issue in this case. The first dispute relates to how a single claim term, "user response," should properly be interpreted in the context of the claims as a whole. The second dispute concerns three terms across two patents to which the same arguments apply. The Court should adopt Google's proposed constructions for all disputed terms because they are consistent with the plain and ordinary meaning of the claims or adhere to well-established principles of claim construction, respectively.

## II.    BACKGROUND

Headwater alleges infringement of U.S. Patent Nos. 8,023,425 ("the '425 patent"), 8,631,102 ("the '102 patent"), and 8,799,451 ("the '451 patent") (collectively, "the Asserted Patents"). The Asserted Patents are all in the same patent family, the specifications are substantively identical, and each claims priority to the same four provisional applications. *See* First Amended Complaint ("FAC"), Exs. 1–3 (Dkt. Nos. 29-1, 29-2, 29-3). The Asserted Patents claim methods, systems, and devices for providing a network forwarding service that allows a device to forward its network connection to be used by other devices. *Id.*

Headwater asserts claims 1-51 of the '425 Patent, claims 1-30 of the '102 Patent, and claims 1-69 of the '451 Patent. Headwater alleges that the asserted patents are infringed by Android's tethering functionality on Google Pixel devices operating on Google's network, such as Google's mobile virtual network operator (MVNO) Google Fi. FAC, Dkt. No. 29 ¶¶ 26-27.

### III.   ARGUMENT

   #### A.   U.S. Patent Nos. 8,023,425; 8,631,102; and 8,799,451

   ##### 1.   "user response" ('425 Patent, Claims 1, 2, 3)

| Headwater's Proposed Construction | Google's Proposed Construction |
|---|---|
| No construction is necessary; each term's plain and ordinary meaning should apply. | "response from the user of the first end point device [to the notification message including an offer to activate the access network forwarding service]" |

Google's proposed construction of "user response" is consistent with the term's plain and ordinary meaning in the context of Claim 1 as a whole. Specifically, as shown below, Claim 1 makes clear that the "user response," which is recited in Claims 1, 2, and 3, is a response provided by the user of a "first end point device" to a notification message presented on the "first end point device." Headwater disagrees, but because it offers no construction, the precise extent and details of its disagreement are unclear, and were not clarified during the parties' meet-and-confer.[1] Because Headwater disagrees, a construction is necessary. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

Claim 1 recites (with relevant language emphasized):

> A first end point device comprising:
>
> an access network modem configured to communicate data over at least one access network, the access network modem providing a connection via at least one 2G, 3G or 4G wireless network;
>
> a local area network modem configured to communicate data with one or more additional end point devices over a local area network, the local area network modem providing a connection via at least one of Bluetooth, Wi-Fi or USB;

---

[1] The parties met and conferred on April 7, 2026, but no agreement as to the appropriate constructions of the disputed terms was reached.

a forwarding agent configured to forward the data between the access network modem and the local area network modem according to an access network forwarding policy to implement a network access forwarding service, the forwarding agent including a policy implementation agent configured to forward the data in the first end point device's communications stack, and a firewall agent configured to pass or redirect the data to one or more specific access network routing paths according to the access network forwarding policy; and

a service processor configured to:

detect an event associated with the access network forwarding service;

present a notification message to a ***user of the first end point device*** in response to the event, the notification message including an offer to activate the access network forwarding service;

receive a ***user response*** for activating the access network forwarding service;

provide information regarding the ***user response*** to an activation server as part of enabling the access network forwarding service for the first end point device;

receive a service profile including one or more access network forwarding settings from the activation server, the one or more access network forwarding settings including one or more restriction settings on the access network forwarding service, the one or more access network forwarding settings identifying which access network route or traffic redirection is to be used by the forwarding agent when attempting to forward traffic between the one or more additional end point devices and the access network; and

update the access network forwarding policy with one or more access network forwarding settings to enable the forwarding agent to forward the data.

Dkt. No. 29-1 ('425 Patent), Claim 1. As shown above, Claim 1 of the '425 Patent is directed to a "first end point device." The first and only reference to a "user" in Claim 1 before the disputed term is "a user of the first end point device." The claim requires that this "user of the first end point device" be presented with a "notification message" that "includ[es] an offer to activate the access network forwarding service." The next limitation introduces the "user response" claim element,

reciting "receive a user response for activating the access network forwarding service." Based on a plain reading of the language, the contemplated user response comes from the user of the first end point device: the notification message presents an offer to *that* user to activate the access network forwarding service and the result of the user response is to activate the access network forwarding service. There is no other user recited in the claim that could provide the response, *e.g.*, a user of another device. The claim does identify "one or more additional end point devices" different from the recited "first end point device," but the claim does not recite any "user" associated with any of these one or more additional end point devices. Thus, there is no user other than the "user of the first end point device" who could provide "a user response" to activate the network forwarding service.

The Federal Circuit's decision *InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, is instructive. 751 F.3d 1327 (Fed. Cir. 2014). There, the Court held that the district court correctly construed the term "call back mechanism" to require "a device that sends a message to a *specific* user who previously was denied access" even though a message *could* be sent to more than one user. *Id.* at 1340-41. The Court reached this conclusion based on its analysis of the plain language of the claim, the written description, and the prosecution history. *Id.*

First, in *InTouch*, the Court explained that "[t]he phrase, 'call back mechanism,' on its face connotes an intention to call *back* a user that was previously denied access." *Id.* Similarly here, the phrase "user response" connotes an intention to receive a response from a user who was previously presented with an opportunity to provide a response. In Claim 1, this opportunity to provide a response is presented via the notification message, which the claim expressly states is presented to the "user of the first end point device." Dkt. No. 29-1 ('425 Patent), Claim 1.

-4-

Next, the *InTouch* Court described how the written description reinforced the district court's construction of "call back mechanism." *InTouch*, 751 F.3d at 1341. Here, the lengthy specification only uses the phrase "user response" once, and in a context unrelated to the network forwarding limitations of Claim 1. Dkt. No. 29-1 ('425 Patent), 112:63-113:5 (describing display of service-related statistics). Elsewhere, however, the specification includes disclosures conceptually similar to the claimed network forwarding features of Claim 1. For instance, the specification describes an "intermediate networking device" (corresponding to the "first end point device" of Claim 1) with a "service processor" (corresponding to the "service processor" of Claim 1) that allows the device to "act as a service intermediary or intermediate connection between the network and one or more end point devices" (corresponding to "activating the access network forwarding service" in order "to forward traffic between the one or more additional end point devices and the access network" of Claim 1). *Id.* at 152:7-21. The specification explains that "[i]n some embodiments, the intermediate networking device requires an authentication sequence for the end point device or user before allowing connection to the network through the intermediate networking device." *Id.* at 158:1-5. Through this authentication sequence, the "intermediate networking device can . . . admit the end point device to the intermediate networking device network connection." *Id.* at 158:8-11. Thus, the "intermediate networking device" must "admit" or "allow" another end point device to access the intermediate networking device network connection. *Id.* at 158:1-11. Likewise, in Claim 1, through the "notification message including an offer to activate the access network forwarding service" being presented, "a user response" must be received from the "user of the first end point device" in order to activate the access network forwarding service. *Id.*, Claim 1.

-5-

Here, the minimal prosecution history (involving only one rejection and amendment in response, in which "user response" is not specifically discussed) sheds little light on the interpretation of "user response," and therefore does not affect the analysis one way or the other.

In sum, the plain language of the claim and the written description both support Google's proposed construction of "user response," and the prosecution history is neutral. Following the guidance of the Federal Circuit in *InTouch*, the Court should therefore construe "user response" to mean a "response from the user of the first end point device [to the notification message including an offer to activate the access network forwarding service]," consistent with its plain and ordinary meaning.

> 2.    **"[the] one or more processors" ('102 Patent, Claims 1, 5, 7, 10, 13, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28) / "[the] one or more other devices" ('102 Patent, Claims 1, 15, 16, 20) / "[the] at least one processor" ('451 Patent, Claims 1, 5, 6, 7, 8, 11, 12, 13, 17, 24, 25, 26, 27, 28, 33, 43, 44, 52, 57, 62)**

| Headwater's Proposed Construction | Google's Proposed Construction |
| --- | --- |
| No construction is necessary; each term's plain and ordinary meaning should apply. | These terms must have the same meaning in each instance that they appear in the claims. |

The central dispute with respect to these terms relates to whether the different limitations refer to the same "one or more processors," "one or more other devices," and "at least one processor" each time they appear in the claims. Google's proposed construction of these terms seeks only to apply the established rule that "the use of 'the' [] indicates the claimed term refers to an antecedent term." *Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 974 (Fed. Cir. 2023) (citation omitted). Headwater disagrees; thus, construction is necessary. *O2 Micro*, 521 F.3d at 1362.

Here, the patents refer to an action being taken by "one or more processors," "one or more other devices," or "at least one processor" and later refer to other actions being taken by "the one

or more processors," "the one or more other devices," and "the at least one processor." For

example, the '102 Patent recites:

> An end-user device, comprising:
>
> . . .
>
> ***one or more processors*** configured to execute one or more instructions that, when executed by ***the one or more processors***, cause ***the one or more processors*** to:
>
>> at least assist to obtain configuration information from the one or more network elements, the configuration information instructing ***the one or more processors*** to modify or to allow modification of the first service policy setting,
>
> . . . .

Dkt. No. 29-2 ('102 Patent), Claim 1.

> The end-user device recited in claim 1, wherein, when executed by ***the one or more processors***, the one or more instructions further cause ***the one or more processors*** to at least assist to obtain a user request, and wherein obtain configuration information is based on the user request.

*Id.*, Claim 5. As shown above, the '102 Patent recites "one or more processors" in claim 1 and "*the*

one or more processors" elsewhere in claim 1 and in later claims, such as claim 5. *See also id.* at

Claims 7, 10, 13, and 19–28. Google's proposed construction would require that the "one or more

processors" that "at least assist to obtain a user request" in claim 5 be the same "one or more

processors" that are instructed in claim 1 "to modify or to allow modification of the first service

policy setting." The same principle should also apply to "the one or more other devices" in the

'102 Patent and "the at least one processor" in the '451 Patent:

> An end-user device, comprising:
>
> one or more modems for
>
> . . .
>
>> assisting the end-user device in communicating with ***one or more other devices*** over a wireless local-area network, a

personal-area network, a near-field network, or a combination of these;

memory configured to store a plurality of service policy settings, the plurality of service policy settings including a first service policy setting for authorizing the end-user device to provide a forwarding service to *the one or more other devices*, the forwarding service for forwarding traffic between *the one or more other devices* and the network system;

Dkt. No. 29-2 ('102 Patent), Claim 1.

The end-user device recited in claim 13, wherein control at least an aspect of the forwarding service comprises restrict, or assist at least one of *the one or more other devices* to restrict, usage of the forwarding service by the at least one of *the one or more other devices*.

*Id.*, Claim 15; *see also id.* at Claims 16 and 20.

A first end-user device capable of operating as an intermediate networking device, the first end-user device comprising:

. . .

*at least one processor* configured to execute one or more instructions that, when executed by *the at least one processor*, cause *the at least one processor* to:

provide a forwarding service . . .

memory coupled to *the at least one processor* and configured to provide *the at least one processor* with the one or more instructions.

Dkt. No. 29-3 ('451 Patent), Claim 1.

The first end-user device of claim 1, wherein, when executed by *the at least one processor*, the one or more instructions further cause *the at least one processor* to:

identify one or more network types over which the first end-user device is authorized to act as the intermediate networking device.

*Id.*, Claim 5; *see also id.* at Claims 6–8, 11–13, 17, 24–28, 33, 43–44, 52, 57, and 62.

-8-

It is established law that the use of the word "the" preceding references to terms like "one or more [processors]" in subsequent limitations means that those limitations "can only be satisfied by the *same* 'one or more [processors]' that satisfied the first limitation." *Finjan*, 84 F.4th at 974-75 (emphasis added) (characterizing the defendant's argument, which the Court embraced); *see also id.* at 974 ("This reference to 'the processor,' referring back to the 'a processor' recited in preamble, supports a conclusion that the recited user interface is '*operatively working with*' *the same processor* to perform all of the recited steps." (quoting *Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016)) (emphasis in original)); *see also Carrum Techs., LLC v. Ford Motor Co.*, Nos. 2024-1183, 2024-1480, 2025 WL 2924504, at *4-6 (Fed. Cir. Oct. 15, 2025). Here, the claims' use of "*the* one or more processors," "*the* one or more other devices," and "*the* at least one processor" means that the *same* "one or more processors," "one or more other devices," or "at least one processor," respectively, that are responsible for performing earlier limitations in the claims must also perform the later limitations.

To the extent Headwater argues that the purported inventions of the Asserted Patents are or may be distributed over multiple processors or devices, Google does not dispute that position, "[b]ut that is a separate issue from whether the claims require the same component to perform multiple functions or satisfy multiple limitations of a claim." *Finjan*, 84 F.4th at 974. Put another way, for all of the limitations reciting "the one or more processors," there must be at least one such processor that is capable of performing *all* those limitations. *Id.* (citing *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1318 (Fed. Cir. 2023) ("It does not suffice to have multiple microprocessors, each able to perform just one of the recited functions; the claim language requires at least one microprocessor capable of performing each of the recited functions.")); *Salazar*, 64 F.4th at 1317 ("We agree with the district court that while the claim term 'a microprocessor' does not require

there be only one microprocessor, the subsequent limitations referring back to 'said microprocessor' require that at least one microprocessor be capable of performing each of the claimed functions. This approach is entirely consistent with our precedent."); *Finjan*, 84 F.4th at 975 ("Even if an infringing system can use 'one or more computers,' the plain language of the claims requires at least one of those computers to perform all the functions listed in the claims . . . ."). Thus, Google's construction is consistent with and seeks only to apply established claim construction principles.

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court adopt its proposed claim constructions.

DATED:  April 14, 2026

Respectfully Submitted,

JACKSON WALKER LLP

Nathaniel St. Clair, II
Tex. Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822

Paige V. Welch
Tex. Bar No. 24138184
pwelch@jw.com
100 Congress Ave., Ste 11000
Austin, TX 78701
Telephone: (512) 236-2295
Facsimile: (512) 236-2002

PAUL HASTINGS LLP

By: */s/ Robert W. Unikel*
    Robert W. Unikel
    Ill. Bar No. 6216974
    robertunikel@paulhastings.com
    71 South Wacker Drive, Suite 4500
    Chicago, IL 60606
    Telephone: (312) 499-6000
    Facsimile: (312) 499-6100

Matthias A. Kamber
Cal. Bar No. 232147
matthiaskamber@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Andrea P. Roberts
Cal. Bar No. 228128
andrearoberts@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Robert R. Laurenzi
N.Y. Bar No. 3024676
robertlaurenzi@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Ariell N. Bratton
Cal. Bar No. 317587
ariellbratton@paulhastings.com
4655 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

-11-

Stephanie Adamakos
D.C. Bar No. 1718981
stephanieadamakos@paulhastings.com
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

*Attorneys for Defendant*
*GOOGLE LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on April 14, 2026, all counsel of record who have appeared in this case and have consented to electronic service, were served with the foregoing document via the Court's CM/ECF system.

 */s/ Robert W. Unikel*
Robert W. Unikel

-12-