**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff,* | Case No. 7:25-CV-00376-DC-DTG |
| v. | **JURY DEMANDED** |
| GOOGLE LLC, | |
| *Defendant.* | |

**PLAINTIFF HEADWATER RESEARCH LLC'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 1

    A.  "user response" (Patent 8,023,425 claims 1, 2, and 3) .......................... 1

        1.  The Court should not add new limitations ................................... 1

        2.  *InTouch* is distinguishable because it involved a different
            claim structure than is at issue here ........................................... 3

        3.  Google's confusing bracketed language should be rejected ....... 4

    B.  "[the] one or more processors" (Patent 8,631,102 claims 1, 5, 7,
        10, 13, 19–28) "[the] one or more other devices" (Patent 8,631,102
        claims 1, 15, 16, 20) "[the] at least one processor" (Patent
        8,799,451 claims 1, 5–8, 11–13, 17, 24–28, 33, 43, 44, 52, 57, 62) ...... 4

        1.  Google's position is inconsistent with the claim language ........ 6

        2.  Google concedes the claims cover distributed processing,
            even though its argument contradicts this admitted fact ............. 9

        3.  Google's interpretation of the claims directly contradicts
            the intrinsic record and thus must be incorrect ......................... 9

        4.  Google's caselaw is distinguishable and cannot overcome
            the intrinsic evidence here ...................................................... 13

        5.  Google waived its right to a narrower construction that a
            single processor must be capable of performing every
            limitation .................................................................................. 14

III.  CONCLUSION ................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Carrum Techs., LLC v. Ford Motor Co.,*
　Nos. 2024-1183, 2024-1480, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025)............................ 14

*Finjan LLC v. SonicWall, Inc.,*
　84 F.4th 963 (Fed. Cir. 2023) ................................................................................. 13

*Intel Corp. v. Qualcomm Inc.,*
　21 F.4th 801 (Fed. Cir. 2021) ................................................................................... 6

*InTouch Techs., Inc. v. VGo Commc'ns, Inc.,*
　751 F.3d 1327 (Fed. Cir. 2014) .............................................................................. 3, 4

*K-2 Corp. v. Salomon S.A.,*
　191 F.3d 1356 (Fed. Cir. 1999) .................................................................................. 2

*Optimize Tech. Sols., LLC v. Staples, Inc.,*
　No. 2:11-CV-419-JRG, 2013 WL 6170624 (E.D. Tex. Nov. 20, 2013) ................................... 4

*Phillips v. AWH Corp.,*
　415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 1, 9, 10, 14

*Salazar v. AT&T Mobility LLC,*
　64 F.4th 1311 (Fed. Cir. 2023) ................................................................................ 13

*Thorner v. Sony Computer Ent. Am. LLC,*
　669 F.3d 1362 (Fed. Cir. 2012) ............................................................................... 1, 6

*TMT Systems, Inc. v. Medtronic, Inc.,*
　No. 6:20-cv-00973-ADA, Dkt. 155 (W.D. Tex. June 3, 2022) ............................................ 15

*U.S. Surgical Corp. v. Ethicon, Inc.,*
　103 F.3d 1554 (Fed. Cir. 1997) .................................................................................. 3

*Vascular Sols. LLC v. Medtronic, Inc.,*
　117 F.4th 1361 (Fed. Cir. 2024) ................................................................................. 8

*Vitronics Corp. v. Conceptronic, Inc.,*
　90 F.3d 1576 (Fed. Cir. 1996) ........................................................................... 8, 9, 13

*Wi-Lan, Inc. v. Apple, Inc.,*
　811 F.3d 455 (Fed. Cir. 2016) ................................................................................. 2, 5

\* All emphasis in quoted material has been added unless otherwise noted.

## I.    INTRODUCTION

Google's proposed constructions are unhelpful, confusing, improperly limiting, and inconsistent with the intrinsic evidence. They should be rejected.

## II.    ARGUMENT

### A.    "user response" (Patent 8,023,425 claims 1, 2, and 3)

| Headwater's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "response from the user of the first end point device [to the notification message including an offer to activate the access network forwarding service]" |

The simple two-word phrase "user response" would be readily understood by a jury and should be given its plain and ordinary meaning. It should not be rewritten into a 24-word phrase that adds a restriction to a specific user and (if its bracketed language also applies) further restrictions upon what the response must be responding to. Google's cited case does not support its argument because the claim language here is not similarly structured. Google's construction should also be rejected because most of it appears in an unexplained, confusing set of brackets.

#### 1.    The Court should not add new limitations

The phrase "user response" should be given its plain and ordinary meaning under Federal Circuit law. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc))). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner* at 1365. Google does not even argue that either exception should apply here. There is no lexicography or disclaimer here that supports a departure

1

from the plain meaning, especially the type of narrowing Google proposes.

For the "receive a user response …" element, the claim does not specify an identity of the user, and the Court should not add this type of limitation when it does not exist. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee. . . . '[c]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth'").

The '425 patent claims limit what a "user response" is not by who the user is, but by what the response is *for* (i.e., "for activating the access network forwarding service"). Dkt. 29-1. The Court should not change this scheme by further limiting the identity of the user. If claim 1 were intended to be restricted to only the same user of the first end point device, the claim element at issue presumably would have used the phrase "the user" to invoke antecedent basis and refer back to the same user, such that the claim would have said "receive a user response *from the user* for activating the access network forwarding service." *See Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim."). But the claim does not recite such a limitation.

Of course, it may well be the case when the system "present[s] a notification to a user," that same user is who provides the recited user response. But nothing in the claim language or the remainder of the intrinsic record *requires* the same user who was presented with the notification to also provide the user response. The claim does not specify who must provide the user response, and the Court should not add in such a requirement.

Notably, Google's proposal does not seek to clear up any confusion or ambiguity. Google is not arguing that the words/phrases "user," "response," and/or "user response" are inherently ambiguous or overly technical. Google's proposal should be rejected because the simple phrase

2

"user response" needs no clarification. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

### 2.    *InTouch* is distinguishable because it involved a different claim structure than is at issue here

In full context, the *InTouch* case does not support Google. *See InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014). Google's brief truncates the claim language construed there, creating a misleading impression that the three words "call back mechanism" had been construed into a much larger phrase about a specific user's past activity. Dkt. 63 at 4 ("the district court correctly construed the term 'call back mechanism' to require 'a device that sends a message to a *specific* user who previously was denied access'"). That is not the case. Indeed, the full construction in *InTouch* is as follows:

| Original Patent Language | *InTouch* Construction |
|---|---|
| a call back mechanism that informs a user that was denied access to said mobile robot that said mobile robot can be accessed | a device that sends a message to a specific user who previously was denied access to a particular mobile robot that the same mobile robot can now be accessed |

*InTouch*, 751 F.3d at 1333 (providing full claim language), 1340–41.

Because the *InTouch* patent **originally claimed** "a user that was denied access to said mobile robot," it made sense to construe that the claim element did in fact refer to the same *specific* user. *Id.* at 1341 ("we agree with the district court that the term requires a device that sends an availability message to a user *who previously was denied access* to that particular robot.")  The Court did not create an extended construction based solely on the words "call back mechanism," as Google implies (and as Google seeks to do here with "user response"). In contrast, the claim element at issue here merely recites "receive *a user response* for activating the access network

3

forwarding service." Unlike the *InTouch* claim, the claim element here does not include original language specifying that the source of the user response had previously received (or was denied receipt) of anything—and this distinction in claim drafting should be respected. The reasoning of *InTouch* simply does not apply here because Headwater's claim does not include such language.

### 3. Google's confusing bracketed language should be rejected

The Court should also reject Google's proposed construction because its bracketing is confusing. *See, e.g.*, *Optimize Tech. Sols., LLC v. Staples, Inc.*, No. 2:11-CV-419-JRG, 2013 WL 6170624, at *24 (E.D. Tex. Nov. 20, 2013) ("Thus, because construing 'generated' and 'generating' would only tend to confuse rather than clarify the scope of the claims, the Court hereby expressly rejects the parties' proposed constructions. No further construction is necessary."). Google does not explain why part of its proposal is in brackets. For example, Google does not explain whether both the unbracketed and bracketed portions are supposed to be considered by the jury and, if so, why one portion is bracketed while the other is not. If the bracketed portion is merely a suggestion or example and should not be considered by the jury, then it should be removed from the proposed construction. As written, a jury would be confused by the bracketed language, providing an additional reason that Google's construction should be rejected.

### B. "[the] one or more processors" (Patent 8,631,102 claims 1, 5, 7, 10, 13, 19–28) "[the] one or more other devices" (Patent 8,631,102 claims 1, 15, 16, 20) "[the] at least one processor" (Patent 8,799,451 claims 1, 5–8, 11–13, 17, 24–28, 33, 43, 44, 52, 57, 62)

| Headwater's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | These terms must have the same meaning in each instance that they appear in the claims |

Google seeks to narrow the claims in ways that not only lack intrinsic support but in fact are expressly contradicted by the claims and specification. Google's proposal should be rejected, and these terms should be given their plain and ordinary meaning.

4

As an initial matter, Google has misframed the issue as being about whether "the use of 'the' [] indicates the claimed term refers to an antecedent term." Dkt. 63 at 6. Headwater does not dispute the basic principle of antecedent basis and does not dispute that a phrase like "the one or more processors" refers back to a previously introduced "one or more processors." To the extent Google's argument is just about antecedent basis, the Court should rule that these phrases have their plain and ordinary meanings and, if deemed necessary, instruct the jury on antecedent basis. *See, e.g.*, *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim.").

While Google's proposed construction does not reflect this, its briefing makes clear that Google seeks to effectively rewrite the claims to add the phrase "***at least one of***" before each recitation of "the one or more processors" ('102 patent) and "the at least one processor" ('451 patent). Dkt. 63 at 9 ("there must be at least one such processor that is capable of performing *all* those limitations" (emphasis in original)).[1] According to Google, there must be a ***single*** processor (rather than a set of "one or more processors") that has each of the recited capabilities, which would be a drastic departure from the plain meaning. In the context of the '102 patent, Google's position is that there would need to be a ***single*** processor (i.e., at least one processor) within "the one or more processors" that would (1) "at least assist to obtain configuration information from the one or more network elements," (2) "at least assist to obtain, through the user interface, a user input," and (3) "modify a second service policy setting." Thus, if there were a networking processor that performs (1) and (3) and a separate user-interface processor that performs (2), the claim would not be met, even though "the one or more processors" ***would*** together perform them.

---

[1] As discussed below in subsection II.B.5, Google has waived the right to seek an instruction to the jury with this additional restriction.

Google's proposal defies the claim language, and nothing in the intrinsic record justifies Google's proposed narrowing. To the contrary, both the claims and the specification specifically contemplate flexibility and distributed processing. In fact, Google even concedes this and does not dispute what "processor[s]" or "devices" means. Thus, these phrases should be given their plain and ordinary meanings. *Thorner*, 669 F.3d at 1365 ("The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history.").

Google's position is internally inconsistent and contradicts the admitted fact that the claims cover distributed processing, as well as the intrinsic record clearly showing this. And Google's cited case law cannot explain away these fundamental problems.

### 1.    Google's position is inconsistent with the claim language

Google fails to offer a coherent claim construction that makes sense for the three disputed terms here. For example, Google argues that, "for all of the limitations reciting 'the one or more processors,' there must be ***at least one*** such processor that is capable of performing *all* those limitations." Dkt. 63 at 9 (second emphasis in original). But if the patentee intended to claim a single processor that would perform all the recited functions, it simply could have recited "a processor" and "the processor." The "one or more" language chosen by the patentee must be given meaning, as there would have been no reason to claim "one or more processors" (consistent with the disclosure of distributed processing) if the claimed invention would still require a single processor that performs all of the claimed functions. That Google's interpretation would render the "one or more" language superfluous shows Google is incorrect. *E.g.*, *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.").

Claim differentiation further shows that Google is wrong, because multiple asserted claims

6

already recite "***at least one of*** the one or more [X]." For example, claim 1 of the '102 patent recites "one or more other devices," and numerous dependent claims recite "***at least one of*** the one or more other devices." Dkt. 1-2 (Patent 8,631,102) at cls. 15, 16, 17, 19, 20, 25, 26. Similarly, claim 24 of the '425 patent recites "one or more network elements" and later recites "***at least one of*** the one or more network elements." Dkt. 1-1 (Patent 8,023,425) at cl. 24. This shows that when the patentee wanted to recite "one or more [X]" and then later refer to "at least one of the one or more [X]," the patentee did that expressly. Under principles of claim differentiation, "the one or more devices" should be interpreted differently than "***at least one of*** the one or more devices." There need ***not*** be "at least one of the one or more processors" which "is capable of performing *all* those limitations." Dkt. 63 at 9 (emphasis in original). Not only is Google's proposed addition of "at least one of" to the claim language not supported by the claims, it is directly contrary to the patentee's addition of that same language when intended. When the patentee wanted to specify "at least one of" in the claims, it did so explicitly. The limitation should not be implied elsewhere.

Google's narrowing proposal also cannot be squared with the claim term "the one or more instructions." For example, claim 1 of the '102 patent recites "one or more processors configured to execute one or more instructions that, when executed by the one or more processors, cause the one or more processors to" do various things. Dependent claims 7, 10, 13, and 19-28 then specify that "***the one or more instructions*** further cause the one or more processors" to do other things.[2] There is no requirement in the claim language that a single instruction causes the processor(s) to perform every step, nor an embodiment in the specification of a single instruction prompting every

---

[2] The same is true of the '451 patent (Dkt. 1-3), in which claim 1 recites "at least one processor configured to execute one or more instructions that, when executed by the at least one processor, cause the at least one processor to" do various things, and dependent claims 5-8, 11-13, 17, 24-28, 33, 43, 44, 52, 57, and 62 then specify that "the one or more instructions further cause the one or more processors" to do other things.

claimed function, further demonstrating that Google's narrowing proposal is misguided. *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (explaining that a claim interpretation that excludes the preferred embodiment is "rarely, if ever, correct"). It would be absurd to require that a single computer instruction prompt every claimed function here, which is presumably why Google did not seek to construe "the one or more instructions" in the way Google proposes construing "the one or more processors" and "the one or more other devices."[3] Instead, the one or more instructions must ***collectively*** cause the one or more processors (likewise, collectively) to perform the recited functionality. Claim language like "one or more" should be interpreted consistently. *See, e.g.*, *Vascular Sols. LLC v. Medtronic, Inc.*, 117 F.4th 1361, 1370 (Fed. Cir. 2024) ("a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent"). Thus, this is further intrinsic evidence that when the term "the one or more" is used in these patent claims, it does not mean that at least one (or every one) of the items must perform the claimed function. They can do so collectively in a distributed fashion, as the specification contemplates and as Google admits the claims cover.

Indeed, it is telling that Google does not seek construction of at least ten other claim terms that recite "the one or more [X]" or "the at least one [X]." For example, Google does not seek construction of any of the following and has waived any ability to do so now:

- "the one or more network elements" ('102 and '425 patents)
- "the one or more instructions" ('102 and '451 patents)
- "the one or more other end-user devices" ('451 patent)
- "the one or more messages" ('425 patent)
- "the one or more access network forwarding settings" ('425 patent)
- "the one or more additional end point devices" ('425 patent)
- "the at least one access network" ('425 patent)
- "the one or more activation servers" ('425 patent)

---

[3] Unsurprisingly, Google's IPR petition challenging the '102 patent offered no showing that every recited action (of independent claim 1 and dependent claims 7, 10, 13, and 19-28) is prompted by a single instruction or every one of a set of instructions, which would be nonsensical. *See* Ex. 1.

- "the one or more restriction settings" ('425 patent)
- "the one or more policy implementation agents" ('425 patent)

This only further shows Google's proposal is litigation-driven and not based on a genuine belief that the meaning of "the one or more" or "the at least one" needs to be clarified for the jury.

### 2. Google concedes the claims cover distributed processing, even though its argument contradicts this admitted fact

Critically, "Google does not dispute" that the "inventions of the Asserted Patents are or may be distributed over multiple processors or devices." Dkt. 63 at 9. As an example of distributed processing, a smartphone may have two processors, where one processor is configured to perform certain functions, and the other processor is configured to perform certain other functions—and which processor performs which functions can be modified. In such a system, the processing functions are "distributed" multiple  processors, which would mean that "one or more processors" may *collectively* perform all of the functions. There would not need to be "at least one" *single* processor that performs every function, because that would directly undermine the flexibility of a distributed system. This concept of distributed processing is reflected in the claims and specification (as further discussed below), and it is incompatible with Google's argument that "there must be at least one such processor that is capable of performing *all* those limitations." Dkt. 63 at 9 (emphasis in original).

### 3. Google's interpretation of the claims directly contradicts the intrinsic record and thus must be incorrect

The intrinsic record provides examples of distributed processing, where "one or more processors" can *collectively* perform all of the claim elements. Claims must be read in view of the specification and the intrinsic record. *Phillips*, 415 F.3d at 1315–16. An interpretation that excludes the preferred embodiment is "rarely, if ever, correct." *Vitronics*, 90 F.3d at 1583.

For example, Figures 9–15 provide examples where multiple processors work together,

9

and these examples should not be excluded from the claims by adopting Google's proposed construction.[4] Dkt. 1-2 (Patent 8,631,102) and Dkt. 1-3 (Patent 8,799,451) at Figs. 9–15. These figures show various configurations of a "Processor" 930, "Sub-processor" 935, and "Service Processor" 115 working together, as shown in Figure 9 below:



**FIG. 9**

*Id.* (annotated). In describing Figure 9, the Asserted Patents state:

> As shown in FIG. 9, device 100 also includes a processor 930, sometimes referred to as a CPU or central processor unit, an APU or application processor unit, a core processor, a computing device, or many other well known terms. In some embodiments, device 100 includes one or more processors and/or a multicore processor. As shown, processor 930 includes a sub-processor 935. . . . ***In some embodiments, a device includes more than one processor and/or sub-processor***, and in such a device, one processor and/or sub-processor can have one architecture while another may have a somewhat different or completely different architecture.

---

[4] The patents also define a "processor" as "**one or more** devices, circuits, and/or processing cores configured to process data, such as computer program instructions." Dkt. 1-2 (Patent 8,631,102) at 5:42–45; Dkt. 1-3 (Patent 8,799,451) at 5:38–42. "In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. There is notably no restriction in this definition requiring that a single processing device or core must execute an entire program, as Google's proposed narrowing would suggest because "one or more" appears in the definition. Moreover, that the term "processor" can refer to one or more devices/cores that process data only further shows that the patentee intended the flexibility of distributed processing.

> In some embodiments, one or more of the processors and/or sub-processors can have a general purpose architecture or instruction set, can have an architecture or instruction set that is partially general or partially specialized, or can have an instruction set or architecture that is entirely specialized. ***In some embodiments, a device includes more than one processor and/or sub-processor, and in such a device, there can be a division of the functionality for one or more processors and/or sub-processors***. For example, one or more processors and/or sub-processors can perform general operating system or application program execution functions, while one or more others can perform communication modem functions, input/output functions, user interface functions, graphics or multimedia functions, communication stack functions, security functions, memory management or direct memory access functions, computing functions, ***and/or can share in these or other specialized or partially specialized functions***.

Dkt. 1-2 (Patent 8,631,102) at 26:53–27:23; Dkt. 1-3 (Patent 8,799,451) at 26:39–27:18. This is a clear and explicit disclosure indicating that the claimed inventions should not be limited as Google proposes. The specification recognizes that the claimed inventions can be implemented with one processor performing all functions, multiple processors each performing all functions, or multiple processors collectively sharing in the performance of functions. Because the specification states that "***there can be a division of the functionality for one or more processors and/or sub-processors***" (*id.*), Google cannot be correct that the claims require that "for all of the limitations reciting 'the one or more processors,' there must be at least one such processor that is capable of performing *all* those limitations." Dkt. 63 at 9 (emphasis in original).

While the above disclosure is more than enough to reject Google's proposed construction, still other portions of the intrinsic record further show Google is wrong. As another example, claim 1 of Patent 8,631,102 recites, in relevant part:

> cause the one or more processors to:
>> at least assist to obtain ***configuration information*** …;
>> at least assist to obtain … ***a user input*** …

Dkt. 1-2 (Patent 8,631,102) at claim 1. Figure 30 below shows both "Configuration Information" and "User Input":

11



**FIG. 30**

*Id.* at Fig. 30 (annotated). The specification then explains that ***more or less*** of this process can be moved to different systems as part of a "distributed" system:

> It will be apparent to one of ordinary skill in the art that variations of the embodiment depicted in FIG. 30 are possible where ***more or less of the service processor functionality is moved*** onto the modem subsystem or onto the device application processor subsystem. . . . For example, ***the service processor can be distributed*** as a standard feature set contained in a modem chipset hardware . . .

*Id.* at 96:63–67, 97:6–9. Thus, Google's statement that "there must be at least one such processor that is capable of performing *all* those limitations" (Dkt. 63 at 9, emphasis in original) is directly contradicted by this example, where "more or less of the service processor functionality" is moved to other processors/systems, especially in a distributed processor system.

These are not the only examples. The specification is replete with disclosures indicating that the claimed inventions should be understood to encompass flexible distributed systems in

12

which multiple processing tasks may all be performed by one processor, may all be performed by multiple processors, or may collectively be performed by different combinations of processors (e.g., using bus-based interconnections to coordinate processing tasks). *See, e.g.*, Dkt. 1-2 (Patent 8,631,102) at Figs. 9, 11, 15A, 15C, and corresponding specification descriptions; *see also, e.g.*, *id.* at 161:40-162:21. Google's proposed construction directly contradicts the implementation flexibility described in the intrinsic record and should thus be rejected. *Vitronics*, 90 F.3d at 1583.

### 4. Google's caselaw is distinguishable and cannot overcome the intrinsic evidence here

Google's cited cases are inapposite. Multiple key facts readily distinguish this case from those cited by Google. For example, (i) the disputed claim terms recite "one or more" or "at least one" (not just "a" or "an"), (ii) Google does not seek construction of numerous other "the one or more" and "the at least one" claim terms and failed to show its proposed narrowing makes sense for all such instances, (iii) the claims include clear examples of "the one or more" that would not make sense with Google's proposed narrowing (e.g., no single instruction of "the one or more instructions" could be required to prompt all recited functions), (iv) the specification expressly describes distributed processing that flexibly divides processing among multiple processors, (v) Google "does not dispute" that "the Asserted Patents are or may be distributed over multiple processors or devices" (Dkt. 63 at 9), and (vi) the phrase "at least one of" precedes "the one or more" elsewhere in the claims (showing that the patentee knew how to recite such a limitation when it was intended). *See supra.*

Google points to cases like *Finjan*, *Salazar*, and *Carrum*, but while those cases have a similar procedural posture, they have very different underlying facts and very different intrinsic records. *See* Dkt. 63 at 9-10 (citing *Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963 (Fed. Cir. 2023); *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311 (Fed. Cir. 2023); *Carrum Techs., LLC v. Ford Motor*

13

*Co.*, Nos. 2024-1183, 2024-1480, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025)). All of those cases followed a more typical "a"/"the" recitation of the disputed limitations, and Google identifies nothing indicating that the patent specifications in those cases are comparable to those here—much less an indication that the parties there agreed the claims cover distributed processing, as the parties do here. Among other things, the specification here:

(i) expressly defines a "processor" to include "one or more devices" (Dkt. 1-2 (Patent 8,631,102) at 5:43; Dkt. 1-3 (Patent 8,799,451) at 5:39),

(ii) states that "a device includes more than one processor and/or sub-processor, and in such a device, there can be a division of the functionality for one or more processors and/or sub-processors" (Dkt. 1-2 at 27:11–14; Dkt. 1-3 at 27:7–10), and

(iii) includes an example where "more or less of the service processor functionality is moved onto the modem subsystem or onto the device application processor subsystem. . . . For example, the service processor can be distributed as a standard feature set contained in a modem chipset hardware . . ." (Dkt. 1-2 at 96:65–67; Dkt. 1-3 at 96:66–97:2).

It is a bedrock principle that claims must be read in view of the specification and other intrinsic evidence (*see Phillips*, 415 F.3d at 1315–16), and there is no indication that the intrinsic record of those cases is comparable to that here. The Court should not blindly apply constructions based on different patents with different specifications and different claims (including claim differentiation issues with "at least one of the one or more" being recited elsewhere in the claims).

### 5. Google waived its right to a narrower construction that a single processor must be capable of performing every limitation

Finally, as discussed above, Google's briefing argues that, "for all of the limitations reciting 'the one or more processors,' there must be at least one such processor that is capable of performing *all* those limitations." Dkt. 63 at 9 (emphasis in original). This is an additional

14

requirement that is not captured in Google's proposed construction set forth in its heading/table.[5]

Dkt. 63 at 9–10. Thus, Google has waived the right to instruct the jury that "there must be at least one such processor that is capable of performing *all* those limitations." *See TMT Systems, Inc. v. Medtronic, Inc.*, No. 6:20-cv-00973-ADA, Dkt. 155 at 33 (W.D. Tex. June 3, 2022) ("Neither party offers a construction for this term that captures the details of their argument. . . . neither party proposes to further construe the plain and ordinary meaning of an 'M' as having certain characteristics . . . . the Court adopts the plain and ordinary meaning and finds the parties waived their right to ask for a different construction to be given to the jury.") (copy provided as Ex. 2).

## III.   CONCLUSION

For these reasons, no disputed term requires construction. All should be given their plain and ordinary meaning.

Dated: May 5, 2026                          Respectfully submitted,

                                            */s/ Marc Fenster*
                                            Marc Fenster
                                            CA State Bar No. 181067
                                            Email: mfenster@raklaw.com
                                            Reza Mirzaie
                                            CA State Bar No. 246953
                                            Email: rmirzaie@raklaw.com
                                            Brian Ledahl
                                            CA State Bar No. 186579
                                            Email: bledahl@raklaw.com
                                            Dale Chang
                                            CA State Bar No. 248657
                                            Email: dchang@raklaw.com
                                            Kristopher Davis
                                            CA State Bar No. 329627
                                            Email: kdavis@raklaw.com

[5] Because Google has mis-framed the issue as an antecedent basis dispute, a ruling on antecedent basis will not imply a limit on the number of processors that must be capable of performing every limitation, because these are separate issues.

James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on May 5, 2026, with a copy of this document via the Court's CM/ECF.

*/s/ Marc Fenster*
Marc Fenster

17