# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **TMT SYSTEMS, INC.,** *Plaintiff,* | § § § § § § § § § § § | **W-20-CV-00973-ADA** |
| **-v-** | | |
| **MEDTRONIC, INC.,** *Defendant.* | | |

<u>**CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF**</u>

Before the Court are the Parties' claim construction briefs: Plaintiff TMT Systems' Opening Brief ("Plaintiff's Opening") (ECF No. 42), Defendant Medtronic's Responsive Brief ("Defendant's Response") (ECF No. 59), Plaintiff's Reply Brief ("Plaintiff's Reply") (ECF No. 67), and Defendant's Sur-Reply Brief ("Defendant's Sur-Reply") (ECF No. 81). The Court provided the parties its preliminary constructions in advance of the *Markman* hearing. The parties subsequently indicated to the Court that they did not wish to argue any of the terms, with the understanding that the parties preserve and do not waive any of the positions set forth in their claim construction briefing. The Court accordingly canceled the *Markman* hearing.

The Court adopts its preliminary constructions to be its final constructions, and enters those final constructions now.

**I.      BACKGROUND**

Plaintiff asserts a single patent, U.S. Patent No. 7,101,393 (the "'393 Patent"). ECF No. 1 at 1. The '393 Patent is entitled "Percutaneous Endovascular Apparatus for Repair of Aneurysms and Arterial Blockages." The '393 Patent is generally directed to "an endovascular apparatus for the treatment of aneurysms or arterial blockages, and more particularly, to an endovascular

1

TMT 2120
Medtronic v. TMT
IPR2021-01532

apparatus having an expandable attachment device for securing the endovascular apparatus to an interior wall of a lumen." '393 Patent at 1:7–11.

An abdominal aortic aneurysm ("AAA") is a "ballooning out" of the arterial wall of the aorta within the abdominal cavity. *Id.* at 1:15–18. Without treatment, an AAA may rupture and cause a fatal hemorrhage. *Id.* at 1:22–24.

To repair an AAA, a surgeon may insert a graft, which acts as an artificial artery, that spans the length of the AAA so that the blood passes through the graft instead of continuing to pass through the AAA. *Id.* at 1:26–28, 1:32–35. The graft may be made of "synthetic fabrics or films, DACRON™, or expanded polytetrafluoroethylene." *Id.* at 2:29–30. The below figure depicts an AAA and how the graft (labelled as "fabric tube") attaches within the AAA.



Plaintiff's Opening at 2.

To introduce an endovascular graft percutaneously (*i.e.*, through the skin) and then through the vascular system, the graft must have a small profile. *See id.* at 1:43–45. After properly

positioning the graft within the AAA, the graft and its attachment devices can expand into the desired shape. *Id.* at 1:43–48. To expand the graft into the desired shape, the patent describes that a "variety of expandable attachment devices have been proposed for securing an endovascular graft to an interior wall of a vessel," but that "[n]one of the proposed attachment devices, however, have been found to be ideally suited for use with an endovascular graft." *Id.* at 1:48–53. The inventor desired a small, low profile attachment device that can expand many times its initial diameter, and that can exert enough radial force when expanded "to fix into the aorta and thereby reduce blood leaks around the apparatus." *Id.* at 1:55–60.

To address this problem, the '393 Patent discloses and claims an expandable attachment device that "include[s] a plurality of telescoping arms that join together to form an expandable ring." *Id.* at 1:66–2:1. The telescoping arms are "similar to the telescoping segments of a presentation pointer." *Id.* at Abstract. Figures 12A and 12B depict a schematic top view of the expandable attachment device with the telescoping arms (labelled as "40") partially and fully, respectively, expanded. *Id.* at 3:29–33.



The patent describes arranging the telescoping arms in an "M configuration" when the arms are

fully extended. *Id.* at 5:36–38, Figs. 13H–U.



FIG. 13A   FIG. 13H   FIG. 13O

FIG. 13B   FIG. 13I   FIG. 13P

FIG. 13C   FIG. 13J   FIG. 13Q

FIG. 13D   FIG. 13K   FIG. 13R

FIG. 13E   FIG. 13L   FIG. 13S

FIG. 13F   FIG. 13M   FIG. 13T

FIG. 13G   FIG. 13N   FIG. 13U

The patent describes that the possible advantages of the "M configuration" include: 1) "it may produce superior radial force for holding the attachment device in position" and 2) it "may produce the same ratio of expansion (i.e., the ratio of the final outer diameter of the attachment device in its expanded state to the initial outer diameter of the attachment device in its collapsed state) as the 'single plane configuration' using fewer parts." *Id.* at 5:39–46.

## II.    LEGAL STANDARD

### A.    Claim Construction Generally

The general rule is that claim terms are given their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a 'heavy presumption' that claim terms 'carry their accustomed meaning in the relevant community at the relevant time.'"). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) "disavows the full scope of [the] claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "'clearly express an intent' to redefine the term." *Id.*

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "Distinguishing the claimed invention

6

over the prior art, . . . [during prosecution] indicate[s] what the claims do not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1988).  The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."  *Id.* at 1325–26.  Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable."  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed [claim] language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988).  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. United States. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent.  *Id.* at 1318.  Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### B.     Claim Differentiation

Under the doctrine of claim differentiation, a court presumes that each claim in a patent has a different scope. *Phillips*, 415 F.3d at 1314–15. The presumption is rebutted when, for example, the "construction of an independent claim leads to a clear conclusion inconsistent with a dependent claim." *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1372 (Fed. Cir. 2008). The presumption is also rebutted when there is a "contrary construction dictated by the written description or prosecution history." *Seachange Int'l., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). The presumption does not apply if it serves to broaden the claims beyond their meaning in light of the specification. *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017).

### C.     Whether the Preamble is Limiting

Courts presume that the preamble does not limit the claims. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010). But "[i]n general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). "Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention

in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *Catalina*, 289 F.3d at 808 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)). The Federal Circuit has provided some "guideposts" regarding whether the preamble is limiting: (1) preamble provides antecedent basis, (2) preamble is essential to understand limitations or terms in the claim body, (3) preamble recites "additional structure or steps underscored as important by the specification," and (4) "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Id.*

## III.   LEGAL ANALYSIS

### A.   Term #1: whether the preamble is limiting

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #1: whether the preamble is limiting<br><br>U.S. Patent No. 7,101,393, Cls. 1, 26<br><br>Proposed by Plaintiff | the preamble is limiting in its entirety | preamble is not limiting |

Plaintiff contends that the preambles of Claims 1 and 26 are limiting. Claims 1 and 26 provide:

1.   An attachment device that is expandable from a first state to a second state for securing an endovascular apparatus to an interior wall of a lumen, the device comprising:

a plurality of telescoping arms, the arms being operatively connected to one another so as to form a perimeter of variable length, wherein the telescoping arms are operatively coupled to one another at an angle so that multiple telescoping arms form the shape of a M.

9

26.  An attachment device that is expandable from a first state to a second state for securing an endovascular apparatus to an interior wall of a lumen, the device comprising;

A plurality of telescoping arms forming a closed loop, wherein the closed loop defines a plane by its circumference, wherein each telescoping arm is connected to another telescoping arm above or below the plane, —wherein the plurality of telescoping arms are coupled together in an M configuration.

'393 Patent 7:16–23, 10:11–19.

**The Parties' Positions:**

Plaintiff contends that the preamble is limiting for at least four reasons. ***First***, Plaintiff contends that the preamble is limiting because it provides antecedent basis for the term "a first state" which appears in the dependent claims. Plaintiff's Opening at 4. More specifically, dependent Claim 11, which descends from Claim 1, recites "the first state" which refers back to "a first state" in the preamble of Claim 1. *Id.* ***Second***, Plaintiff contends that the preamble is limiting because it is necessary to understand the limitations or terms in the body of the claim. *Id.* at 5. More specifically, Plaintiff contends that nothing in the body of the claim: 1) recites "an attachment device," 2) that the "attachment device" is "expandable from a first state to a second state," or 3) that the "attachment device" is "for securing an endovascular apparatus to an interior wall of a lumen." *Id.* Plaintiff further contends that preamble is necessary to provide "context" for the elements recited in the claim: "[t]he 'telescoping arms' in the 'shape of a M' (in the claim body) are for 'an attachment device' that is 'expandable' to secure 'an endovascular apparatus' (in the preamble)." *Id.* (parentheticals added). ***Third***, Plaintiff contends that the preamble is limiting because the structure contained therein is "underscored as important in the specification." *Id.* More specifically, Plaintiff contends that the specification describes the "present invention" as generally relating to "an endovascular apparatus for the treatment of aneurysms or arterial blockages, and more particularly, to an endovascular apparatus having an expandable attachment

10

device for securing the endovascular apparatus to an interior wall of a lumen." *Id.* (quoting 1:7–11) (emphasis removed). **Fourth**, during prosecution, the applicant noted the benefits of this attachment device. *Id.* at 5–6. In particular, Plaintiff characterized applicant's statement that "the configuration of the telescoping arms, e.g., the 'M configuration' shown in Figure 13, serves to provide additional support and force against a lumen; thus, this configuration provides a fixation capability to the attachment device" was a benefit of the claimed attachment device. *Id.* at 6–7 (quoting *id.*, Ex. A (Election of April 21, 2005) at 8)) (emphasis removed).

Defendant contends that as Plaintiff has not shown that the preamble "recites essential structure or steps, or if it is necessarily to give life, meaning, and vitality' to the claim," and thus Plaintiff has not overcome the presumption that the preamble is not limiting. *Id.* at 4. Defendant also contends that "for securing an endovascular apparatus" is merely an intended use and thus is not limiting. *Id.* at 5.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees that the preambles of Claims 1 and 26 are limiting for the reasons that follow. **First**, the specification describes that "[t]he present invention relates generally to an endovascular apparatus for the treatment of aneurysms or arterial blockages, and more particularly, to an endovascular apparatus having an expandable attachment device for securing the endovascular apparatus to an interior wall of a lumen." '393 Patent at 1:7–11. This passage clearly limits the "present invention" to "an endovascular apparatus having an expandable attachment device for securing the endovascular apparatus to an interior wall of a lumen." Because the patentee described the "present invention" in this way, this indicates that the invention as whole is so limited. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) ("When a patentee describes the features of the present invention as a whole," he implicitly alerts the reader that "this

11

description limits the scope of the invention." (internal quotations omitted)).  Because the only place in Claims 1 and 26 that recite an "endovascular apparatus" are in the preambles, the Court concludes that the second "half" of both preambles, *i.e.*, "for securing an endovascular apparatus to an interior wall of a lumen," are limiting.

*Second*, the first half of both preambles, *i.e.*, "[a]n attachment device that is expandable from a first state to a second state," are also limiting because they recite "additional structure or steps underscored as important by the specification." *Catalina*, 289 F.3d at 808.  More specifically, the phrase "attachment device" describes that the endovascular apparatus is a device that attaches to the interior wall of the blood vessel and is fixed in place.  The endovascular apparatus needs to attach to the site of the aneurysm in order "to prevent movement of the graft after deployment." *See* '393 Patent at 1:38–41.

*Third*, both preambles recite that the endovascular device is "expandable from a first state to a second state," which is "essential to understand limitations or terms in the claim body." *Catalina*, 289 F.3d at 808.  In particular, this phrase provides meaning as to purpose and operation of the "telescoping arms" which are recited in the body of both claims.  Without this phrase, the purpose and operation of the telescoping arms is unclear.

*Finally*, the phrase "a first state" in the preamble of Claim 1 provides antecedent basis for "the first state" in the body of Claim 11.  *Id.*

Therefore, for the reasons above, the Court finds that the preambles of Claims 1 and 26 are limiting.

**B.      Term #2: "endovascular apparatus"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "endovascular apparatus" <br><br> U.S. Patent No. 7,101,393, Cls. 1, 26 <br><br> Proposed by TMT | "endovascular graft for the treatment of aneurysms or arterial blockages" | preamble is not limiting |

**The Parties' Positions:**

Plaintiff argues for a non-plain-and-ordinary meaning, while Defendant appears to argue that this term should have its plain and ordinary meaning.  Plaintiff makes two related arguments in support of its proposed construction.  ***First***, with respect to "for the treatment of aneurysms or arterial blockages," Plaintiff contends that its proposed construction comes directly from the specification.  Plaintiff's Opening at 7.  In particular, Plaintiff contends that the specification describes that "[t]he present invention relates generally to an endovascular apparatus for the treatment of aneurysms or arterial blockages[.]"  *Id.*(quoting '393 Patent at 1:7–9) (emphasis removed); *see also* Plaintiff's Reply at 1.  Plaintiff also points out that the patent is entitled "Percutaneous Endovascular Apparatus for Repair of Aneurysms and Arterial Blockages." Plaintiff's Opening at 7 (emphasis removed).

In response to this argument, Defendant contends that the words "relates generally to" is not the type of "present invention" statement that limits the claim scope.  Defendant's Sur-Reply at 1–2. (citing *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 3959804, at *4 (E.D. Tex. July 22, 2016)).

***Second***, Plaintiff contends that the specification and provisional application uses the words "endovascular apparatus" and "endovascular graft" interchangeably, and that the specification

describes the benefits of using the latter to treat aneurysms. Plaintiff's Opening at 7 (quoting 1:29–34, 1:51–53, 1:51–55) (emphasis removed). Defendant contends that while the patentee knew how to use both words, but chose to use the word "apparatus" and not "graft." Defendant's Response at 7–8.

More generally, Defendant contends that this term does not require construction and that Plaintiff's proposed construction improperly narrows the term beyond is plain and ordinary meaning. *Id.* at 7. Defendant further contends that the Plaintiff's proposed construction uses the word "endovascular," which will not help a jury understand the meaning of this term. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court finds that the proper construction for this term is plain and ordinary meaning for at least the following reasons. *First*, Plaintiff does not contend that the patentee acted as his own lexicographer or that there was a disclaimer during prosecution. Therefore, neither exception to the general rule that a term should be construed according to its plain and ordinary meaning applies. *Thorner*, 669 F.3d at 1365. *Second*, the Court agrees with Defendant that 1:7–9 does not support Plaintiff's proposed construction. More specifically, the Court agrees with Defendant that "generally relates to" is not a sufficiently clear disclaimer to narrow the meaning of this term from its plain and ordinary meaning to Plaintiff's proposed construction. *Script Sec. Sols.*, No. 2:15-CV-1030-WCB, 2016 WL 3959804, at *4 ("the even looser language used in the specification of the '078 patent ('the invention relates generally to') cannot be treated as disclaiming the broader claim scope suggested by the plain language of the claim.").

Therefore, for the reasons above, the Court finds that plain and ordinary meaning is the correct construction for this term.

C.    Term #3: "telescoping arms" / "telescoping arm"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #3: "telescoping arms"<br><br>U.S. Patent No. 7,101,393, Cls. 1, 26<br><br>Proposed by TMT | "arms that telescope in the manner of a presentation pointer and/or an accordion" | "plain and ordinary meaning, which is more than one telescoping arm" |
| "telescoping arm"<br><br>U.S. Patent No. 7,101,393, Cl. 26<br><br>Proposed by Defendant | "plain and ordinary meaning, which is one of the telescoping arms" | "plain and ordinary meaning, which is an arm that telescopes, such as in the manner of a presentation pointer or an accordion" |

**The Parties' Positions:**

The dispute between the parties appears to be whether each arm must individually telescope like an accordion (in addition to telescoping like a presentation pointer). *See* Plaintiff's Reply at 2, 3. Defendant's proposed construction requires that each individual arm itself must expand like an accordion. Defendant's Response at 8 ("But, as the patent states, 'each telescoping arm may function like an accordion'; if an arm does not telescope (either like a presentation pointer, an accordion, or in some other way), then it is not a 'telescoping arm.'"). By contrast, Plaintiff's proposed construction does not appear to require that an individual arm itself must expand like an accordion, but rather that multiple telescoping arms in the shape of an M expand like an accordion Plaintiff's Opening at 9 ("Medtronic contends that (1) *each individual arm* is required to telescope like a presentation pointer or like an accordion (in contrast to the specification, which shows

15

telescoping arms in the shape of an M *expanding collectively*, either in the manner of an accordion, or in the manner of *both* an accordion and a presentation pointer") (emphasis in original).

The parties' disagree over the meaning of the last sentence in the following passage:

> The expandable attachment device comprises a plurality of telescoping arms that are attached to form an expandable ring. Each telescoping arm is similar to an expandable presentation pointer. Alternatively, each telescoping arm may function like an accordion.

'393 Patent at 2:36–40.

Plaintiff contends that its proposed construction is taken directly from the last two sentences of this passage.  Plaintiff's Opening at 9.  Plaintiff contends "presentation pointer expansion" refers to the "expansion of incrementally sized segments that are slideably received within one another as depicted in Figures 13M and 13N.



*Id.* (zooming and annotating Figs. 13M and 13N).  Plaintiff contends that "Figure 13M shows the incrementally sized segments in a semi-collapsed state, whereas the enlarged extract from Figure 13N shows the incrementally sized segments in an expanded state."  *Id.*  Plaintiff contends that Figures 13H through 13M depict accordion expansion.



*Id.* at 10 (annotating Figs. 13H and 13M).  Plaintiff contends that Figs. 13M and 13N illustrated

that telescoping arms in the shape of an M may telescope both like an accordion (blue arrow) and

like a presentation pointer (green arrow).



*Id.* (annotating Figs. 13M and 13N).

Plaintiff contends that Defendant's proposed construction that each individual arm must

expand like an accordion is "entirely divorced from the specification."  *Id.* More specifically,

Plaintiff contends that while Figures 13H and 13M depict accordion expansion using multiple

telescoping arms, the specification does not disclose a single embodiment where "***each*** arm

***individually*** telescopes like an accordion or otherwise describe anything resembling single-arm

accordion expansion."  *Id.* at 10–11.

Plaintiff contends that the last sentence in the above passage describes that each telescoping

arm may "***function*** like an accordion by separating from other telescoping arms like the bellows

of an accordion," but not that each individual arm must expand like an accordion.  *Id.* at 11.

Plaintiff additionally contends that Defendant's proposed construction is overly broad as it improperly includes telescoping approaches beyond what is disclosed in the specification (presentation pointer and accordion).  *Id.*

Plaintiff finally contends that Defendant's proposed construction violates the principle of claim differentiation between Claims 1 and 3.  *Id.* at 12–13.  More specifically, Claim 3 provides "wherein the telescoping arms are configured so that an increase in the perimeter of variable length results in an increase in a height of the device."  *Id.* at 12.  Plaintiff contends that "[i]f each arm of the four arms in the shape of an M is required to individually telescope like a presentation pointer … , then an increase in the perimeter of variable length would always result in an increase in height of the device," which according to Plaintiff would make the scope of Claim 3 to be identical to that of Claim 1.  *Id.* at 13 (emphasis removed).

In its response, Defendant contends that because the patent states "***each*** telescoping arm may function like an accordion; if an arm does not telescope (either like a presentation pointer, an accordion, or in some other way), then it is not a telescoping arm."  Defendant's Response at 8 (internal quotations omitted).

Defendant contends that Plaintiff's proposed construction incorrectly reads "telescoping arm" out of the claims entirely.  *Id.*; Defendant's Sur-Reply at 2.  Defendant contends that the specification is "clear" that each arm must telescope.  Defendant's Response at 9 (quoting 2:38–40 ("Each telescoping arm is similar to an expandable presentation pointer. Alternatively, each telescoping arm may function like an accordion.")).  Defendant further contends that the specification distinguishes the "M springs" in Figure 9, which Defendant characterizes as "straight arms in collectively expand like an accordion" with the telescoping arms in Figure 15.  *Id.* at 10.  Defendant contends that the M springs would fall within Plaintiff's proposed construction, which

Defendant contends is incorrect as the specification never describes M springs as telescoping arms. *Id.*

Defendant contends that, during prosecution, the Patent Office "consistent interpreted 'telescoping' arms to require that *each* arm telescope." *Id.* Defendant also contends that the extrinsic evidence is consistent also supports its proposed construction. *Id.* at 11.

With respect to Plaintiff's contention that Defendant's proposed construction is overly broad, Defendant contends that the patentee did not limit the telescoping function to just the presentation pointer and accordion approaches. *Id.*

With respect to Plaintiff's contention that Defendant's proposed construction violates the principle of claim differentiation, Defendant contends the expansion of the telescoping arm is not the only way that to increase the height, but rather, other factors, (*e.g.*, how much the arms rotate and the direction of the rotation, *etc.*) affect whether there is an increase in height. *Id.* at 12.

In its reply, Plaintiff contends that the disputed passage does not state that each telescoping arm is an accordion, but only rather that it "may function" as an accordion. Plaintiff's Reply at 5. Plaintiff contends that the only disclosure in the specification of a telescoping arm that "may function like an accordion" are the telescoping arms in an M configuration in Figures 13 and 15, as well as the M springs in Figure 9. *Id.* Plaintiff contends that Defendant ignores that Figures 13H to 13M depict accordion expansion of multiple arms. *Id.* at 3.

With respect to its claim differentiation argument, Plaintiff contends that Defendant "offers no meaningful response[.]" *Id.* at 4. Plaintiff contends that Defendant's argument that the other variables that could cause a change in height are not described in the patent. *Id.* at 5.

In its sur-reply, Defendant contends that the specification describes the accordion functionality of the telescoping arms without referring to any figure or other text in the patent. Defendant's Sur-Reply at 2.

Defendant contends that Figures 13H to 13M do not show accordion expansion, but rather that they depict "individual telescoping arms assembled in 'an *M configuration*.'" *Id.* at 3–4. Defendant also contends that neither Figure 9 or Figures 15 support Plaintiff's argument that the M springs in Figure 9 expand like an accordion while the telescoping arms in Figure 15 expand both like a presentation pointer and an accordion. *Id.* at 4. With respect to Figure 9, Defendant contends that the specification never refers to the M springs as telescoping arms, let alone describe that the "telescoping arms" function like an accordion. *Id.* With respect to Figure 15, Defendant contends that the specification never describes that the telescoping arms in Figure 15 expand like an accordion. *Id.* at 4–5.

With respect to Plaintiff's claim differentiation argument, Defendant contends that Plaintiff's premise that an expansion of a telescoping arm will always result in an increase in a height of the device is incorrect as Claim 1 does not place any limits on which "plane" in which the arm telescopes. *Id.* at 5. Defendant also contends that Plaintiff "stretches the canon of claim differentiation far beyond its limits" as Claim 3 does not say anything about each arm telescoping "leaving [Plaintiff] to resort to questionable geometric deductions to interpret claim 3 as adding that requirement." *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court finds that both parties' proposed constructions are incorrect and that the correct construction is plain and ordinary meaning for both "telescoping arm" and "telescoping arms."

20

As a preliminary matter, neither party appears to contend that "arm" or "arms" does not have a well-known meaning, or that "telescoping arms" is a coined term. Furthermore, the parties agree that the key passage from the specification is "[a]lternatively, each telescoping arm may function like an accordion." Plaintiff's Reply at 2 (quoting 2:38–40). The parties appear to agree that "telescoping arm" is similar to an expandable presentation pointer and that a presentation pointer telescoping involves "segments [that] are incrementally sized and are in slidable contact with each other." *Id.* (quoting Defendant's Response at 4) (alteration in original). Finally, the parties appear to agree that a "telescoping arm" is a single segment of a M configuration. Plaintiff's Opening at 13 ("[i]f each arm of the four arms in the shape of an M is required to individually telescope like a presentation pointer …" (emphasis removed)); Defendant's Sur-Reply at 3 (depicting an annotated version of Figures 13M and 13N (reproduced below)).



Based on the Court's review of the specification—and especially the figures—the Court disagrees with the parties that a telescoping arm is limited to a single segment as depicted in Defendant's annotated versions of Figures 13M and 13N. Rather, the specification appears to disclose two types of telescoping arms. Figures 4C and 9 depicts one type of telescoping arm, the expandable presentation pointer.





More specifically, the specification describes component 40 in both figures as a "telescoping arm." '393 Patent at 5:12–14 (Figure 4C); 6:30–33 (Figure 9). This type of telescoping arm expands only along one axis.

Figures 13 (*e.g.*, 13J) and 15, on the other hand, depicts a second type of telescoping arm, one where the two or more V-shaped telescoping arms are coupled together to form a M-shape.





FIG. 15

The key difference between the second type of telescoping arm and the expanding presentation pointer type is that the latter can only expand along the axis of the pointer whereas the former can expand along two different axes. Using Figure 13J as an example, when a one or more telescoping arm expands horizontally, the incrementally sized segments slide past each other such that the horizontal width of that telescoping arm increases. But when one or more telescoping arms expand vertically, each V-shaped arm expands such that the V becomes shallower. *See, e.g.,* Fig. 13L. When one or more telescoping arms expand in the vertical direction, each V-shaped

23

telescoping arm—and, collectively, all coupled telescoping arms—function like an accordion. As such, the pointer/accordion type of telescoping arm can expand along two different axes. But because each V-shaped telescoping arm may only expand horizontally, *i.e.*, it may not expand both horizontally and vertically, the "each telescoping arm may [or may not] function like an accordion."[1] '393 Patent at 2:39–40.

Based on the specification's description that a telescoping arm may function like an accordion, the specification appears to describe that accordion-style expansion is within the plain and ordinary meaning. Extrinsic evidence provided by Defendant confirms that the plain and ordinary meaning may include accordion-style expansion. Defendant's Response, Exs. 8, 9Because both presentation pointer and accordion style may be within the plain and ordinary meaning of "telescoping arm," the Court does not find it necessary, at this point, to provide a further construction as to the plain and ordinary meaning. The fact that neither party alleges that there may be an *O2 Micro* issue if the Court does not provide a further construction as to the plain and ordinary meaning supports the Court's decision. That said, to the extent that the parties believe there is an *O2 Micro* issue, the parties are directed to contact the Court to request a supplemental mini-*Markman*.

Finally, the specification consistently describes that "telescoping arms" are simply more than one, *i.e.*, plural, telescope arm. Because that is the plain and ordinary meaning of that term, the Court adopts plain and ordinary meaning for this term as well.

---

[1] The Court notes a single segment of the V (or M) cannot be a telescoping arm that functions like an accordion because that type of telescoping arm cannot expand along two different axes. For that type of telescoping arm to expand along two different axes, it needs to be coupled to a second telescoping arm of that type. At that point, it either is "telescoping arm<u>s</u>" or, if it were to be considered a single telescoping arm, it would be a V-shaped telescoping arm, which the Court finds to be the second type of telescoping arm disclosed in the specification.

To summarize, for the reasons described herein, the Court finds that the correct construction for "telescoping arm" and telescoping arms" is plain and ordinary meaning.

**D.      Term #4:  variable length"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #4:  variable length"<br><br>U.S. Patent No. 7,101,393, Cl. 1<br><br>Proposed by Defendant | no construction required; plain and ordinary meaning | "boundary that has a varying length as each arm telescopes" |

**The Parties' Positions:**

Defendant contends that the Court needs to construe this term in order to help the jury to understand the meaning of this term.  Defendant's Response at 13 (citing *CollegeNET, Inc. v. MarketLinx, Inc.*, No. A-09-CA-544-SS, 2010 WL 11566364, at *7 n.9 (W.D. Tex. Sept. 14, 2010)).  In support of this argument, Defendant points out that the word "perimeter" does not appear in the specification, let alone the term "term of variable length."  *Id.*

Plaintiff contends that a person of ordinary skill in the art would understand the meaning of this term and that Defendant's proposed construction does nothing to clarify the meaning. Plaintiff's Opening at 14.  In support of Plaintiff's latter point, Plaintiff contends that Defendant "simply swaps 'perimeter' with 'boundary' and 'variable' with 'varying.'"  *Id.*; Plaintiff's Reply at 6.  Rather, at least according to Plaintiff, Defendant's proposed construction is another attempt to require that each telescoping arm individually telescopes.  *Id.*; Plaintiff's Reply at 6.

In its reply, Plaintiff contends that because this term is straightforward and not a technical term of art, no construction is needed.  Plaintiff's Reply at 6.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff for the reasons that follow. *First*, the "heavy presumption" is that a term should be construed as having its plain and ordinary meaning. *Omega*, 334 F.3d at 1323 ("We indulge a 'heavy presumption' that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." (internal citation omitted)). *Second*, Defendant does not appear to argue that the patentee acted as his/her own lexicographer and/or there was a disclaimer in the specification or during prosecution. *Thorner*, 669 F.3d at 1365 (the "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) "disavows the full scope of [the] claim term either in the specification or during prosecution."). *Third*, the term "perimeter of variable length" is a non-technical phrase whose meaning a lay jury can easily grasp and apply. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The district court simply must give the jury guidance that can be understood and given effect by the jury once it resolves the issues of fact which are in dispute." (internal quotation marks omitted)). As such, the Court does not believe additional clarification is needed for this term. *Fourth*, Defendant's proposed construction incorrectly adds "as each arm telescopes." The term "perimeter of variable length" is silent as to what structure the perimeter relates to and why it is variable. *Fifth*, at best, Defendant's substitution of "perimeter" with "boundary" and "variable" with "varying," is an "exercise in redundancy." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). At worst, Defendant's proposed construction substitutes well-understood words for words with a slightly different meaning.

### E.    Term #5: "connected"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #5: "connected"<br><br>U.S. Patent No. 7,101,393, Cl. 26<br><br>Proposed by Defendant | no construction required; plain and ordinary meaning | "distinct structures functionally connected" |

**The Parties' Positions:**

Plaintiff contends that "connected" should have its plain and ordinary meaning.  Defendant contends that dictionaries define "connection" as "the act of joining together."   Defendant's Response at 14 (quoting ECF No. 59-11).

**The Court's Analysis:**

The Court begins by applying the general rule that "connected" should have its plain and ordinary meaning.  *Phillips*, 415 F.3d at 1312.  Next, the Court considers the dictionary definition of "connection," but nothing in that definition supports the added requirement of "distinct" structures or any "functional" operation.   The Court has no reason to prefer a functional connectional and to exclude a physical connection.  Therefore, the Court finds that plain and ordinary meaning is the correct construction for this term.

**F.      Term #6: "operatively connected," as used in: "the arms being operatively connected to one another so as to form a perimeter of variable length"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #6: "operatively connected," as used in:<br><br>"the arms being operatively connected to one another so as to form a perimeter of variable length"<br><br>U.S. Patent No. 7,101,393, Cl. 1<br><br>Proposed by both | "the arms being connected to one another to form a perimeter of variable length capable of reducing leakage around the perimeter of the tubular sleeve" | "the arms being distinct structures functionally connected to one another so as to form a boundary that has a varying length as each arm telescopes" |

**The Parties' Positions:**

For "operatively connected," the parties repeat their arguments for "connected" before addressing the surrounding claim context.  Plaintiff argues that "operatively" in "operatively connected" refers to the operation of forming a perimeter of variable length capable of reducing leakage around the perimeter of the tubular sleeve because this is the function of the connection.  Plaintiff's Opening at 14–15.  Plaintiff argues that "'operatively connected' . . . is a general descriptive term frequently used in patent drafting to reflect a functional relationship between claimed components.  Generally speaking, . . . it means the claimed components must be connected in a way to perform a designated function."  *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1118 (Fed. Cir. 2004).  Plaintiff supports its proposed function by looking to the specification.  Plaintiff's Opening at 15–16 (citing '393 Patent at 1:57–60, 5:36–41, 6:26–27, Figure 13U).  Plaintiff argues that Defendant's proposal makes "operatively" redundant with "form a perimeter."  *Id.* at 16.  Finally, Plaintiff criticizes Defendant's proposal for adding

the phrase "distinct structure" when the specification instead described the embodiments as having "segments." *Id.*

Defendant argues that Plaintiff's construction impermissibly adds unclaimed functions to the claims, such as the capability "of reducing leakage around the perimeter of the tubular sleeve." Defendant's Response at 15.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court construes "operably connected" in the context of "the arms being operatively connected to one another so as to form a perimeter of variable length" to mean "the arms being connected to one another so as to form a boundary that has a varying length as each arm telescopes."  This construction adopts a modified version of Defendant's proposal that removes the requirement of "distinct structures" due to the reasons given for "connected" above.

The Court agrees with Defendant that "form a perimeter of variable length" is the operation performed when the arms are "operatively connected" to each other.  These words describe, rather than repeat, what happens when the arms are "operatively connected."  Defendant's proposal properly interprets the operation to refer to varying the length of the boundary, which occurs "as each arm telescopes" while the arms are connected.  In this context, "operatively connected" acts as a general descriptive term that reflects the relationship between the structure of claimed arms and the arms' effect of varying the boundary length.  *Innova*, 381 F.3d at 1118. This operation makes sense and is consistent with the embodiments described in the specification.

The Court agrees with Defendant that Plaintiff's construction impermissibly imports limitations from the specification into the claim.  *Innova* does not give an unrestricted license to import operations from the specification into a claim.  *Id.*.  Instead, the Federal Circuit found the district court erred by proceeding beyond the plain language of the claims by adding language based on

examples in the specification.  *Id.*  This Court finds it similarly improper to take the operation of

"reducing leakage around the perimeter of the tubular sleeve" from the specification and adding it

to the construction of this term.  Here, none of the words in the claim can be construed as the effect

of reducing leakage.

### G.      Term #7: "coupled"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #7: "coupled"<br><br>U.S. Patent No. 7,101,393, Cl. 26<br><br>Proposed by Defendant | No construction required; plain and ordinary meaning | "distinct structures functionally coupled" |

**The Parties' Positions:**

Plaintiff contends that "coupled" should have its plain and ordinary meaning.  Defendant contends

that "coupled" should be construed consistent with "connected." Defendant's Response at 14.

Defendant contends that dictionaries define "connection" as "the act of joining together," and

define "couple" as "to connect parts . . . at their ending points with a coupling device."  *Id.* (quoting

ECF No. 59-11).

**The Court's Analysis:**

For the reasons given above for the term "connected," "coupled" is also construed to have

its plain and ordinary meaning.  Nothing in Defendant's definitions support the added requirement

of "distinct" structures or any "functional" operation.  The Court has no reason to prefer a

functional coupling and to exclude a physical coupling.

**H.    Term #8 "operatively coupled," as used in: "the telescoping arms are operatively coupled to one another at an angle so that multiple telescoping arms form the shape of a M"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #8 "operatively coupled," as used in:<br><br>"the telescoping arms are operatively coupled to one another at an angle so that multiple telescoping arms form the shape of a M"<br><br>U.S. Patent No. 7,101,393, Cl. 1<br><br>Proposed by both | "the telescoping arms are positioned in multiple planes at an angle so that multiple telescoping arms form the shape of a M capable of exerting enough radial force when expanded to fix into the aorta and thereby reduce blood leaks around the endovascular graft" | "distinct structures functionally coupled," as used in:<br><br>"the telescoping arms are distinct structures functionally coupled to one another at an angle so that multiple telescoping arms form the shape of a M" |

**The Parties' Positions:**

For this term, Defendant repeats its arguments for "operatively connected."  Defendant's Response at 14–15.  Plaintiff also largely repeats the same arguments it made for "operatively connected."  Plaintiff's Opening at 17–19.  Plaintiff additionally relies on *Bonutti Rsch., Inc. v. Lantz Med., Inc.* to argue for the construction of "exerting enough radial force when expanded to fix into the aorta" based on language from the '393 Patent specification.  No. 14-cv-609, 2016 WL 247752, at *19 (S.D. Ind. Jan. 21, 2016) (citing *Innova*, 381 F.3d at 1118).

**The Court's Analysis:**

For the reasons given above for the term "operably connected," the Court construes "operably coupled" in the context of "the telescoping arms are operatively coupled to one another at an angle so that multiple telescoping arms form the shape of a M" to mean "the telescoping arms are functionally coupled to one another at an angle so that multiple telescoping arms form the

shape of a M." This construction adopts the Defendant's proposal and further modifies it to remove the requirement of "distinct structures" for the reasons given for "coupled" above.

The Court agrees with Defendant that Plaintiff's construction impermissibly imports limitations from the specification into the claim. *Bonutti* does not give an unrestricted license to import operations from the specification into a claim. 2016 WL 247752, at *19–20. Instead, the Federal Circuit would first "turn to the claim language" itself. *Id.* at *20. Because Claim 26 in *Bonutti* recited "moveable along the curved path," the Federal Circuit construed "operatively coupled" as "connected in a manner to enable the second arm member to be moveable along the curved path." *Id.* Here, except for the inclusion of "distinct structures," Defendant's proposal follows *Bonutti's* process because it construes the operation consistent with claim language itself. The Federal Circuit did not import limitations from the specification. *Id.* This Court finds it similarly improper to take the operation of "exerting enough radial force when expanded to fix into the aorta and thereby reduce blood leaks around the endovascular graft" from the specification and adding it to the construction of this term. None of the words in the claim can be construed as the effects of exerting radial forces or reducing blood leaks.

### I.      Term #9: "shape of a M" / "shape of multiple Ms" / "M configuration"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| #9: "shape of a M" / "shape of multiple Ms" / "M configuration"<br><br>U.S. Patent No. 7,101,393, Cls. 1, 2, 26<br><br>Proposed by Defendant | no construction required; plain and ordinary meaning | plain and ordinary meaning |

**The Parties' Positions:**

The parties' briefs make clear that they dispute whether the "shape of a M" is limited to a capital M where the inner legs are shorter than the outer legs.  Plaintiff's Opening at 19; Defendant's Response at 16.  Both parties argue that a person of ordinary skill would agree with their construction and that specification embodiments and prosecution history support their construction.  Plaintiff's Opening at 19–20; Defendant's Response at 16–17.  Defendant argues that experts agree with its position.  *Id.*

Defendant reminds the Court that it should determine the scope of any disputed claims during the *Markman* process.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

**The Court's Analysis:**

Neither party offers a construction for this term that captures the details of their argument.  Both parties agree to present the construction of "plain and ordinary meaning" to the jury, but neither party proposes to further construe the plain and ordinary meaning of an "M" as having certain characteristics.  Because both parties propose "plain and ordinary meaning" for this term, the Court adopts the plain and ordinary meaning and finds the parties waived their right to ask for a different construction to be given to the jury.

*O2 Micro* requires the Court to construe a term when parties disagree about which claim construction the Court should give to the jury.  521 F.3d at 1362.  Here, the parties *agree* on the construction to be given to the jury.  The parties' proposed constructions fail to fully capture the scope of their arguments, but nothing prohibits the parties from asking for a claim construction less than the full scope of their argument or reaching a compromise on the instruction a jury should receive.  *O2 Micro* does not compel this Court to craft a construction that neither party proposes when both parties want to instruct the jury that this term has its "plain and ordinary meaning."

33

## IV.   CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below as its final constructions.

**SIGNED** this 3rd day of June, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: whether the preamble is limiting<br><br>U.S. Patent No. 7,101,393, Cls. 1, 26<br><br>Proposed by Plaintiff | the preamble is limiting in its entirety | preamble is not limiting | the preamble is limiting in its entirety |
| #2: "endovascular apparatus"<br><br>U.S. Patent No. 7,101,393, Cls. 1, 26<br><br>Proposed by Plaintiff | "endovascular graft for the treatment of aneurysms or arterial blockages" | preamble is not limiting | Plain and ordinary meaning |
| #3: "telescoping arms"<br><br>U.S. Patent No. 7,101,393, Cls. 1, 26<br><br>Proposed by TMT | "arms that telescope in the manner of a presentation pointer and/or an accordion" | "plain and ordinary meaning, which is more than one telescoping arm" | Plain and ordinary meaning |
| "telescoping arm"<br><br>U.S. Patent No. 7,101,393, Cl. 26<br><br>Proposed by Defendant | "plain and ordinary meaning, which is one of the telescoping arms" | "plain and ordinary meaning, which is an arm that telescopes, such as in the manner of a presentation pointer or an accordion" | Plain and ordinary meaning |

35

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #4: variable length" <br><br> U.S. Patent No. 7,101,393, Cl. 1 <br><br> Proposed by Defendant | no construction required; plain and ordinary meaning | "boundary that has a varying length as each arm telescopes" | Plain and ordinary meaning |
| #5: "connected" <br><br> U.S. Patent No. 7,101,393, Cl. 26 <br><br> Proposed by Defendant | no construction required; plain and ordinary meaning | "distinct structures functionally connected" | Plain and ordinary meaning |
| #6: "operatively connected," as used in: <br><br> "the arms being operatively connected to one another so as to form a perimeter of variable length" <br><br> U.S. Patent No. 7,101,393, Cl. 1 <br><br> Proposed by both | "the arms being connected to one another to form a perimeter of variable length capable of reducing leakage around the perimeter of the tubular sleeve" | "the arms being distinct structures functionally connected to one another so as to form a boundary that has a varying length as each arm telescopes" | "the arms being connected to one another so as to form a boundary that has a varying length as each arm telescopes" |

36

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #7: "coupled"<br><br>U.S. Patent No. 7,101,393, Cl. 26<br><br>Proposed by Defendant | No construction required; plain and ordinary meaning | "distinct structures functionally coupled" | Plain and ordinary meaning |
| #8 "operatively coupled," as used in:<br><br>"the telescoping arms are operatively coupled to one another at an angle so that multiple telescoping arms form the shape of a M"<br><br>U.S. Patent No. 7,101,393, Cl. 1<br><br>Proposed by both | "the telescoping arms are positioned in multiple planes at an angle so that multiple telescoping arms form the shape of a M capable of exerting enough radial force when expanded to fix into the aorta and thereby reduce blood leaks around the endovascular graft" | "distinct structures functionally coupled," as used in:<br><br>"the telescoping arms are distinct structures functionally coupled to one another at an angle so that multiple telescoping arms form the shape of a M" | "the telescoping arms are functionally coupled to one another at an angle so that multiple telescoping arms form the shape of a M" |
| #9: "shape of a M" / "shape of multiple Ms" / "M configuration"<br><br>U.S. Patent No. 7,101,393, Cls. 1, 2, 26<br><br>Proposed by Defendant | no construction required; plain and ordinary meaning | plain and ordinary meaning | Plain and ordinary meaning. |