# Exhibit 55

**No. 25-130**

# United States Court of Appeals for the Federal Circuit

IN RE VIRTAMOVE CORP.,
*Petitioner*.

On Petition for Writ of Mandamus from the United States District Court
for the Western District of Texas
Case No. 7:24-cv-00033-DC-DTG
Hon. Judge Counts and Magistrate Judge Gilliland

## GOOGLE LLC'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

VINCENT Y. LING
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue
 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9573
Email: vincent.ling@mto.com

EVAN MANN
MUNGER, TOLLES & OLSON LLP
560 Mission Street
 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Email: evan.mann@mto.com

GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
 Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100
Email: ginger.anders@mto.com

*Counsel for Respondent Google LLC*

June 12, 2025

## CERTIFICATE OF INTEREST

Counsel for Google LLC certifies the following:

1.    The full name of every party represented by me is:

Google LLC

2.    The names of the real parties in interest represented by me are:

None

3.    All parent corporations and any publicly held companies that own 10% or more of stock in the parties represented by me are:

XXVI Holdings Inc. and Alphabet Inc.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Hogan Lovells US LLP: Antonio R. Sistos, David A. Perlson

Quinn Emanuel Urquhart & Sullivan LLP: Deepa Acharya, Vanessa Blecher

Jackson Walker LLP: Katharine L. Carmona, Erica Benites Giese, Nathaniel St. Clair, II

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

N/A

6.    Organizational Victims and Bankruptcy Cases: Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case.  See Fed. Cir. R. 47.4(a)(6).

None

DATED: June 12, 2025                By: /s/ *Ginger D. Anders*
                                              Ginger D. Anders

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

INTRODUCTION ......................................................................1

STATEMENT ..........................................................................3

I.     The Parties ...................................................................3

II.    The Instant Suit .............................................................3

    A.   VirtaMove's Allegations ...............................................3

    B.   Google's Transfer Motion ..............................................4

        1.   The Accused Functionalities and Relevant Witnesses ..............4

        2.   The Parties' Arguments .............................................6

    C.   The District Court's Order Transferring the Case ...................7

REASONS FOR DENYING THE WRIT ..........................................9

I.     VirtaMove's Claims of a Division Between Federal Circuit and Fifth
    Circuit Law Are Meritless. .................................................11

    A.   The Fifth Circuit Has Not Announced a New Burden of Proof
        for Showing That Witnesses Will Actually Materialize. .............11

    B.   VirtaMove Mischaracterizes the Fifth Circuit's 100-Mile Rule. .........17

    C.   Federal Circuit Precedent on Local Interest Is Consistent With
        Fifth Circuit Precedent. ............................................23

    D.   VirtaMove's Arguments Concerning the Court-Congestion
        Factor Should Be Disregarded as Irrelevant to This Case. .................26

II.    The District Court Did Not Abuse Its Discretion in Granting Transfer. ........26

    A.   The District Court Correctly Determined That the Private-
        Interest Factors Clearly Favor Transfer. ............................27

    B.   The District Court Correctly Determined That the Public-
        Interest Factors Clearly Favor Transfer. ............................31

III.   VirtaMove's Remaining Arguments Are Meritless. ...................32

CONCLUSION ........................................................................35

CERTIFICATE OF COMPLIANCE .........................................36

## TABLE OF CONTENTS
### (Continued)

**Page**

CERTIFICATE OF SERVICE ...............................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*In re Apple Inc.*,
2024 WL 3886316 (Fed. Cir. Aug. 21, 2024) .....................................................10

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ............................................9, 21, 23, 24, 28, 34

*In re Chamber of Commerce*,
105 F.4th 297 (5th Cir. 2024) ............................................................................14

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) .......................... 1, 9, 10, 11, 13, 17, 18, 23, 24, 26

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ..........................................................................9, 12

*In re DoDots Lic'g Sols. LLC*,
2023 WL 8642716 (Fed. Cir. Dec. 14, 2023).....................................................16

*Erickson v. Exxon Mobil Corp.*,
2025 WL 1047099 (S.D. Tex. Apr. 8, 2025).......................................................19

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990).............................................................................................35

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ...............................................15, 16, 21, 22, 32

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ...............................................................26, 29, 31

*In re Haptic, Inc.*,
2024 WL 3159288 (Fed. Cir. June 25, 2024).....................................................10

*In re Hewlett Packard Enter. Co.*,
2022 WL 3209326 (Fed. Cir. Aug. 9, 2022) ......................................................16

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) .............................................................23, 25, 31

*In re Honeywell Int'l Inc.*,
    2024 WL 302397 (Fed. Cir. Jan. 26, 2024).......................................................10

*Madey v. Duke Univ.*,
    307 F.3d 1351 (Fed. Cir. 2002) ........................................................................24

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ........................................................................19

*Norwood v. Kirkpatrick*,
    349 U.S. 29 (1955)............................................................................................12

*Passmore v. Vertex Energy, Inc.*,
    2024 WL 266531 (S.D. Ala. Jan. 24, 2024) ......................................................19

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) .........................................................13, 15, 16, 32

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ..........................................................................25

*In re Samsung Elecs. Co.*,
    2023 WL 8642711 (Fed. Cir. Dec. 14, 2023)..............................................10, 26

*In re SAP Am., Inc.*,
    133 F.4th 1370 (Fed. Cir. 2025) .................................................................16, 34

*SQIP, LLC v. Cambria Co.*,
    728 F. Supp. 3d 447 (E.D. Tex. 2024)...............................................................19

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ................................. 10, 16, 18, 19, 20, 23, 25, 29

*Touchstream Techs., Inc. v. Google LLC*,
    21-cv-569-ADA (W.D. Tex.) ............................................................................33

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Troy v. Samson Mfg. Corp.*,
758 F.3d 1322 (Fed. Cir. 2014) ..........................................................................10

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ..........................................................................19

*VirtaMove Corp. v. Amazon.com, Inc.*,
7:24-cv-30 (W.D. Tex.) ..........................................................................................8

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ...............................................................................18

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ..................................................1, 6, 12, 15,
............................................................................. 16, 18, 19, 20, 21, 27, 31, 34, 35

**FEDERAL STATUTES**

35 U.S.C. § 271(a) ...............................................................................................24

**RULES - OTHER**

Fed. R. Civ. P. 45(c)(1)(B)(ii)..................................................................................8

## INTRODUCTION

Plaintiff VirtaMove Corporation ("VirtaMove"), a Canadian company, brought this patent infringement suit against defendant Google LLC ("Google") in the Western District of Texas ("WDTX"), even though that district has no connection to this case. The district court accordingly transferred the case to the Northern District of California ("NDCA") based on a straightforward application of the governing Fifth Circuit precedents—including *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*"), and *In re Clarke*, 94 F.4th 502 (5th Cir. 2024). The decision to transfer was well within the district court's discretion: Google is based in NDCA; the primary technical witnesses and third-party witnesses are concentrated in NDCA, while VirtaMove identified at most a single Google sales witness in WDTX; significant development work for the accused functionalities occurred in NDCA, while none occurred in WDTX; and VirtaMove has no office or witnesses in, or any other connection to, WDTX (beyond its choice of WDTX as a favorable forum). As the district court correctly recognized, this suit should never have been brought in WDTX.

Faced with that conclusion, which follows inexorably from well-established precedents of both the Fifth Circuit and this Court, VirtaMove seeks to change the rules. VirtaMove contends that recent Fifth Circuit decisions have substantially altered that court's approach to transfers for convenience. But each of its arguments

1

rests on mischaracterizing Fifth Circuit law.  Contrary to VirtaMove's contention, the Fifth Circuit did not sharply raise the movant's burden of proof in *Clarke*, nor did it require the movant to show that its identified witnesses will actually testify at trial.  Indeed, such a rule would be contrary to the Fifth Circuit's policy of deciding transfer motions at the *outset* of the litigation, when the analysis is necessarily predictive.  VirtaMove is also wrong in arguing that the Fifth Circuit has held that, in assessing the cost of witness attendance, a district court may only consider which forum is closer to each witness based on *distance* alone, and not any other circumstances relevant to relative convenience.  No Fifth Circuit decision even hints at such an artificially truncated analysis.  Finally, VirtaMove's argument concerning the local-interest factor is misconceived.  This Court's holding that design and development of an accused functionality in a particular district gives rise to a local interest in that district is entirely consistent with Fifth Circuit precedent holding that events that take place in many districts at once do not create such an interest.

VirtaMove has thus failed to identify any conflicts between Fifth Circuit and Federal Circuit precedents—or any clear abuse of discretion by the district court. That should be no surprise.  This Court has extensive experience applying Fifth Circuit law in the transfer context, including the very Fifth Circuit decisions that VirtaMove alleges this Court has not followed.  VirtaMove's arguments therefore should be understood for what they really are: a plea that this Court overrule its

longstanding transfer precedents. That request is both extraordinary and manifestly unwarranted. The writ of mandamus should be denied.

## STATEMENT

### I.   The Parties

VirtaMove brought this patent infringement suit in the Midland-Odessa division of WDTX. Appx1003. VirtaMove is a Canadian corporation with a place of business in Ontario, Ottawa. Appx1003. VirtaMove has five active employees who all reside in eastern Canada. Appx1357. VirtaMove has no connection to WDTX, let alone Midland-Odessa.

Google is a Delaware entity headquartered in Mountain View, California, with several offices throughout the San Francisco Bay Area in NDCA. Appx1129.

### II.   The Instant Suit

#### A.   VirtaMove's Allegations

VirtaMove's infringement allegations implicate three different Google software products: Google Kubernetes Engine ("GKE"), Google Cloud Run, and Migrate to Containers.[1] Appx1128–1129; Appx1008; Appx1179; Appx1185–1233. The contentions appear to also implicate Docker, which is an open-source platform

---

[1] Although VirtaMove identified Migrate to Containers as an accused product, its infringement contentions do not appear to be directed at it. Appx1129; Appx1132.

developed by a third-party company of the same name, also headquartered in NDCA. Appx1127–1129.

### B.    Google's Transfer Motion

Because this suit has no material connection to WDTX, and because the relevant witnesses and evidence are concentrated in NDCA, Google moved to transfer venue for convenience. Appx1121–1148.

### 1.    The Accused Functionalities and Relevant Witnesses

a. Google identified 11 willing employees with highly relevant and material technical knowledge in NDCA, and none in WDTX. A handful of Google employees with relevant knowledge also reside in various domestic and international locations. VirtaMove did not identify any Google witnesses in WDTX with material knowledge of the accused functionalities. Appx1357–1360.

*GKE.* GKE is Google's cloud-based Kubernetes service for running containerized applications. Appx1150. There are six GKE witnesses who are especially knowledgeable and most likely to be called at trial; five reside in NDCA, and one is near Seattle. Appx1138. A few other team members reside in Canada and New York. Appx1150–1153.

*Cloud Run.* Cloud Run is a managed compute platform that lets end users run containers on Google Cloud. The six Google employees most likely to testify about

Cloud Run are in NDCA.  Appx1137–1138.  A handful of team members work from locations on the east coast and abroad.  Appx1158–1159.

*Migrate to Containers*.  Although Migrate to Containers was and is primarily developed in Tel Aviv, Israel, where two knowledgeable Google witnesses reside, Appx1164, it is unclear whether VirtaMove actually accuses this product, Appx1129.

For its part, VirtaMove asserted that all of its five current employees, located near Toronto, Canada, "likely have some relevant knowledge."  Appx1357.  It also identified various Google employees, primarily in customer service, who reside in the U.S. or abroad.  Only one individual identified by VirtaMove, who works with field-sales teams, is in WDTX.  Appx1357–1358.

b.  Google identified 11 third-party witnesses subject to compulsory process in NDCA.  Two are founders of Docker.  Appx1132–1133.  Nine witnesses with knowledge of relevant prior-art systems developed in NDCA are located in NDCA.  Appx1133–1134.

VirtaMove identified no third-party witnesses in WDTX, and two former employees in Dallas (in the Northern District of Texas ("NDTX")) who could be subpoenaed in WDTX if they would not incur substantial expense.  Appx1361–1362.

c.  The documents and source code relevant to the GKE, Cloud Run, and Migrate to Containers products are created and maintained by the product teams.  As those teams are concentrated in NDCA, Seattle, and Israel, documents and source code for the accused functionalities are more easily accessed by custodians in NDCA, Seattle, and Israel.

### 2.    The Parties' Arguments

Google argued that transfer was warranted under the private- and public-interest convenience transfer factors set forth in *Volkswagen II*, 545 F.3d at 315, because the willing and third-party witnesses (and sources of proof) were overwhelmingly located in NDCA (VirtaMove identified only one Google sales employee in WDTX), and significant development work for the accused functionalities has occurred in NDCA, while WDTX has no connection whatsoever to any of the events giving rise to the suit.  Faced with that factual presentation, VirtaMove opposed transfer by urging that the Fifth Circuit had recently altered the well-established transfer analysis in a way that favored VirtaMove on each of the disputed willing-witness, compulsory-process, and local-interest factors.

Specifically, VirtaMove argued that under its view of Fifth Circuit law, (1) Google was required to prove that witnesses who would find NDCA more convenient would "*actually*" appear at trial, which Google allegedly could not do at a preliminary stage of the litigation; (2) the forums' relative convenience should be

determined by "rigid[ly]" measuring the distance that each witness would travel to each forum, such that the purported convenience of WDTX to witnesses in Canada, Israel, and the east coast would outweigh the convenience of NDCA to the many witnesses who resided in or near there; and (3) NDCA had no local interest in the case because (contrary to governing Federal Circuit precedent) Google's design and development of the accused products in NDCA was entirely irrelevant, and its provision of the accused technology nationwide gave neither district a particularized interest. Appx1352–1368.

## C.    The District Court's Order Transferring the Case

Magistrate Judge Gilliland granted Google's transfer motion. Analyzing the case under *Volkswagen II*, he found that Google had easily shown that NDCA is the clearly more convenient venue.

*Willing Witnesses.*    Judge Gilliland found that Google "has clearly demonstrated that its relevant employees are concentrated in NDCA and Seattle, with most working in or near San Francisco." Appx3. VirtaMove, on the other hand, identified witnesses in Canada and Google employees outside of both districts. The court reasoned that even if VirtaMove's identified witnesses were geographically closer to WDTX than NCDA, they would have to travel significant distances to either district. Appx3.

7

*Compulsory Process.* The court found that this factor weighed in favor of transfer, as Google had identified "several non-party witnesses in NDCA, none of whom have agreed to testify willingly." Appx3. The only witnesses potentially subject to WDTX's subpoena power were two VirtaMove-identified witnesses in NDTX. Appx3 (citing Fed. R. Civ. P. 45(c)(1)(B)(ii)).

*Sources of Proof.* The court found that neither party identified evidence that was solely available in either district. Appx3.

*Other Practical Problems.* The court rejected VirtaMove's reliance on purported judicial-efficiency gains based on its similar WDTX case against Amazon, noting that that suit was also subject to a pending transfer motion. Appx3.[2]

*Local Interest.* The court found that NDCA had a local interest in this case and that WDTX had none. Appx4.

*Other Factors.* The court held that the factors addressing court congestion, familiarity with patent law, and avoidance of conflict of laws had little effect. Appx4.

VirtaMove objected to Judge Gilliland's order, arguing that he erred by "applying the Federal Circuit's interpretation of transfer law, rather than the law as

---

[2] Judge Gilliland also ordered Amazon's case transferred to NDCA, and Judge Albright adopted that order. 5/21/25 Order, *VirtaMove Corp. v. Amazon.com, Inc.*, No. 7:24-cv-30 (W.D. Tex.), ECF 108.

recited by the Fifth Circuit." Appx1944. Judge Counts overruled VirtaMove's objections, noting that Judge Gilliland had not even cited any Federal Circuit cases and holding that "Judge Gilliland properly considered all the relevant transfer venue factors under Fifth Circuit jurisprudence to determine that the case should be transferred to [NDCA]." Appx6–7.

**REASONS FOR DENYING THE WRIT**

VirtaMove falls far short of demonstrating entitlement to mandamus relief. "A writ of mandamus is 'a drastic and extraordinary remedy reserved for really extraordinary cases.'" *Def. Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (citation omitted). A petitioner seeking mandamus relief must (1) have "no other adequate means to attain" the requested relief, (2) show a "clear and indisputable" right to the writ, and (3) show that "the writ is appropriate under the circumstances." *Clarke*, 94 F.4th at 516 (citations omitted); *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020).

The posture of this case raises that already high bar for seeking the writ. VirtaMove's argument for mandamus rests entirely on its contention that this Court should overrule certain of its precedents governing convenience transfer because those decisions, in VirtaMove's view, are inconsistent with recent Fifth Circuit decisions. That contention must overcome an extraordinarily high standard. Even putting aside the fact that only the en banc Court can overrule prior decisions,

9

VirtaMove must demonstrate that the relevant Fifth Circuit decisions "have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) (citation omitted).

VirtaMove cannot come close to satisfying that rigorous standard. This Court has ample experience applying Fifth Circuit transfer law, including in more than 70 decisions following the Fifth Circuit's 2008 en banc decision in *Volkswagen II*. At least six of those decisions were issued within the past year, after the Fifth Circuit decisions that VirtaMove contends created a division with this Court's law. *See* Pet.6. But, critically, this Court has detected no such division: this Court's recent decisions have treated the Fifth Circuit decisions on which VirtaMove focuses as nothing more than routine elaborations on that court's longstanding approach under *Volkswagen II*. *See, e.g.*, *In re Apple Inc.*, 2024 WL 3886316, at *1 (Fed. Cir. Aug. 21, 2024) (applying transfer standard stated in *Clarke*, 94 F.4th at 508); *In re Haptic, Inc.*, 2024 WL 3159288, at *1 (Fed. Cir. June 25, 2024) (following *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023)); *In re Honeywell Int'l Inc.*, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024) (following *TikTok* "and other recent cases in which this court and the Fifth Circuit have granted mandamus"); *In re Samsung Elecs. Co.*, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (applying *TikTok*'s 100-mile rule). This Court's recent decisions confirm that VirtaMove's claims of a conflict

10

between the circuits rest on mischaracterizations of the precedent of both courts. This Court should deny the writ.

## I. VirtaMove's Claims of a Division Between Federal Circuit and Fifth Circuit Law Are Meritless.

VirtaMove's assertion that this Court has diverged from Fifth Circuit law does not withstand scrutiny. This Court has consistently applied Fifth Circuit law when reviewing § 1404(a) transfer decisions from that circuit's district courts. VirtaMove's contrary arguments are premised on plainly incorrect readings of decisions from both courts—and the purported "rules" that it ascribes to Fifth Circuit decisions are contrary to longstanding transfer principles and would lead to absurd results.

### A. The Fifth Circuit Has Not Announced a New Burden of Proof for Showing That Witnesses Will Actually Materialize.

VirtaMove contends that the Fifth Circuit's decision in *Clarke*, 94 F.4th 502, raised the burden of proof such that transfer movants must now clearly demonstrate that the witnesses they identify at the transfer stage will actually testify at trial. Pet.7. Not so. The Fifth Circuit has expressly disavowed any such requirement, and *Clarke* did not change that. Indeed, the rule VirtaMove tries to conjure from Fifth Circuit precedent would be flatly inconsistent with that court's policy of deciding transfer motions at the outset of the litigation, when trial is still far in the future.

11

1.     As a decision by a panel of the Fifth Circuit, *Clarke* did not—and could not—raise the burden of proof that the en banc court established in *Volkswagen II.* That decision explained that to demonstrate entitlement to transfer, the movant must show "good cause" by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  545 F.3d at 315 (second alteration in original); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Although the movant must do more than show that the other venue is "more likely than not to be more convenient," *Def. Distributed*, 30 F.4th at 433 (citing *Volkswagen II*, 545 F.3d at 314–15), the movant carries its burden by showing that the other venue is "*clearly* more convenient," *Volkswagen II*, 545 F.3d at 315.[3]

Importantly, *Volkswagen II* expressly addressed the showing required with respect to witnesses, explaining that a movant could demonstrate good cause even without "provid[ing] affidavits from these individuals indicating what specific testimony they might offer" or representing that the movant "would call" the identified witnesses at trial.  *Volkswagen II*, 545 F.3d at 317 n.12.  The court accordingly weighed Volkswagen's identified out-of-district witnesses in favor of transfer even though Volkswagen had not represented that they would definitely testify at trial. *Id*. at 317.

---

[3] Emphases are added throughout unless otherwise noted.

12

*Clarke* did not alter *Volkswagen II*.  After quoting *Volkswagen II*'s statement of the good-cause standard, *Clarke* stated: "*[a]ccordingly, to establish 'good cause,'* a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."  94 F.4th at 508 (first emphasis added).  That sentence is on its face a restatement of the "good cause" burden, framed to emphasize that the movant must present *evidence* that clearly supports its assertion that its proposed venue is "clearly more convenient." Put another way, the movant demonstrates that increased convenience will "actually materialize"—that the venue will be *clearly* more convenient, rather than potentially more convenient—by presenting evidence that clearly supports claims of increased convenience in the transferee venue.  The larger context of the decision confirms that conclusion: the Fifth Circuit faulted the district court for "uncritically accepting" the movant's unsupported assertions about why the transferee district would be more convenient, *id*. at 514, and emphasized that the "good-cause requirement prohibits a district court from relying on 'conclusory assertions'" and mere "speculation."  *Id.* at 513; *accord In re Planned Parenthood Fed'n of Am., Inc*., 52 F.4th 625, 630 (5th Cir. 2022) (movant does not satisfy burden by conclusorily asserting that "any" unwilling witnesses that might materialize will be subject to compulsory process in

13

transferee district).  That common-sense observation does not alter the overarching burden of proof.

Resisting that conclusion, VirtaMove selectively quotes from *In re Chamber of Commerce*, 105 F.4th 297 (5th Cir. 2024), to argue that the Fifth Circuit has "explained that now, '[t]he bar is much higher.'"  Pet.31 (quoting *Chamber of Com.*, 105 F.4th at 304); *see also id.* at 7.  But in context, the court was explaining that the "standard is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient.'"  *Chamber of Com.*, 105 F.4th at 304.  The court's observation that "[t]he bar is much higher" was thus a reference to the fact that the existing "good cause" standard has always required more than a preponderance—the chosen venue must be "clearly more convenient."  *Id.*

2.  Nor did *Clarke* raise the burden specifically to require the movant to establish that its identified potential witnesses *will actually be presented at trial*. The court did not even mention the standard for weighing out-of-district witnesses in favor of transfer, much less silently overrule *Volkswagen II*'s holding that the movant need not establish that its witnesses will testify at trial.  VirtaMove's contrary argument relies entirely on paraphrasing *Clarke* to insert VirtaMove's own language, which it sets off with parentheses: "the movant must now clearly demonstrate that a *significant* gain in convenience *(of a witness or evidence)* will

14

*actually* materialize *(by being presented in a closer court)*." Pet.7 (bolded emphases added). But *Clarke* itself said nothing of the sort.

Indeed, the Fifth Circuit has long recognized that district courts have "broad discretion" to assess the underlying evidence concerning relative convenience, including the relevance of the witnesses identified by both parties. *Planned Parenthood*, 52 F.4th at 631–32 (citing *Volkswagen II*, 545 F.3d at 315) (deferring to the district court's assessment of "relevant witnesses"). Under *Clarke*, that discretion is subject to the requirement that predictions about the course of the litigation must not be speculative—meaning, in the context of witnesses, that there must be reason to think that the witnesses are relevant and material. *Volkswagen II*, 545 F.3d at 317 (counting in favor of transfer witnesses who "Volkswagen … asserts" would provide important testimony, and rejecting plaintiffs' argument that Volkswagen had not provided sufficient specificity about the testimony and its necessity). But the Fifth Circuit has never suggested that establishing good cause requires more, i.e., demonstrating exactly what witnesses and evidence will be presented at trial. Quite the contrary.

3. This Court has consistently applied Fifth Circuit precedent. Relying on *Volkswagen II*, this Court has held that a movant need only show that "the potential witness has … relevant and material information at this point in the litigation"—not that a witness *will* testify at trial. *In re Genentech, Inc.*, 566 F.3d 1338, 1343–44

15

(Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317 n.12); *In re SAP Am., Inc.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025). At the same time, the requirement that the witness have material information has force; this Court has upheld district courts' rejection of witness-related showings that lack particularity or are speculative. *See, e.g.*, *In re DoDots Lic'g Sols. LLC*, 2023 WL 8642716, at *1 (Fed. Cir. Dec. 14, 2023) (district court did not err in finding that certain witnesses had "limited or no knowledge of the accused functionality" and affording them less significance); *In re Hewlett Packard Enter. Co.*, 2022 WL 3209326, at *2 (Fed. Cir. Aug. 9, 2022) (district court reasonably found that defendant only identified two witnesses with any particularity); *Genentech*, 566 F.3d at 1343 (district courts "should assess the relevance and materiality of the information [a] witness may provide").

4. There are good reasons that the Fifth Circuit and this Court have never adopted VirtaMove's "definitely will testify" rule. The Fifth Circuit requires transfer motions be disposed of expeditiously, often early in the litigation. *See In re TikTok*, 85 F.4th at 362–63 ("'[D]isposition of a [§ 1404(a)] motion should [take] a top priority in the handling of a case.'" (alterations in original)); *Planned Parenthood*, 52 F.4th at 631. As a result, the convenience analysis is inherently predictive. Witnesses identified as possessing relevant and material information based on the patentee's complaint and other early pleadings may ultimately not play a role at trial. Parties develop, add, and drop theories throughout the course of

litigation, based on a variety of factors such as further investigation and discovery, claim construction, motion practice, and developments in related proceedings. The patentee is also the master of its claims, and the defendant's ultimate presentation at trial is responsive to the patentee's development of its theories. It would be nearly impossible for a defendant to show with any certainty at the transfer stage which witnesses will "actually" be presented at trial years later.[4] Moreover, VirtaMove's rule would also be unfair, requiring clairvoyance of the defendant but not the patentee—as VirtaMove would have courts uncritically assume that the *patentee's* proffered witnesses should be weighed against transfer regardless of whether they will actually testify at trial. *See* Pet.27. It is thus unsurprising that neither court has ever adopted VirtaMove's rule.

## B.    VirtaMove Mischaracterizes the Fifth Circuit's 100-Mile Rule.

VirtaMove argues that the Fifth Circuit has adopted an artificial witness-convenience rule—a "rigid" rule, in VirtaMove's own parlance—that prohibits inquiry "into airports, transportation method, flight times, flight connections, or the like," and "does not permit a court to discount or neutralize a witness far from both

---

[4] VirtaMove also improperly ignores witnesses and evidence that may be germane to the case *before* trial, which can be considered under Fifth Circuit law. *See, e.g.*, *Clarke*, 94 F.4th at 514 (considering witness factors based on the possibility of evidentiary hearings).

17

forums based on time or connecting flights." Pet.8, 10. Once again, VirtaMove mischaracterizes Fifth Circuit precedent.

1. The private-interest factor at issue is the "*cost* of attendance for willing witnesses." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit uses the distance that a witness must travel to a particular forum as a proxy for cost and inconvenience: "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home and that '*[a]dditional distance means* additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")); *TikTok*, 85 F.4th at 361–62 (witnesses from China would have to travel further to Texas than California, "incurring substantial 'additional travel time … meal and lodging expenses[,]'"); *see also Clarke*, 94 F.4th at 514 & n.20 (recognizing the same "external costs on witnesses"). *Volkswagen II* therefore held, and *TikTok* reaffirmed, that "'[w]hen the distance between an existing venue for trial … and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled.'" 85 F.4th at 361 (quoting *Volkswagen II*, 545 F.3d at 317).

VirtaMove argues that *TikTok*'s holding that a district court may not "'ignore[] [the] 100-mile test'" means that courts may *only* consider distance in evaluating the witnesses' convenience. Pet.9. Not so. The court in *TikTok* reversed because the district court "failed to discuss" the 100-mile rule of thumb *at all*, not because the district court considered travel time or any other circumstance. *TikTok*, 85 F.4th at 361; *accord In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("[D]isregard of the 100-mile rule constitutes clear error.").[5]

More broadly, nothing about the Fifth Circuit's focus on distance traveled as a proxy for cost and convenience logically excludes inquiry into other factors that the Fifth Circuit has expressly recognized *also* affect cost and convenience—such as travel time, lodging expenses, or connecting flights. *See Volkswagen II*, 545 F.3d at 317. Indeed, *TikTok* favorably cited this Court's decision in *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009), which looked to travel time as well as distance. The Fifth Circuit described that decision as "*applying Fifth Circuit law* to hold that this factor clearly favored transfer when some key witnesses were from Japan and 'would each have to travel an additional 1,756 miles or *7 hours by plane*

---

[5] Unsurprisingly, after *TikTok*, district courts continue to consider travel time and actual convenience. *See, e.g.*, *Erickson v. Exxon Mobil Corp.*, 2025 WL 1047099, at *2 (S.D. Tex. Apr. 8, 2025); *SQIP, LLC v. Cambria Co.*, 728 F. Supp. 3d 447, 455 (E.D. Tex. 2024); *Passmore v. Vertex Energy, Inc.*, 2024 WL 266531, at *6 n.5 (S.D. Ala. Jan. 24, 2024).

*to Texas* as compared with Washington State.'" *TikTok*, 85 F.4th at 361 n.8. VirtaMove's reliance on *TikTok* thus hurts rather than helps it. And in all events, this Court should not lightly assume that the Fifth Circuit has implicitly construed the "cost of attendance for willing witnesses" convenience factor to *forbid* consideration of every circumstance that affects cost and actual convenience other than distance traveled.

2. VirtaMove also asserts that the Fifth Circuit has truncated the weighing analysis in which the court considers the relative convenience of each forum for the witnesses in the aggregate. That too is wrong.

In the transfer analysis, once the court has determined how much each witness would be inconvenienced by traveling to a particular forum, the court must assess each forum's *relative* convenience to the witnesses in order to determine whether the willing-witness factor weighs for or against transfer. *Volkswagen II*, 545 F.3d at 317 (weighing convenience of each district for witnesses). VirtaMove asserts that the Fifth Circuit requires courts to assess which forum is relatively more convenient by simply tallying which forum has more witnesses that are geographically closer to it—and that a court may not consider any other circumstance affecting the forums' relative convenience. *See* Pet.2 (asserting that "witnesses on the east coast find Texas more convenient based on distance traveled—and the inquiry ends there");

20

Pet.25–26 (arguing that the 100-mile rule weighs against transfer just because VirtaMove counts 24 witnesses "closer to Texas" and 13 "closer to California").

The Fifth Circuit's decisions do not support such a mechanistic analysis. *Volkswagen II* considered not only the distance that each witness would have to travel, but also the "personal costs" of being 155 miles away from home, as well as other witnesses' concession that the transferee forum would be convenient for them. 545 F.3d at 317. VirtaMove's real complaint concerns how this Court handles situations that arise frequently in patent cases but that the Fifth Circuit has not had occasion to consider—for instance, those in which there are multiple witnesses of varying distances from both forums, or those in which many witnesses are far from both forums but other witnesses are at home in one forum. In such cases, this Court has explained that the 100-mile rule of thumb "should not be rigidly applied" where witnesses "will be required to travel a significant distance no matter where they testify." *See Genentech*, 566 F.3d at 1344; *Apple*, 979 F.3d at 1342. That is entirely consistent with Fifth Circuit precedent: nothing about the 100-mile rule of thumb for gauging the inconvenience to a particular witness limits a court's discretion to engage in case-specific weighing of the forums' relative convenience to the witnesses in the aggregate. For instance, slight differences in convenience to witnesses who live far from either forum ordinarily do not outweigh substantial increases in convenience to witnesses who live within the transferor or transferee

21

forum. *See, e.g., Genentech*, 566 F.3d at 1344 ("In contrast to … [six] foreign witnesses [from Europe], there [were] a substantial number of witnesses [(ten)] residing within the transferee venue [NDCA.] who would be unnecessarily inconvenienced by having to travel away from home to testify in the Eastern District of Texas.").

That recognition is simply common sense: if Forum A would require five witnesses who are at home in Forum B to travel an extra 1500 miles each, and Forum B would require five other witnesses located far from both districts to travel only an extra 200 miles each, then Forum B is the relatively more convenient district. Conversely, it is not difficult to imagine the perverse results that would flow from VirtaMove's proposed rule: this case provides a prime example. VirtaMove would have courts hold that WDTX, a forum in which *no one*—parties or relevant witnesses—is at home and that is hundreds or thousands of miles away from the plaintiff and the vast majority of witnesses, is more convenient than NDCA, a forum in which the defendant and a significant number of witnesses are at home and that is only somewhat further than WDTX for the plaintiff and the witnesses who are far from both forums. VirtaMove points to nothing in Fifth Circuit precedent that requires such a counterintuitive result.

22

**C.    Federal Circuit Precedent on Local Interest Is Consistent With Fifth Circuit Precedent.**

VirtaMove contends that in every patent case, the local-interest factor should be treated as neutral because "infringement occurs nationwide." Pet.10. That argument rests on mischaracterizing both Fifth Circuit and Federal Circuit precedent.

The Fifth Circuit holds that the local-interest factor examines "the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364 (citation omitted). Where a district has a significant connection to the events giving rise to suit, it has an interest in adjudicating the case. *Id.* In addition, where an interest in a suit is shared by many districts, that interest may be "regarded as equally important by citizens in both the transferor and transferee districts (thereby netting out to zero)." *Clarke*, 94 F.4th at 512. This Court has consistently acknowledged and applied both of those principles. The Court has stated that a district's local interest arises when the events giving rise to a suit took place there, *see, e.g.*, *Apple*, 979 F.3d at 1345, but that geographically diffuse events—such as "sale of an accused product offered nationwide"—"do[] not give rise to a substantial interest in any single venue," *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). This Court's decisions thus follow Fifth Circuit precedent.

23

VirtaMove's actual objection appears to be this Court's holding that in patent infringement suits, "the events that gave rise to the suit" include not only the nationwide sale of the accused product, but also "design[ing], develop[ing], and test[ing]" the accused product, and that such development-related events give rise to a local interest in the district. *Apple*, 979 F.3d at 1345. VirtaMove contends, without support, that "design, development and testing by an accused party … does not 'give rise' to infringement [sic] Section 271." Pet.11. That is wrong. Patent infringement occurs when a party "makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Designing, developing, and testing a product that is later accused of infringement constitute alleged acts of "making" and "using" the patented invention—and in all events, preparatory acts toward alleged infringement surely are also events that gave rise to the suit.[6] This Court's focus on design and development is thus a self-evidently correct application of the Fifth Circuit's local-interest standard to the circumstances of patent infringement cases. VirtaMove cites no Fifth Circuit decision suggesting otherwise. *Cf. Clarke*, 94 F.4th at 512 (development of trading platforms that prompted CFTC enforcement action gave rise to local interest in Texas).

---

[6] Although there exists an experimental use defense, it is "very narrow and limited to actions performed 'for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry.'" *Madey v. Duke Univ.*, 307 F.3d 1351, 1362 (Fed. Cir. 2002) (citation omitted).

24

VirtaMove next argues that "the defendant party's own, private design, development, and testing cannot affect this public transfer factor," because in the Fifth Circuit, the local-interest factor is concerned with "the interest of non-party citizens in adjudicating the case." Pet.11. But as the Fifth Circuit has explained, the interest of non-party citizens in adjudicating the case arises from the fact that the events giving rise to the suit occurred in the forum. And in the context of a patent case, when design and development of the accused product has occurred in the district, the citizens of that district have "a legitimate interest in adjudicating the cases 'at home'" because the work and reputation of the district's citizens will be at stake in the trial. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (citation omitted); *Hoffman-La Roche*, 587 F.3d at 1336 (district's interest in adjudicating case arises when "the cause of action calls into question the work and reputation of several individuals residing in or near that district").

Finally, VirtaMove is wrong to suggest that the defendant's own conduct may not be considered in the local-interest analysis. Pet.11. The Fifth Circuit routinely considers the defendant's conduct where that conduct represents some of the events giving rise to the suit. *See, e.g.*, *TikTok*, 85 F.4th at 364 (considering defendants' conduct in misappropriating trade secrets in China).

25

### D.   VirtaMove's Arguments Concerning the Court-Congestion Factor Should Be Disregarded as Irrelevant to This Case.

VirtaMove also incorrectly asserts that this Court's treatment of the court-congestion factor diverges from the Fifth Circuit's. VirtaMove concedes, however, that any divergence does not justify mandamus in this case. Pet.13 n.1 (court-congestion factor "has no impact here"); Pet.21 ("VirtaMove does not dispute the" factors the district court held to be neutral). This Court therefore need not address the issue. In all events, Federal Circuit and Fifth Circuit decisions are consistent, as both courts give court congestion little weight in the absence of a case-specific reason to do so. *Clarke*, 94 F.4th at 515–16 (court congestion cannot be dispositive; approvingly citing Federal Circuit precedent); *Samsung*, 2023 WL 8642711, at *3 (declining to give court congestion "material weight" in absence of reason to do so). Contrary to VirtaMove's assertion, this Court's earlier decision in *In re Google LLC* did not hold that court congestion is never entitled to any weight, but only that it was not entitled to weight "in this case." 58 F.4th 1379, 1383 (Fed. Cir. 2023).

## II.   The District Court Did Not Abuse Its Discretion in Granting Transfer.

VirtaMove's petition for mandamus rests exclusively on its distorted understanding of *Clarke* and *TikTok*, and its consequent contention that the district court abused its discretion by failing to resolve the purported conflicts between Fifth Circuit and Federal Circuit precedent. Pet.3–4, 24–28, 30–31. No such conflicts existed for the district court to resolve. *See* Part I, *supra*. And in all events, the

26

magistrate judge (whose recommendation the district court adopted) relied solely on Fifth Circuit, and not Federal Circuit, law. Appx7–8. The court appropriately cited the governing Fifth Circuit precedent, including *Volkswagen II*, *Clarke*, and *TikTok*. Appx2–4. And the court properly considered the facts and determined that the private and public interest factors favored transfer to NDCA. Appx3–4. Not only was that determination not a clear abuse of discretion, it was the only reasonable conclusion.

### A.     The District Court Correctly Determined That the Private-Interest Factors Clearly Favor Transfer.

Following the Fifth Circuit's lead, the district court analyzed the four private-interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citation omitted). The court correctly determined that they favor transfer.

*The Cost of Attendance for Willing Witnesses* strongly favors transfer. Google identified 11 employees in NDCA as likely witnesses who are knowledgeable about the accused functionalities and another likely witness in Seattle, also knowledgeable about the accused functionalities, who would find travel to NDCA much more convenient than to Midland-Odessa. Appx1137–1138; Appx1756. VirtaMove

27

"does not dispute that Google articulated potential relevance of these … employees."[7]  Pet.19.

On the other hand, VirtaMove identifies 23[8] witnesses, only one of whom is in WDTX.  The remainder—a mix of VirtaMove and Google employees—reside in Canada, Massachusetts, Georgia, New York, Ohio, North Carolina, Pennsylvania, India, Brazil, and Israel.  Pet.17–18.

For those 22 witnesses far removed from either venue, they will have to travel a significant distance to either venue; therefore, their convenience is not materially enhanced by either venue.  *See*, *e.g.*, *Apple*, 979 F.3d at 1342.  Indeed, many of these witnesses would likely find travel to NDCA more convenient than travel to Midland-Odessa, due to the greater availability of flights.  For VirtaMove's witnesses in Canada, for example, VirtaMove has never disputed that it would be faster—and more convenient—for them to travel to NDCA than Midland-Odessa.  Appx1760–1761.  The *only* basis VirtaMove has offered for why these witnesses favor keeping the case in WDTX is its "rigid," incorrect application of the 100-mile rule.  *See* Pet.25–26.

---

[7] VirtaMove sometimes incorrectly references 13 Google employees who would find NDCA more convenient; there were 12.  Pet.18 (citing Appx1137–1138).

[8] At one point, VirtaMove argues that 24 willing witnesses favor WDTX, Pet.25, but it acknowledges that one of them (Rochette) is not a willing witness and should not be weighed, Pet.17.

Even the single witness in WDTX that VirtaMove claims is relevant would have to travel hundreds of miles from Austin to Midland-Odessa, and his customer-facing role makes him an unlikely witness. VirtaMove points to his role supporting Google field sales teams as making him a possible witness on damages. Appx1358. But VirtaMove ignores the fact that the Google finance team with knowledge about the accused products is led from Washington state, and the marketing team most knowledgeable about the products is predominantly located in NDCA. Appx1759.

Regardless, with 11 technical witnesses in NDCA, at best one sales witness in WDTX, and 22 miscellaneous witnesses scattered across the globe, the district court was well within its discretion to determine that this factor favored transfer. Appx3. Indeed, both the Fifth Circuit and this Court have held it an abuse of discretion to determine otherwise in similar situations. *See, e.g.*, *TikTok*, 85 F.4th at 361 ("The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas."); *Google*, 58 F.4th at 1384.

*The Availability of Compulsory Process* favors transfer. Google identified nine third-party prior artists located in NDCA. Appx1132–1134; Appx1761. Docker (and two of its founders) would also be subject to NDCA's subpoena power.

In favor of WDTX, VirtaMove identified two former employees in NDTX, who could potentially be within WDTX's subpoena power. It also pointed to five

29

former employees, including named inventors of the asserted patents, as potential third-party witnesses.[9] Appx1361. But these five individuals reside in Canada or Massachusetts, far outside of WDTX's subpoena power, so they do not weigh against transfer for this factor.

Considering the nine-plus third-party witnesses subject to NDCA's subpoena power and two witnesses potentially subject to WDTX's, the district court properly determined this factor favored transfer. Appx3. VirtaMove's only argument that the district court erred relies on VirtaMove's improper reading of *Clarke*. *See* Pet.27–28.

*The Sources of Proof* did not significantly impact transfer under the district court's analysis, as the magistrate judge noted that there was no evidence solely available in either district. Appx2–3. VirtaMove has abandoned any contrary argument in its petition. Pet.21.

*All Other Practical Problems* do not weigh against transfer. VirtaMove argued that its co-pending case against Amazon favored maintaining Google's case in WDTX, but, as the district court noted, Amazon also filed a motion to transfer to NDCA (which was ultimately successful). Appx3. This court has held it is an abuse

---

[9] These witnesses are included in the discussion of willing witnesses above. Before the district court, VirtaMove characterized these witnesses as relevant to the compulsory-process factor. Its petition now self-servingly counts them as willing witnesses. Pet.17–18.

30

of discretion to weigh a co-pending case against transfer when it is subject to a transfer motion. *See Google*, 58 F.4th at 1382–83. VirtaMove does not challenge the court's treatment of this factor here. Pet.21.

### B.    The District Court Correctly Determined That the Public-Interest Factors Clearly Favor Transfer.

The district court correctly determined that the public-interest factors set forth in *Volkswagen II* favor transfer: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation omitted).

*Local Interests* strongly favor adjudicating this case in NDCA. Much of the development work for GKE and Cloud Run has occurred in NDCA and Seattle. Appx1144–1145. VirtaMove's suit thus "calls into question the work and reputation" of many individuals in NDCA, giving NDCA a strong interest in adjudicating this dispute at home. *Hoffmann-La Roche*, 587 F.3d at 1336.

Because no relevant events occurred in or near WDTX, VirtaMove's only argument is that NDCA too lacks an interest because design and development is irrelevant to this factor. *See* Pet.12, 28. But as discussed above, that view has no basis in the law.

31

*Court Congestion* does not weigh against transfer.  The median time to jury trial in patent cases is 28 months in NDCA and 25 months in WDTX.  Appx1145–1146.  Regardless of disputes over statistics, both the Federal and Fifth Circuits recognize that this factor is "speculative."  *Planned Parenthood*, 52 F.4th at 631 (quoting *Genentech*, 566 F.3d at 1347).  In any event, the district court is better placed to assess docket efficiency.  *Id.*

The district court did not abuse its discretion in treating this factor as neutral.  Appx4.  VirtaMove does not challenge that finding in its petition.  Pet.29.

*Familiarity With the Law and Conflict of Law* are neutral.  Neither party disputes this.  Appx4.

\*     \*     \*

In conclusion, this is not a close case.  The three most important factors—witnesses' convenience, compulsory process, and local interest—favor NDCA, and none favor WDTX.

## III.   VirtaMove's Remaining Arguments Are Meritless.

Because VirtaMove has identified no errors in the district court's decision or in this Court's precedent, let alone the sort of egregious errors that would justify mandamus, this Court should deny the writ.  VirtaMove makes a few additional arguments in support of its petition, but none has merit.

32

VirtaMove emphasizes a handful of instances in which a district court or commentator has asserted that the Federal Circuit has handled a case-specific transfer issue differently than the Fifth Circuit might have. Pet.30–31. But those alleged divergences in other cases cannot justify mandamus in *this* case. Here, none of the issues that VirtaMove has identified involve actual disagreements between this Court and the Fifth Circuit. VirtaMove's petition therefore fails on its own merits.

VirtaMove next accuses Google and other defendants of "transfer abuse" based on the unsurprising fact that witnesses identified as having relevant information at the transfer stage might not ultimately testify at trial. Pet.32–33. VirtaMove does not acknowledge, of course, that its accusation is equally true of *plaintiffs*, who routinely identify far more potential witnesses than ultimately testify. Here, for instance, there is no chance whatsoever that VirtaMove's *23* asserted witnesses will testify at trial. Indeed, the example case that VirtaMove points to— *Touchstream Technologies, Inc. v. Google LLC*, No. 21-cv-569-ADA (W.D. Tex.)— only underscores that *both* sides have difficulty in accurately identifying which witnesses will be presented at trial years later. There, the patentee identified 36 potential witnesses to oppose transfer and focused on five of them as the most important. *See* 5/31/22 Hearing Tr., *Touchstream*, ECF 68 at 20–24, 27, 37–39. Yet

it ultimately presented *none* of the supposedly important witnesses live at trial, and only one testified via deposition. Appx1540.

Those disparities between prediction and outcome are not evidence of "transfer abuse" by either party. Rather, they are the inevitable consequence of the fact that transfer motions are to be decided "at the outset of litigation," making the convenience analysis inherently predictive. *Apple*, 979 F.3d at 1338 (citation omitted). That reality is reflected in the legal standard, which requires the movant to identify "*potential* witness[es] [with] relevant and material information." *SAP*, 133 F.4th at 1375; *accord Volkswagen II*, 545 F.3d at 317 n.12. VirtaMove's specious accusation of "transfer abuse" should be rejected.

Finally, VirtaMove complains that it will be prejudiced by transfer because NDCA is, in its view, "unfairly slow," and more inclined to grant stays pending *inter partes* review proceedings. Pet.34. Those complaints are not cognizable here: VirtaMove may seek expedition in NDCA if it believes it can make the necessary showing, and it may attempt to persuade that court not to grant any stays. But that district, like all districts, has broad discretion to manage its docket, regardless of VirtaMove's particular preferences. More fundamentally, VirtaMove's preferences cannot override the convenience analysis. Section 1404(a) presupposes that the plaintiff has its reasons for choosing to sue in a particular forum (and the good-cause burden "reflects the appropriate deference" to that choice, *Volkswagen* II, 545 F.3d

34

at 315), but nonetheless requires transfer where the plaintiff's preferred forum is clearly inconvenient.  That is because the transfer analysis considers "the *systemic* costs of litigating in an inconvenient place"—that is, the inconvenience to all parties, as well as nonparty witnesses and the courts themselves.  *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990).  Particularly here, where VirtaMove has brought suit in a district to which it has no connection, and the witnesses and sources of proof are all located far away, NDCA's superior convenience is crystal clear.

## CONCLUSION

This Court should deny the petition for a writ of mandamus.

Respectfully submitted,

DATED: June 12, 2025                    MUNGER, TOLLES & OLSON LLP

                                        */s/ Ginger D. Anders*
                                        _____

VINCENT Y. LING                         GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP              MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue                     601 Massachusetts Avenue NW
 50th Floor                              Suite 500E
Los Angeles, CA 90071                   Washington, DC 20001
Telephone: (213) 683-9573               Telephone: (202) 220-1100
Email: vincent.ling@mto.com             Email: ginger.anders@mto.com

EVAN MANN
MUNGER, TOLLES & OLSON LLP
560 Mission Street
 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Email: evan.mann@mto.com

*Counsel for Respondent Google LLC*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1), because it contains 7,784 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

DATED: June 12, 2025            MUNGER, TOLLES & OLSON LLP

By:  */s/ Ginger D. Anders*
        Ginger D. Anders
        *Counsel for Google LLC*

36

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on June 12, 2025.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

A copy of the foregoing was served upon the district court via FedEx at the addresses below:

> Hon. Derek Gilliland
> 800 Franklin Avenue
> Waco, TX 76701
> (254) 750-1514
>
> Hon. David Counts
> 200 East Wall
> Midland, TX 79701
> (432) 685-0350

DATED: June 12, 2025          MUNGER, TOLLES & OLSON LLP

By: */s/ Ginger D. Anders*
      Ginger D. Anders
      *Counsel for Google LLC*